UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-cv-24176-GAYLES

JAWHBS LLC, a Florida limited liability
company; and SLS PROPERTIES THREE,
LLC, a Nevada limited liability company,

      Plaintiffs,
v.

JORGE AREVALO, an individual, et al.

      Defendants.
_____/

## DEFENDANT STEVEN CARLYLE CRONIG'S RENEWED MOTION TO TRANSFER TO THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, OR, IN THE ALTERNATIVE, TO ABSTAIN

In connection with Plaintiff's First Amended Complaint, Defendant, Steven Carlyle Cronig ("Mr. Cronig") hereby moves to transfer this lawsuit to the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"), or, in the alternative, requests that this Court abstain from hearing this lawsuit in deference to the Bankruptcy Court's familiarity with – and actual prior resolution of – the controlling legal and factual issues.[1]  As grounds for the relief sought in this Motion, Mr. Cronig states as follows:

---

[1] This Motion supersedes the prior Motion to Transfer [Doc. No. 9] which was rendered moot as a result of the Plaintiffs' filing of the First Amended Complaint [Doc. No. 63].  All references to the "Complaint" will be to the First Amended Complaint.

1260779v1 999103.0001

## FACTUAL BACKGROUND[2]

1. On January 29, 2013, The Beacon at Brickell Village, LLC ("BBV") filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida, Case No. 13-11961-LMI. The Honorable Laurel M. Isicoff ("Judge Isicoff") was assigned the case and Drew M. Dilworth was appointed as Chapter 7 Trustee.

2. On June 6, 2013, Beacon Developers Partners LLC ("BDP") filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida, Case No. 13-23470-LMI. Judge Isicoff was assigned the case and Joel L. Tabas was appointed as Chapter 7 Trustee (Joel L. Tabas and Drew Dilworth shall be hereinafter collectively referred to as the "Trustees").

3. BBV and BDP collectively owned certain undeveloped real property located in downtown Miami, Florida (the "Property") that became the subject of a 11 U.S.C. § 363 sale.

4. On July 9, 2013, the Trustees entered into a Purchase and Sale Agreement with Crystal Tower on Brickell, LLC ("Crystal") for the sale of the Property in the amount of $19,500,000.00 ("Crystal Sale Agreement"). At no time was Watson a party to the Crystal Sale Agreement. Also on July 9, 2013, the Trustees filed a *Notice of Filing a Fully Executed Purchase and Sale Agreement and Statement of Intent Regarding Rule 6004(h) Stay In Connection With Pending Sale* in both of the Debtors' cases [ECF No. 56 in the BBV case, and ECF No. 35 in the BDP case] ("First Notice"), to which was attached the Crystal Sale Agreement.

5. On July 12, 2013, Crystal sent the Trustees a termination of the Crystal Sale Agreement and a demand for return of the deposit posted in connection therewith.

---

[2] In the First Amended Complaint, the Plaintiffs neglect to set forth the salient facts surrounding the significant prior history of this matter in the U.S. Bankruptcy Court for this District. It is Mr. Cronig's position that the inclusion of these facts for the Court's consideration of this Motion (and Mr. Cronig's separately filed Motion to Dismiss) are necessary and appropriate.

6.     On July 15, 2013, Mr. Cronig's client, Watson Investigations, LLC ("Watson") offered to purchase the Property from the Trustees for $21,500,000.00, which was reduced to a written agreement the morning of July 16, 2013 (the "Watson Sale Agreement"). To expedite the Court's review of the Watson Sale Agreement[3], the Watson's offer was tendered in form identical to the Crystal Sale Agreement; with only the $2,000,000 increase in the purchase price and the identity of the purchaser being modified. On July 16, 2013, the Trustees filed their Notice of Filing Fully Executed Purchase and Sale Agreement regarding the Watson Sale Agreement (the "Watson Sale Notice") [ECF No. 65 in the BBV case, and ECF No. 47 in the BDP case].

7.     On July 16, 2013, Judge Isicoff held a hearing in both Debtors' cases to determine whether the sale to Watson should be approved (the "Sale Hearing"). Present at the hearing were counsel for BBV, counsel for Crystal, counsel for Watson, the Trustees' counsel, the Trustees, counsel for the United States Trustee, counsel for secured creditor Sharon Christenbury as trustee, counsel for the Chapter 7 Trustee in a bankruptcy case pending as *In Re Renzi* and, most significantly, counsel for SLS Properties Three, LLC ("SLS") – a plaintiff in the case *sub judice*.

