UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.  15-24176-CV- GAYLES

JAWHBS LLC, a Florida limited liability
company,

       Plaintiff,

vs.

JORGE E. AREVALO, an individual;
JA ENERGY RESOURCES, LLC, a Florida
limited liability company; SHUTTS &
BOWEN, LLP, a Florida limited liability
partnership; KEVIN D. COWAN, an
individual; OMAR BOTERO aka OMAR
BOTERO-PARAMO, an individual;
ALIANZA FINANCIAL SERVICES, LLC, a
Florida limited liability company; ALIANZA
HOLDINGS, LLC, a Florida limited liability
partnership; ALBERT F. DELANEY, aka AL
DELANEY, an individual; CRYSTAL
TOWER PARTNERS II, LLC, a Florida
limited liability company; CRYSTAL TOWER
ON BRICKELL PLAZA, LLC, a Florida
limited liability company; WATSON
BRICKELL DEVELOPMENT, LLC f/k/a
WATSON INVESTIGATIONS, LLC, a
Florida limited liability company; STEVEN
CARLYLE CRONIG, an individual; and
FRANCIS H. "FRAN" SCOLA, III, an
individual;

       Defendants.

**PLAINTIFF SLS PROPERTIES THREE, LLC'S OPPOSITION TO MOTIONS FOR
ATTORNEY'S FEES AND COSTS [ECF # 185, 186, 187, 190, 192, 194 & 197]**

**PLAINTIFF SLS PROPERTIES THREE, LLC'S OPPOSITION TO MOTIONS FOR ATTORNEY'S FEES AND COSTS [ECF # 185, 186, 187, 190, 192, 194 & 197]**

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.  Background of Plaintiffs' Claims

SLS PROPERTIES THREE, LLC ("SLS PROPERTIES") will discuss the underlying civil claims in this matter because the law regarding fee applications requires the Court to consider the "reasonableness" of certain offers.

Plaintiffs filed their First Amended Complaint [ECF # 63] alleging the Defendants had various roles in a bid rigging conspiracy that resulted in certain valuable parcels of land being sold for $10,000,000 less than true value at a bankruptcy court sale/auction.  Plaintiffs were an affected creditor, SLS PROPERTIES and an entity to which the trustees had assigned their rights to pursue the claims, JAWHBS.  SLS PROPERTIES considered its claims to primarily be federal antitrust bid rigging claims, but filed all of the following causes of action:

1. Sherman/Clayton Act antitrust claims;

2. Florida Deceptive and Unfair Trade Practice Act (FDUTPA) claims predicated on federal law violations of the FTC and Sherman Act;

3. Fraud claims;

4. Civil conspiracy/aiding and abetting claims; and

5. Interference with Economic advantage claims;

Plaintiffs have disclosed a total of $52,054,429 in alleged damages, consisting of $10,000,000 in principal damages, $20,000,000 in treble damages recoverable by statute, $10,000,000 in punitive damages, $12,203,963.67 in attorney's fees recoverable by statute and $54,429.90 in litigation costs thus far.  (See Second Supp. 26(a) disclosures, Ex. 1, pg. 12). Plaintiffs have disclosed reports from an auction expert (Ex. 2), a real estate developer expert (Ex.

2

3), a real estate appraiser expert (Ex. 4) and a real estate broker expert (Ex. 5) to establish both the detrimental effect of the Defendants' efforts on the sale price and the substantial amount of money lost. Plaintiffs have disclosed 38 witnesses and over 2,500 pages of documents in this multi-defendant bid rigging case.

**B.  Issues of Standing to Bring the Claims for SLS PROPERTIES**

The First Amended Complaint [ECF # 63] was filed by two legal entities. The first legal entity was SLS PROPERTIES. SLS PROPERTIES was the largest unsecured, non-priority creditor in the bankruptcy proceeding. Of the creditors, it was the creditor who was the most financially damaged by the alleged collusion—other secured and priority creditors' claims were paid in full. (See Trustees' Final report, Ex. 6). Therefore, SLS PROPERTIES asserted *direct* standing as a creditor under applicable law, including broad statutory provisions in the Sherman Act and the FDUTPA which essentially provided that any injured person or entity may file civil claims under those acts.

The second legal entity bringing claims was JAWHBS LLC ("JAWHBS"). JAWHBS was a company formed by the principals of SLS PROPERTIES to acquire an assignment of the rights of the trustees/bankruptcy estates to bring claims arising from the collusion. Thus JAWHBS stood in the shoes of the trustees and could bring all of the trustees' claims, including a bankruptcy-specific claim under 11 USC § 363(n).

If the Court wonders why Plaintiffs *both* filed rather than only one entity filing, the reason is because counsel for the Plaintiffs correctly predicted that the Defendants would challenge the standing of whatever entity filed these claims. Indeed, by way of a Joint Motion to Dismiss [ECF # 92], *all* Defendants filed standing challenges to *both* Plaintiffs. While counsel for the Plaintiffs believed that it was arguable that *both* entities had legal standing under applicable law, the facts

of this case were unique and complex and involved an intermingling of bankruptcy law and other federal law.  Therefore, the position the Court would ultimately take on standing was unsettled at the time.  The standing issues in this case complete with citations were extensively briefed by Plaintiffs in response to a Rule 11 Motion.  See Section II(C) to Plaintiff's Opposition to Motion for Rule 11 Sanctions [ECF # 204], pgs. 3-9, which SLS PROPERTIES hereby incorporates into this Opposition.