8.     At the outset of the Sale Hearing, the Trustees advised Judge Isicoff that, prior to the hearing, on July 12, 2013, Crystal sent the Trustees a termination letter on the First Sale Agreement and that they had received a new offer – now set forth in the Watson Sale Agreement.

9.     The Trustees advised Judge Isicoff that the purchase price offered by Watson ($21,500,000.00) represented the highest and best price under the circumstances and proffered unrebutted evidence of the same. (*See* Transcript of Hearing before the Hon. Laurel Isicoff, United States Bankruptcy Judge on July 16, 2013 [filed in the BBV case at ECF No. 84 and filed in the BDP case at ECF No. 54] (hereinafter cited at "Transcript at p. _") at pp. 15, 24).

---

[3]   At the time, the automatic stay regarding the first mortgagee was scheduled to expire in ten days. If closing of the sale of the Property had not occurred before lifting of the stay, it would have been lost to the Debtors' estates.

10. The Trustees further proffered that they had dealt with Watson at arm's length and in good faith. *Id*. at p. 24. The Trustees went on to proffer evidence regarding their evaluation of that the price was the highest and best price. *Id*.

11. During the Sale Hearing, Judge Isicoff also heard from Watson with regard to the absence of prior negotiations and interaction with Crystal. Watson offered unrebutted testimony that Watson's first negotiations with the Trustees began on July 15, 2013 and, a few days prior to that, they had been approached briefly by a Jorge Arevalo, who had been affiliated with Crystal, to invest in a "new deal" being promoted by Arevalo, which Watson immediately refused to do. *See* Transcript at pp. 34-35. Rather than investing with Arevalo, Watson had determined it was in its business interest to make its own offer. *Id*.

12. At the Sale Hearing, counsel for SLS stated on the record "***We fully support the sale motion as well***." (emphasis added) *See* Transcript at p. 42.

13. After hearing the evidence and representations of the parties present at the Sale Hearing, and reviewing the file, on July 22, 2013, Judge Isicoff issued an *Order Granting Motion for Authority to Sell Certain Real Property Free and Clear of Liens, Claims and Encumbrances (Re #22), and Granting Supplement to Sale Motion and Motion to Approve Partial Assignment of Foreclosure Judgment (Re: #37)* [ECF No. 73 in the BBV case, and ECF No. 51 in the BDP case] (the "Sale Order"). Thereafter, Watson closed its purchase of the Property.

14. The Asset Purchase Agreement set forth a provision whereby the parties agreed that:

> ALL DISPUTES ARISING OUT OF OR RELATED IN ANY MANNER TO THIS AGREEMENT, OR TO THE ESTATES, INCLUDING, WITHOUT LIMITATION, ANY DISPUTE RELATING TO THE INTERPRETATION, MEANING OR EFFECT OF ANY PROVISION HEREOF, WILL BE RESOLVED IN THE BANKRUPTCY COURT AND THE PARTIES HERETO EACH SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE

4

> BANKRUPTCY COURT FOR THE PURPOSE OF ADJUDICATING ANY SUCH DISPUTE, TO THE EXTENT THE JURISDICTION OF THE BANKRUPTCY COURT IS AVAILABLE.

*See* Asset Purchase Agreement at paragraph 15.

15. On March 27, 2015, the Trustees filed a *Joint Motion for Authority to Sell Certain Litigation Claims Pursuant to 11 U.S.C. § 363* (the "Litigation Sale Motion") which attached the Asset Purchase Agreement [ECF No. 262 in the BBV case and ECF No. 150 in the BDP case]. The Litigation Sale Motion between the Trustees and Plaintiff JAWHBS described the "Litigation Claims" to be sold as whatever rights and claims and all of each estate's right, title, and interest in any claims pursuant to 11 U.S.C. § 363(n) or otherwise relating to Crystal's offer to purchase the BBV and BDP parcels, as is, where is, without representations or warranties." *See* the Litigation Sale Motion, paragraph 8.

16. On May 8, 2015 and May 7, 2015 respectively, Judge Isicoff entered an *Order Granting Trustee's Joint Motion for Authority to Sell Certain Litigation Claims Pursuant to 11 U.S.C. § 363* [ECF No. 265 in the BBV case, and ECF No. 153 in the BDP case].

17. Thereafter on November 7, 2015, Plaintiffs JAWHBS and SLS filed their Complaint with Jury Demand in the United States District Court Southern District of Florida, Miami Division ("Complaint"). In their six count Complaint, Plaintiffs seek to effectively unwind the Sale Order and Watson's subsequent purchase of the Properties by seeking damages and other relief.