For example, Plaintiffs were aware of some cases that held that a creditor to a bankruptcy could not bring claims *directly* but instead had to rely on the trustee to bring claims for the Estate.  However, this law appeared to be unsettled.  Plaintiffs' counsel was unable to locate Eleventh Circuit cases on this topic.  Moreover, even other circuits that had case law on this standing issue found an exception that if the creditor had a "particularized injury" it could still assert standing, an exception that was even less well-developed than the general rule.  SLS PROPERTIES felt it could assert this "particularized injury" exception since other creditors had been paid in full and thus had no damages but because of its lack of priority position in bankruptcy, SLS PROPERTIES sustained millions in damages.  Adding to the uncertainly was the fact that this standing rule appeared to apply mostly to actions *against the debtor* and its application to non-debtor, third parties as the Defendants in this case were to the bankruptcy, had no Eleventh Circuit precedent that counsel could located.  Lastly, in In re Am. Paper Mills of Vt., Inc., 322 B.R. 84 (Bankr. D. Vt. 2004), a case with very similar facts to the present case, a creditor committee had been given standing to sue, which showed that claims of this kind were certainly not limited to only the trustees.  In sum, counsel for SLS PROPERTIES thoroughly researched the issue of that entity's standing prior to filing the Complaint and determined that the particular standing issue this case presented was unsettled nationally, let alone in the Eleventh Circuit where no applicable case law was found.

4

C.      **The August 4, 2016 Order Dismissing SLS PROPERTIES THREE, LLC**

On August 4, 2016, the Court entered an Order [ECF # 176] which permitted the claims of Plaintiff JAWHBS to continue in this matter while dismissing the claims of Plaintiff SLS PROPERTIES for lack of standing.  The rationale of the ruling was that because the alleged collusion in this matter occurred in the context of a *bankruptcy* court sale/auction of land, SLS PROPERTIES lacked standing as a creditor of the estate to file claims *directly* against the alleged colluding parties.  Instead, that standing or those claims belonged to the bankruptcy trustees acting on behalf of the bankruptcy estates, which had transferred those rights to Plaintiff JAWHBS.  Thus, the Court ruled that *only* JAWHBS had standing to pursue the claims.

Despite the case moving forward as to JAWHBS, the Court's ruling prompted a deluge of attorney's fees requests against SLS PROPERTIES by the various defendants.  These included Defendant Shutts & Bowen, LLP's and Cowan's Motion for Attorney's Fees [ECF # 185], Defendant Shutts & Bowen, LLP's and Cowan's Second Motion for Attorney's Fees [ECF # 186], Defendant Watson Brickell Development LLC's Motion for Attorney's Fees [ECF #187], Defendant Cronig's Motion for Attorney's Fees [ECF # 190], Defendants Botero and Alianza's Motion for Attorney's Fees [ECF #192], Defendant Watson Brickell Development LLC's Second Motion for Attorney's Fees [ECF # 194], and Defendant Cronig's Second Motion for Attorney's Fees [ECF # 197].  SLS PROPERTIES now opposes those motions.

II.     **GENERAL LAW REGARDING FLORIDA VERSUS FEDERAL RULES FOR RECOVERY OF ATTORNEY'S FEES AND COSTS**

Both Florida and the United States generally follow the so-called American Rule regarding attorney's fees.  Under the American rule, a prevailing party is generally *not* entitled to recover reasonable attorney's fees from the losing party. See, Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 254-55 (1975).

The State of Florida has modified the common law in some instances. Florida has enacted Fla. Stat. § 768.79, which is a cost and fee shifting statute that provides, under certain circumstances, for an award of attorney's fees against a plaintiff who rejects a formal settlement offer and fails to prevail at trial. The Florida Supreme Court has stated that the purpose and intent of this statute is not to abrogate the American Rule of attorney's fees, but rather "to encourage parties to settle claims without going to trial." Aspen v. Bayless, 564 So.2d 1081, 1083 (Fla. 1990). The statute is not designed to result in second guessing or penalize a litigant who brings a legitimate but ultimately unsuccessful claim. Instead, the statute is designed "to penalize a litigant that *unreasonably* refuses to settle." Williams Farm P'ship v. Am. Citrus Prods. Corp., 2009 U.S. Dist. LEXIS 57085, *5 (M.D. Fla. June 30, 2009). Fla. Stat. § 768.79 "must be strictly construed [against those invoking it] because the offer of judgment statute and rule are in derogation of the common law rule that each party pay its own fees." Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276, 278 (Fla. 2003).

### III.     LAW AND ARGUMENT-FLA. STAT. § 768.79

#### A. **FRCP 68 Does not Apply and Cannot form the Basis of a Costs Award in this Case**

Defendants seek costs under FRCP 68 pursuant to their offers. This request should be denied by the Court for two reasons. First, none of the settlement offers stated they were being made under FRCP 68, only Florida state law was cited in them. The Rule was simply not invoked. Second, FRCP 68 does not apply to cases where a defendant obtains a defense judgment based on the plain language of the rule. This was definitively decided by the US Supreme Court in Delta Air Lines v. August, 450 U.S. 346, 354 (U.S. 1981) (analyzing and finding that FRCP 68 "does not apply to judgments in favor of the defendant…"). Thus, nothing may be awarded pursuant to FRCP 68.