18. For the reasons discussed below, this matter should be transferred to the United States Bankruptcy Court for the Southern District of Florida because controlling authority makes it the correct forum for resolution of the parties' dispute. In the alternative, Mr. Cronig requests that this Court abstain from hearing this lawsuit until a resolution in the bankruptcy court of

Count III of the Complaint, which is a core proceeding premised on Bankruptcy Code Section 363(n). The resolution of Count III will affect (and result in disposition of) the remainder of the Complaint and, moreover, it is controlled by legal and factual issues with which the Bankruptcy Court is well-familiar and, indeed, which it has previously considered.

## MEMORANDUM OF LAW

### A. This Matter Should be Resolved by the United States Bankruptcy Court Pursuant to 28 U.S.C. § 157 and the Standing Order of Reference.

The efficiency and expertise of the bankruptcy courts in matters involving application of the Bankruptcy Code is generally accepted. Thus, 28 U.S.C. § 157(a) provides that:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Chief U.S. District Judge, Federico A. Moreno entered an Order of Reference dated March 27, 2012 further to 28 U.S.C. § 157, which provided, in pertinent part: "Pursuant to 28 U.S.C. Section 157(a) any and all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges of this district." *See* Administrative Order 2012-25. Each Count in the Complaint falls within the scope of the Order of Reference.

The Third Cause of Action in the Complaint seeks pursuant to 11 U.S.C. § 363(n) to recover damages and in effect financially change the sale of the Property to Watson that was approved by the bankruptcy court on July 22, 2013 after a full evidentiary hearing.[4] Plaintiffs

---

[4] Additionally as will be more fully described in Mr. Cronig's Motion to Dismiss the Complaint, there is a discrepancy between the Asset Purchase Agreement and the Litigation Sale Motion as to exactly what rights the Plaintiff JAWHBS, LLC purchased from the Trustees. That is, it is not clear whether Plaintiff JAWHBS, LLC acquired only claims arising out of the First Sale Agreement with Crystal or, in addition, acquired (if it could acquire) claims arising out of the Watson Sale Agreement. This confusion underscores the propriety of Mr. Cronig's request to transfer this case to the Bankruptcy Court for resolution – the Bankruptcy Court is in the best position to determine the meaning of its own order.

contend in their Complaint that there was some form of bid rigging, auction collusion and/or other acts by (some or all of) the Defendants that contributed to the Property being purchased at a below-market price. *See* Complaint at paragraph 71. Plaintiff's Third Cause of Action is thus a "core proceeding" within the Bankruptcy Court's purview – *i.e.*, it asserts a cause of action and proceedings "under title 11." *See In re Toledo,* 170 F.3d 1340, 1345 (11th Cir. 1999) (observing that a proceeding can be said to "arise under title 11" when it "invoke[es] a substantive right created by the Bankruptcy Code"); *see also* 28 U.S.C. § 157(b)(2)(n) (recognizing that core proceedings include "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate.").

Plaintiffs' Complaint contains five additional causes of action based on the alleged "collusion" involved in the court-approved sale of the Property: (1) First Cause of Action (antitrust violations); (2) Second Cause of Action (violation of the Florida Deceptive and Unfair Trade Practices Act); (3) Fourth Cause of Action (Actual and Constructive Fraud); (4) Fifth Cause of Action (Civil Conspiracy); and (5) Sixth Cause of Action (Interference with Prospective Economic Advantage/Business Relationship). Each of these Counts is "related to a case under title 11" (*e.g.*, the BBV and BDP bankruptcies).

Controlling decisional law recognizes that the question of "whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir. 1990); s*ee also In re Toledo,* 170 F.3d 1340. The focus in applying this standard is on the word "'conceivable', which makes the jurisdictional grant extremely broad." *Id.* at 1345 (citing *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3rd Cir. 1991)). Here, the only distributions made in the BBV and BDP bankruptcies (administrative or otherwise) were made as

a result of the proceeds from sale of the Property to a Defendant in the case *sub judice*. It is difficult to envision a more direct impact on the administration of the BBV and BDP bankruptcies that an attack on the sale, which includes damages claims against the purchaser of the Property.

> **B.    The Court Should Abstain from Hearing This Matter Pursuant to 28 U.S.C. Section 1334(c)(1).**

Mr. Cronig alternatively requests that this Court abstain from hearing this matter. Section 1334(c)(1) of Title 28 U.S.C. permits the district court to abstain from exercising jurisdiction over a proceeding such as this one, which arises in a title 11 proceeding "in the interest of justice, or in the interest of comity with State courts . . . ."[5] There is every reason in the interest of justice for the Bankruptcy Court to handle this case as part of the BBV and BDP proceedings and for the District Court to abstain.