B. **As a Threshold Issue, Fla. Stat. § 768.79 does not Apply to This Case Since it is not Based on Diversity Jurisdiction**

*1. Fla. Stat. § 768.79 should not Apply because this is not a Diversity Jurisdiction Case*

As a threshold issue, this Court must determine whether the Defendants can properly invoke Fla. Stat. § 768.79 at all.  The Defendants correctly recognize that the Eleventh Circuit has held that *in a diversity action*, Fla. Stat. § 768.79 is considered substantive law and therefore applies.  McMahan v. Toto, 256 F.3d 1120 (11th Cir. Fla. 2001), see Menchise v. Senterfitt, 532 F.3d 1146, 1150 (11th Cir. Fla. 2008) ("We have held that section 768.79 is substantive law *in diversity cases*." [emphasis added]).

However, the case presently before the Court is *not* filed as a diversity action.  Instead, it is filed under the federal question jurisdiction pursuant to 28 USC § 1331, federal question jurisdiction.  State law claims are submitted under 28 USC § 1367, supplemental jurisdiction.  Thus, diversity jurisdiction has never been invoked and this case is a hybrid of federal and state law claims.  The 11th Circuit has *never addressed* the extent to which Fla. Stat. § 768.79 applies in such a case, so the test to be applied is unclear.

The scant law to be found on this subject holds that federal courts do *not* apply Fla. Stat. § 768.79 to *federal* claims.  Design Pallets, Inc. v. Gray Robinson, P.A., 583 F. Supp. 2d 1282, 1287 (M.D. Fla. 2008) (analyzing Menchise and declining to apply Fla. Stat. § 768.79 to federal claims).  In fact, the language of the Design Pallets opinion states that as to federal claims, federal law which does not allow the recovery of attorney's fees based on FRCP 68, actually "preempts" state law on that subject and disallows recovery of attorney's fees.  Design Pallets, Inc., 583 F. Supp. 2nd at 1287 ("[T]he Supremacy Clause and the Costs Statute preempt [Florida Statute section] 768.79 where a district court's jurisdiction is founded solely on federal question."); accord In re Am. Airlines Flight 331, 2011 U.S. Dist. LEXIS 132419 (S.D. Fla. Nov. 16, 2011) (citing

Design Pallets).  In fact, in Design Pallets, the district court recognized the difficulty of applying Fla. Stat. § 768.79 to "hybrid" cases involving state and federal law and declined to award fees under Florida law, although it based its decision on the fact that jurisdiction of supplemental state law claims had earlier been declined.

The clearest case addressing this issue and denying fees is Keesee v. Bank of Am., NA, 371 F. Supp. 2d 1370 (M.D. Fla. 2005).  In that matter, the Middle District of Florida found that because the federal district court was not exercising *diversity* jurisdiction and because the state law claims were simply patterned after or dependent on the main federal claims in the action, **Fla. Stat. § 768.79 did not apply to the action**.  This is analogous to this case where Plaintiffs' main causes of action, Sherman Act, Fair Trade Act violations and 11 USC § 363(n) claims, are all federal. The supplemental state law claims such as the Florida Deceptive and Unfair Trade Practices Act claim and Florida Antitrust Act merely incorporate or depend on the federal claims.

If the Court looked to see if the primary claims were federal or state, the Court would find the primary claims to be based on federal law and, thus, Fla. Stat. § 768.79 would not apply at all. Even if the Court applied some hybrid test and held that Fla. Stat. § 768.79 would apply to some extent to the supplemental state law claims, the Defendants could not simply bootstrap their state law fee request to recover fees spent defending federal claims.  The Defendants have not shown that any of their fees were incurred to *specifically* defend against the state law claims above and beyond what would have been incurred to defend the federal claims.  Thus, the entirety of their fee and cost motion should be denied.

2.    *Conflict with Federal Law Prevents Application of Fla. Stat. § 768.79 to this Case*

The Eleventh Circuit discussed how to apply Fla. Stat. § 768.79 in a case where there was an actual conflict with federal law in Horowitch v. Diamond Aircraft Indus., 645 F.3d 1254, 1257

(11th Cir. 2011). In that case, the Eleventh Circuit acknowledged that under the Erie doctrine as explained in Hanna v. Plumer, 380 US 460 (1965) a state law or rule is *not* applied in federal court where the state law or rule actually conflicts with federal law. Such issues were not addressed in Menchise because it was solely a diversity action. However, the Eleventh Circuit found that where Florida state law is in conflict with federal law, federal law controls under the Erie analysis.