The Bankruptcy Court is uniquely positioned to hear and determine this case where she presided over (and determined) the factual, procedural, and legal matters which control resolution of Plaintiffs' case. More specifically, Judge Isicoff has the following particularized knowledge:

- Judge Isicoff is familiar with the Property, including the location, plans, zoning and valuation;

- Judge Isicoff is familiar with the previous foreclosures on the Property, the interests of the secured creditors and the prior offers made for the Property:

- Judge Isicoff presided over two evidentiary hearings where she made factual determinations concerning the negotiations, for sale of the Property, the Property's market value, and the *bona fides* of the competing purchasers; and

- Judge Isicoff is familiar with the specific area of law concerning 11 U.S.C. § 363(n) and has numerous years of experience on the bench determining causes of action based on the same.

---

[5] The language of the statute clearly is not limited to abstention in favor of state courts, since the possible conditions for abstention are stated in the disjunctive. *In re Apex Oil Co.*, 980 F.2d 1150, 1152-53 (8th Cir. 1992); *In re Mack*, No. 6:06-cv-1782-Orl-19, 2007 WL 1222575, at *6-7 (Fla. M.D. April 24, 2007).

These considerations strongly favor the District Court abstaining from hearing this matter and referring it to the Bankruptcy Court under the standing Order of Reference in this District. *See* Order of Reference. This action is closely related to the ongoing BDP and BBV bankruptcy proceedings. It can be promptly adjudicated in the bankruptcy forum by a judge who is intimately familiar with the facts, issues and entities, and indeed, with the facts of this dispute specifically. As Judge Isicoff has spent a substantial period of time with the BDP and BBV bankruptcy proceedings and is well familiar with underlying factual circumstances relating to the sale of the Property, judicial efficiency strongly favors this case being determined by the Bankruptcy Court. *In re United Container LLC*, 284 B.R. 162, 169 (Bankr. S.D. Fla. 2002).

## CONCLUSION

WHEREFORE, Defendant, STEVEN CARLYLE CRONIG, respectfully requests that this Court grant his Motion to Transfer to the United States Bankruptcy Court for the Southern District of Florida pursuant to 28 U.S.C. § 157(b), or, in the alternative, Motion to Abstain and for such other and further relief as this Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Counsel for STEVEN CARYLE CRONIG has made reasonable efforts to confer with counsel for the Plaintiffs and those Defendants that have entered an appearance in this proceeding who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the Motion to Transfer. Counsel for the Plaintiffs will not consent to the relief requested. Some of the counsel for the remaining Defendants have agreed and some have not.

Dated: this 3rd day of February, 2016.

          Respectfully submitted**,**

          **TRIPP SCOTT, P.A.**
*Counsel for Steven Carlyle Cronig*
110 S.E. 6th Street
Fifteenth Floor
Ft. Lauderdale, FL 33301
Telephone:  954-525-7500
Facsimile:   954-761-7500

By:    /s/ *Charles M. Tatelbaum*
CHARLES M. TATELBAUM
*Florida Bar No. 177540*
cmt@trippscott.com
MICHAEL C. FOSTER
*Florida Bar No. 0042765*
mcf@trippscott.com
EDWARD R. CURTIS
*FLORIDA BAR NO.: 236845*
erc@trippscott.com
CHRISTINA V. PARADOWSKI
*Florida Bar No. 0056708*
cvp@trippscott.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 3, 2016, I filed the foregoing with the Court via the CM/ECF system which sent notification to all parties of interest entitled to notice as indicated on the attached service list, and that a true copy hereof was sent on February 3, 2016, by U.S. First Class mail to all parties entitled to notice as indicated on the attached service list.

By:    /s/ *Charles M. Tatelbaum*
CHARLES M. TATELBAUM

1248708v1 999103.0001

## SERVICE LIST

Jerrold A. Wish, Esq.
The Wish Law Firm
6000 Island Blvd., Suite 2006
Aventura, FL 33160-3788
Telephone:   786-200-7077
jwish@wishlaw.net
*Counsel for Plaintiffs*
*JAWHBS LLC &*
*SLS Properties Three, LLC*

Adam J. Breeden, Esq.
Adam@breedenandassociates.com
*Counsel for Plaintiffs*
*JAWHBS LLC &*
*SLS Properties Three, LLC*
*Pro Hac Vice*

1248708v1 999103.0001