Several district court opinions have held that Fla. Stat. § 768.79 actually does conflict with certain federal statutory attorney's fees schemes and, therefore, Florida law is preempted and cannot apply in those cases. At least one district court case has held that the Sherman Act (invoked in this case) preempts fee shifting provisions in Florida state law actions that mirror federal antitrust claims such as the Florida Antitrust Act and the FCUTPA. JES Props., Inc. v. USA Equestrian, Inc., 432 F. Supp. 2d 1283, 1293 (M.D. Fla. 2006) ("To award attorneys' fees under Fla. Stat. § 768.79, based upon state law claims permitted in federal court by the supplemental jurisdiction statute would impermissibly substitute the interests of Fla. Stat. § 768.79 for those expressly provided for by the Sherman Act"). This is because Congress clearly chose to award attorney's fees to a successful *plaintiff* under federal antitrust law but deny them to a successful *defendant*. 15 USC § 15 (federal antitrust Clayton Act allows only recovery of attorney's fees to plaintiffs). See also, Garan Inc v. M/V Aivik, 907 F. Supp. 397 (S.D. Fla. 1995) (finding that because Fla. Stat. § 768.79 conflicts with federal maritime law on attorney's fees, federal law prevails and Florida offer of judgment rules do not apply under the Erie analysis).

Thus, Florida law to the extent it conflicts with the federal statutory scheme for awarding attorney's fees is unenforceable in this case.

/ /

/ /

9

C.  **The Nominal Settlement Offers were Not Made "in good faith"**

If, arguendo, the Court applies Fla. Stat. § 768.79 to this case, Florida law requires that a settlement offer be made "in good faith" to be enforceable.

*1.  Applicable Case Law Regarding "Good Faith" and Nominal Offers*

Fla. Stat. § 768.79(7)(a) provides that a court may, in its discretion, determine that an offer was not made in good faith and disallow an award that a defendant would otherwise be entitled to by the statute.  Fla. Rule Civ. P. 1.442(h)(1) also provides that "[i]f a party is entitled to costs and fees pursuant to applicable Florida law, the court may, in its discretion, determine that a proposal was not made in good faith. In such case, the court may disallow an award of costs and attorneys' fees." Fla. R. Civ. P. 1.442(h)(1).  For the following reasons, the Court should <u>not</u> find the settlement offers in this case to have been made "in good faith" against SLS PROPERTIES.

Case law provides ample guidance for the Court on this rigorous "good faith" standard. "In determining if an offer was made in good faith [under Fla. Stat. 768.79], the question to be considered is whether the offer or proposal bears a reasonable relationship to the amount of damages suffered and was a realistic assessment of liability." <u>JES Props., Inc.</u>, 432 F. Supp. 2d at 1294 (M.D. Fla. 2006); <u>James v. Wash Depot Holdings, Inc.</u>, 489 F. Supp. 2d 1336, 1340 (S.D. Fla. 2007).  ("The Florida state courts have held that a good faith offer must bear a reasonable relationship to damages and be founded on a realistic assessment of the potential liability.").

A heightened scrutiny applies where only nominal or token settlement offers are made.  "In cases where only a nominal offer was made, a reasonable basis exists [for the offer] **only** where the undisputed record **strongly indicates** that the defendant had no exposure. **A nominal offer should otherwise be stricken**." <u>General Mech. Corp. v. Williams</u>, 103 So. 3d 974, 976 (Fla. Dist. Ct. App. 1st Dist. 2012) (emphasis added).  The legal standard that there must be an "undisputed

record" that the defendant has no exposure in order to enforce a nominal offer is, of course, an exceedingly difficult standard to satisfy for a nominal offer.

The defense will no doubt argue that the mere fact they prevailed on the standing issue shows that even a nominal offer was in good faith. However, this type of argument has been *repeatedly rejected* under the applicable law. The mere fact that the defendant ultimately prevailed in the case is meaningless for the "good faith" standard. Pickett v. R.J. Reynolds Tobacco Co., 948 F. Supp. 2d 1314, 1322 (M.D. Fla. 2013) (applying Florida law, "If a party's later success at trial automatically equated to a finding of good faith at the time the proposal was made, the 'good faith' provision in both the statute and rule would be rendered meaningless."). In fact "even though the offeror is the prevailing party at the summary judgment stage, if the issue is a novel or complex legal issue, a nominal offer may be found to lack good faith." Official Cargo Transp. Co. v. Certain Interested Underwriters at Lloyds, 368 F. Supp. 2d 1314, 1317 (S.D. Fla. 2005) (discussing Fla. Stat. § 768.79).

Additionally, "[t]he Eleventh Circuit has held that 'the fact that a losing party has acted in good faith or that his legal position had arguable merit will justify an exercise of the district court's discretion in deciding not to award attorney's fees.'" Wash Depot Holdings, Inc., 489 F. Supp. 2d at 1339 (denying fees under Fla. Stat. § 768.79) citing Sherry Mfg. Co. v. Towel King of Fla., 822 F.2d 1031, 1034 (11th Cir. 1987).

In addition to the Eleventh Circuit's discussion of a "legal position" with "arguable merit," several other types of evidence including the amount of the offer, the timing of the offer and potential liability and the totality of the case have been found relevant to a finding of good faith. See, e.g., City of Neptune Beach v. Smith, 740 So. 2d 25, 27 (Fla. 1st DCA 1999) (holding that relevant objective factors include amount of each offer and potential liability offeror faced at time

offer was made); <u>Fox v. McCaw Cellular Commc'ns of Florida, Inc.</u>, 745 So. 2d 330, 333 (Fla. 4th DCA 1998) (holding that the trial court may consider the totality of the whole case record when determining whether good faith was present).

      2.  *The Offers were Nominal and not Made in "Good Faith"*

For the following reasons, SLS PROPERTIES maintains that the offers in this case were not "reasonable" and therefore cannot support an award of fees and costs:

      **a)  The Offers were Nominal Compared to the Potential Exposure**

As previously set forth in Section I(A) of this brief, Plaintiffs have presented a case with principal damages of $10,000,000. These are subject to trebling under applicable law and the Sherman Act and Clayton Act allow recovery of all attorney's fees and costs as well as punitive damages. Thus, Plaintiffs' total disclosed damages were $52,054,429.90 (See Ex. 1).

Under any standard applied, the settlement offers of $5,000 made by Defendants COWAN, SHUTTS & BOWEN, WATSON BRICKELL DEVELOPMENT and CRONIG were nominal offers that could not possibly be considered reasonable. $5,000 is .009% of the total alleged damages. $5,000 is less than 1/10th Plaintiffs' costs to date of $54,429.90. The trustees alone incurred over $200,000 in investigating the collusion claims, $5,000 is less than 2% of that figure. Defendants may as well have offered $1.00 to settle the claims. The offers of Defendants BOTERO and ALIANZA were even less, only $1,500. The offers were clearly nominal.

      **b)  The Offers were Made Early in Litigation Before any Significant Discovery**

Where a defendant is sued and then quickly files a nominal or token settlement offer, it is apparent that the defendant is simply trying to opt out of the American Rule of attorney's fees. Discovery in this case opened in January 2016. None of the Defendants produced anything substantial in their FRCP 26(a) disclosures, which were all token disclosures. At the time of the

offers, the Defendants had not yet responded to full written discovery.  No depositions had been taken at the time and discovery issues brought by Plaintiffs had not yet been resolved.

In short, the timing of the offers was not on the eve of trial after the facts of the case were well-known to all and discovery was completed.  Instead, these were nominal offers quickly made that could not possibly be accepted at such an early stage in litigation.

### c) SLS PROPERTIES presented an Arguable Issue of Standing Given Unclear Authority

The Eleventh Circuit has stated that 'the fact that a losing party has acted in good faith or that his legal position had arguable merit will justify an exercise of the district court's discretion in deciding not to award attorney's fees.'" Sherry Mfg. Co., 822 F.2d at 1034.

As previously stated in Section I(B) of this brief, when this case was filed it was fully anticipated that the Defendants would challenge the standing of both Plaintiffs under various theories.  There was an absence of case law from both the Eleventh Circuit and the Southern District of Florida as to the standing of creditors to directly sue non-parties to a bankruptcy that allegedly colluded.  In fact, even the case law from other jurisdictions held there were exceptions for creditors that suffered "particularized" injury as SLS PROPERTIES maintains it did.

Until the Court decided this standing issue, it would not have been reasonable for SLS PROPERTIES to sacrifice its direct claims for a nominal offer.

### D. The Settlement Offer was Improperly Served by Defendant Cronig and Therefore is Invalid

As to Defendant CRONIG, there exists another basis to deny his request based on insufficient service.  In Horowitch v. Diamond Aircraft Indus., 645 F.3d 1254 (11th Cir. 2011) the Eleventh Circuit addressed whether a Florida statutory settlement offer must be served in conformity with Florida or Federal Civil Rules.  Fla. R. Civ. P. 1.442 allows for e-mail service of

a settlement offer versus FRCP 5, which does not. The Eleventh Circuit in Horowitch found that Rule 5 of the Federal Rules of Civil Procedure *conflicts* with the Florida rules for service of a statutory offer.  Therefore, under the applicable US Supreme Court precedent, the federal rule, meaning FRCP 5 as to service of papers, applies.

In this case, Defendant CRONIG served his offer of judgment only *via e-mail* on Plaintiffs' counsel as clearly indicated by the certificate of service.  No US Mail service or other method of service under FRCP 5 occurred.  At no time has Plaintiffs' counsel consented to e-mail service.

Because the offers were served only by e-mail—an unacceptable form of service under FRCP 5—service was improper and the Florida statutory offers are of no effect.  Although this may seem to be a technical issue, Florida case law is replete with warnings that strict compliance with applicable law or rules regarding these settlement offers is required to enforce them.  Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276, 277 (Fla. 2003) (Fla. Stat. § 768.79 is to be "strictly construed because the offer of judgment statute…and the rule are in derogation of the common law rule that each party pay its own fees.").  Therefore, CRONIG's offers are invalid and cannot form the basis of an award.

E.   **The Amount of Attorney's Fees Sought is Unreasonable**

Additionally, the amount of attorney's fees sought is unreasonable.  Defendants WATSON have sought $67,114 in fees while Defendant CRONIG has sought $30,120.   Defendants BOTERO, ALIANZA, SHUTTS & BOWEN, LLP and COWAN did not state an amount, seeking a ruling on entitlement first.  In the aggregate, a request for over $200,000 in fees is likely.

Fla. Stat. § 768.79 states that:

(b)  When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:
1.  The then apparent merit or lack of merit in the claim.

2. The number and nature of offers made by the parties.
3. The closeness of questions of fact and law at issue.
4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

These factors seem to overlap in places and collapse back into the "good faith" entitlement analysis instead of a calculation or numerical analysis.  However, SLS PROPERTIES will brief them as follows:

### 1.  Factor One - Then Apparent Merit

Standing issues are by definition all-or-nothing type propositions.  However, as previously stated in this brief (1) the issue of legal standing was arguable and unsettled in the Eleventh Circuit and (2) the mere fact that the defense ultimately prevailed does not by itself establish entitlement.

### 2.  Factor Two - Number and Nature of Offers

As previously briefed, the offers here were for $5,000 with a few only $1,500, plainly nominal offers that could not have been accepted at the time.  The offers were made very early in litigation and before written discovery and depositions were completed.

### 3.  Factor Three - Closeness of Questions of Law and Fact

As briefed in Section II(B) of this Opposition, SLS PROPERTIES considered its issue of standing to be arguable and unclear under Eleventh Circuit precedent or lack thereof.  In fact, the Defendants had argued both sides of the standing argument in their briefs, proving that either position was arguable as to which entity had standing, if not both.

### 4.  Factor Four - Failure to Furnish Information

Plaintiffs believe that all of the Defendants are concealing relevant information.  Several discovery hearings have been held, depositions have mentioned mysterious, now-missing

15

documents and Defendants WATSON BRICKELL DEVELOPMENT and CRONIG have simply disregarded a discovery order directing them to produce documents and supplement responses.  A full brief could be written on these evasive discovery issues by themselves.

     **5.**   **Factor Five - Test Case**

This action is probably not a "test case" but it did present unclear issues of the standing of a creditor under bankruptcy law to file a direct action against potential bidders in a bankruptcy auction that colluded.  Therefore, this factor would favor SLS PROPERTIES, if any party.

     **6.**   **Factor Six - Additional Delay Cost and Expenses for not Accepting the Offers**

There was no significant delay cost and expense incurred by the Defendants to defend SLS PROPERTIES' claims.  The Defendants would have had to defend the claims of co-Plaintiff JAWHBS regardless and it does not appear that defending SLS PROPERTIES' claims added any significant cost above that.

     **7.**   **Other Factors or Considerations**

In ruling on this fee request, the Court should also consider the overall status of this case. The Defendants had to defend claims from SLS PROPERTIES and JAWHBS.  The mere fact that SLS PROPERTIES filed claims did not substantially increase the amount of attorney's fees and costs that the defense would have to spend.  In fact, the defense does not appear to have made *any* attempt to parse out fees spent *specifically* to defend claims brought by SLS PROPERTIES as opposed to the claims of JAWHBS.  Instead, they merely seek all fees ever incurred.

Moreover, it is undeniable that the Defendants cannot be awarded fees as to the federal claims under the antitrust Sherman and Clayton Acts.  These are the lead causes of action.  At best they could only be awarded fees on the state law claims, but even that proposition is contested. Essentially, the fees sought by the defense would have been incurred to defend this case overall

and to defend the federal claims.  The enormous fee requests presented simply do not compare with the actual, very small additional fees—if any—that the defense had to incur *specifically* to defend the state law claims filed by SLS PROPERTIES.  What the Defendants are collectively trying to do in this situation is to bootstrap certain fees against SLS PROPERTIES that they would have incurred anyway defending the claims of JAWHBS or the federal claims for which they cannot recover fees.  The Court should disallow this.

Considering all of these factors as a whole, an award sure to exceed $200,000 if all of the Defendants are allowed to pile on would be unreasonable.  At best, the Court could only award the additional amounts the Defendants expended to defend the supplemental state law claims of SLS PROPERTIES only, as opposed to the federal claims for which Fla. Stat. § 768.79 does not apply. Defendants have neither tried to nor could they effectively parse out such a figure.  This is simply a case where no fees should be awarded.

### IV.    LAW AND ARGUMENT-FLA. STAT. § 501.2105 AND § 542.22

Next, the Defendants seek an award of fees under Fla. Stat. § 501.2105 (the Florida Deceptive and Unfair Trade Practices Act) and Fla. Stat. § 542.22 (Florida Antitrust Act).  These requests should also be denied as a basis for fees for several reasons.

### A.    Fees Should not be Granted as they Conflict with Federal Law

First, as previously briefed to the Court, where state fee shifting statutes conflict with federal law, federal law controls.  At least one Florida based district court case has already held that the Sherman Act (invoked in this case) preempts fee shifting provisions in Florida state law actions that mirror federal antitrust claims such as the Florida Antitrust Act and the FDUTPA.  JES Props., Inc., 432 F. Supp. 2d at 1293 ("To award attorneys' fees under Fla. Stat. § 768.79, based upon state law claims permitted in federal court by the supplemental jurisdiction statute would

17

impermissibly substitute the interests of Fla. Stat. § 768.79 for those expressly provided for by the Sherman Act"). This is because Congress clearly chose to award attorney's fees to a successful *plaintiff* under federal antitrust law but deny them to a successful *defendant*. 15 USC § 15 (federal antitrust Clayton Act allows only recovery of attorney's fees to plaintiffs). See also, Garan Inc v. M/V Aivik, 907 F. Supp. 397 (S.D. Fla. 1995) (finding that because Fla. Stat. 768.79 conflicts with federal maritime law on attorney's fees, federal law prevails and Florida offer of judgment rules do not apply under the Erie analysis).

Thus, because the Florida statutes here merely mirror or depend on federal causes of action, the state fee-shifting provisions actually conflict with federal law and should not be invoked.

### B. Fees are not Awardable under the FDUTPA (§ 501.2105)

An award of attorney's fees under the FDUTPA (§ 501.2105) is not mandatory. The law was amended in 1994 to eliminate all mandatory fees and provide the Court discretion as to whether to award fees and in what amount. See, GMAC v. Laesser, 791 So. 2d 517, 520 FN3 (Fla. Dist. Ct. App. 4th Dist. 2001) (noting an award of fees is no longer mandatory). The existing statute clearly states the court "may" award fees to a prevailing party. However, the court may not award fees until *after* any appeals have been exhausted. Nolan v. Altman, 449 So. 2d 898, 901 (Fla. Dist. Ct. App. 1st Dist. 1984) ("section 501.2105 clearly and unambiguously precludes an award of attorney's fees until *after* a judgment has been entered by the trial court and the appellate process, if any, has run its course."); Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 368 (Fla. 2013) ("exhaustion of all appeals" is a precursor to an award under the FDUTPA). There is no final, appealable order in this case because the claims of JAWHBS continue. Thus, the appellate process is not finished and the FDUTPA cannot form the basis of a fee request at this time. Additionally, a party seeking fees under the FDUTPA must obtain a favorable award on the

*entire* case.  Here, the defense has not prevailed in the entire case, which precludes an award.  See, Heindel v. Southside Chrysler-Plymouth, Inc., 476 So. 2d 266, 270 (Fla. 1st DCA 1985) ("In summary, we hold that to recover attorney's fees a party must (1) recover judgment on the chapter 501, part II claim, and (2) recover a net judgment *in the entire case*." [emphasis added]).  Lastly on this issue, an attorney fees request under the FDUTPA allows recovery of only fees incurred *specifically* on the FDUTPA claims.  JES Props., Inc., 432 F. Supp. 2d at 1291 (denying a request for fees under the FDUTPA because those claims merely duplicated antitrust claims and finding that "Defendants have not demonstrated that they expended any meaningful attorney time or costs in defending against Plaintiff's Florida Deceptive and Unfair Trade Practices Act claim.").  In fact argument that the FDUTPA allows a global recovery of *all* fees incurred in a given case was recently rejected by the Florida Supreme Court.  Diamond Aircraft Indus., Inc., 107 So. 3d at 371 (Fla. 2013) ("to award attorney's fees for parts of an action clearly unrelated to or beyond the scope of a FDUTPA violation" would be "an absurd and unreasonable result.")  Instead, only fees incurred defending the FDUTPA claims can possibly be recovered.  Moreover, the amounts sought by the defense would be unreasonable for the reasons stated earlier herein.

## C.  Fees also Cannot be Awarded under the Florida Antitrust Act (§ 542.22)

An award of attorney's fees under the Florida Antitrust Act (§ 542.22) is also not mandatory.  Fla. Stat. § 542.22 provides that a *defendant* in an action under the Florida Antitrust Act can only recover its attorneys' fees if the Court determines that there was a "complete absence of a justiciable issue of either law or fact raised by plaintiff." Fla. Stat. § 542.22(1).  "Florida courts have consistently held that in order for an action to be devoid of merit so as to not have a justiciable issue, the claims must be 'frivolous.'" See Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1508 (11th Cir. 1985) (citations omitted) (addressing attorneys' fees under Fla. Stat. § 57.105

in the context of state antitrust claims).  The "frivolousness of a claim or a defense is to be judged and determined as of the time it is initially presented, and if it can pass muster at that point, subsequent developments which render the claim or the defense to be without justiciable issue in law or fact should not subject the losing party to attorney's fees." Murphy v. WISU Properties, Ltd., 895 So. 2d 1088, 1094 (Fla. 3d DCA 2004) (citations omitted).  "In other words the Court should avoid Monday morning quarterbacking, or after-the-fact reasoning, that the antitrust claims must have been frivolous because Plaintiffs did not ultimately prevail."  JES Props., Inc. v. USA Equestrian, Inc., 432 F. Supp. 2d 1283, 1290 (M.D. Fla. 2006) (denying fees to a prevailing defendant under the Florida Antitrust Act).

In this case, the standing issues as to SLS PROPERTIES were (1) unsettled, (2) arguable for either position and (3) in fact, the defense themselves had argued for SLS PROPERTIES' standing by arguing that the claims filed were not "property of the estate" meaning the creditors held them.  Ultimately, the Court resolved these standing issues in a manner which Plaintiffs had not advocated but was arguable under the facts, i.e. that JAWHBS had standing to the exclusion of SLS PROPERTIES.  However, no frivolous arguments were made and no fees should be awarded.

## V.    CLOSING

In conclusion, the case of SLS PROPERTIES presented an arguable and unclear question of the standing of a creditor to *directly* bring claims for alleged bid rigging activities during a US Bankruptcy Court sale.  This standing issue might have been decided either way, but the Court ultimately ruled that SLS PROPERTIES lacked standing while JAWHBS had standing.  Even if the Court found that Fla. Stat. § 768.79 applied at all in this case, the offers of judgment were

nominal and not made in "good faith" nor were they "reasonable" under the applicable standards and thus cannot be enforced.

For the reasons stated herein, SLS PROPERTIES requests that the Court DENY the pending Motions for Fees and Costs against it.

Respectfully submitted:

Dated:   September 8, 2016

**/s/ Adam J. Breeden**

_____
Adam J. Breeden, Esq.                          Jerrold A. Wish, Esq.
Appearing Pro Hac Vice                         Florida Bar # 352721
Adam@breedenandassociates.com       jwish@wishlaw.net
BREEDEN & ASSOCIATES, PLLC        THE WISH LAW FIRM
1404 S. Jones Blvd.                               1927 NW 104th Way
Las Vegas, NV 89146                            Gainesville FL 32606
Ph. 702-508-9250                                  Ph. 786-200-7077
Fax 702-508-9365                                 *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

   I HEREBY CERTIFY that a true and correct copy of the foregoing Opposition to Defense

Motions for Attorney's Fees was served on September 8, 2016, on all counsel or parties of record

on the service list through the Court's ECF system or as otherwise indicated on the attached list.


   Dated:  September 8, 2016


**/s/ Adam J. Breeden**
_____

Adam J. Breeden, Esq.
Appearing Pro Hac Vice
Adam@breedenandassociates.com
BREEDEN & ASSOCIATES, PLLC
1404 S. Jones Blvd.
Las Vegas, NV 89146
Ph. 702-508-9250
Fax 702-508-9365

Jerrold A. Wish, Esq.
Florida Bar # 352721
jwish@wishlaw.net
THE WISH LAW FIRM
1927 NW 104th Way
Gainesville FL 32606
Ph. 786-200-7077
*Attorneys for Plaintiffs*

**Case No.: 15-24176-CV-GAYLES**
<u>SERVICE LIST</u>

| | |
|---|---|
| Adam J. Breeden, Esq.<br>Adam@breedenandassociates.com<br>BREEDEN & ASSOCIATES, PLLC<br>1404 S. Jones Blvd.<br>Las Vegas, NV 89146<br>Ph. 702-508-9250<br>Fax 702-508-9365<br>*Co-Counsel for Plaintiffs* | Jerrold A. Wish, Esq.<br>jwish@wishlaw.net<br>THE WISH LAW FIRM<br>1927 NW 104th Way<br>Gainesville FL 32606<br>Ph. 786-200-7077<br>*Co-Counsel for Plaintiffs* |
| Kendall Coffey, Esq.<br>kcoffey@coffeyburlington.com<br>Kevin C. Kaplan, Esq.<br>kkaplan@coffeyburlington.com<br>Erika S. Handelson, Esq.<br>ehandelson@coffeyburlington.com<br>COFFEY BURLINGTON<br>2601 South Bayshore Drive, PH1<br>Miami, FL 33133<br>Tel: 305.858.2900<br>Fax: 305.858.5261<br>*Counsel for Shutts & Bowen, LLP and*<br>*Kevin Cowan* | Charles M. Tatelbaum, Esq.<br>cmt@trippscott.com<br>Edward Curtis, Esq.<br>erc@trippscott.com<br>Michael C. Foster, Esq.<br>mcf@trippscott.com<br>TRIPP SCOTT<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>Ph. 954-525-7500<br>Fax 954-761-7501<br>*Counsel for Steven C. Cronig* |
| Ronald L. Kammer, Esq.<br>rkammer@hinshawlaw.com<br>H. Steven Vogel, Esq.<br>svogel@hinshawlaw.com<br>HINSHAW & CULBERTSON, LLP<br>2525 Ponce de Leon Blvd., 4th Floor<br>Coral Gables, FL 33134<br>Ph. 305-358-7747<br>Fax 305-577-1063<br>*Counsel for Watson Investigations, LLC* | Thomas R. Lehman, Esq.<br>trl@lklsg.com<br>Levine Kellogg Lehman, et. al.<br>Miami Center, 22nd Floor<br>201 South Biscayne Blvd.<br>Miami, FL 33131<br>Ph. 305-403-8788 Fax 305-403-8789<br>*Counsel for Defendants*<br>*Alianza Financial Services, LLC,*<br>*Alianza Holdings, LLC and*<br>*Omar Botero* |
| Lawrence Goodman, Esq.<br>lgoodman@devinegoodman.com<br>DEVINE GOODMAN et. al.<br>2800 Ponce de Leon Boulevard, Suite 1400<br>Coral Gables, FL 33134<br>Ph. 305.374.8200<br>Fax 305.374.8208<br>*Counsel for JA Energy Resources, LLC and*<br>*Jorge Arevalo* | Albert Delaney<br>Delaneyal@att.net<br>45 Scarlet Woods Court<br>Spring, TX 77380<br>*Via E-mail outside the ECF system*<br>*per consent given on 3/14/2016* |