UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:15-cv-24176

JAWHBS LLC,
a Florida limited liability
company, Plaintiff,

v.

JORGE AREVALO, an individual, *et al*.
Defendants.

_____/

**DEFENDANTS' JOINT MOTION TO DISMISS THIRD AMENDED COMPLAINT.**

Defendants[1] jointly move to dismiss Plaintiff JAWHBS LLC' ("JAWHBS") Third Amended

Complaint (the "TAC"). To survive dismissal, the TAC must accomplish <u>two</u> things. First, it must

state all of the elements of the causes of action alleged against each defendant and, second, it must

state with particularity sufficient factual allegations against each such defendant to form a plausible

basis that the particular defendant was involved in the actions alleged.  For the fourth time,

JAWHBS does neither. The difference now is that JAWHBS has done so in direct violation of the

Court's August 4, 2016 Order dismissing the Second Amended Complaint ("SAC") (the

"Dismissal") [D.E. #176]. In the Dismissal, the Court stated:

> The Court has preliminarily reviewed the Second Amended Complaint and finds that
> it, too, suffers from the same shotgun-pleading deficiency as the First Amended
> Complaint. Thus, the Court will dismiss that complaint, as well, and will provide
> JAWHBS leave to file a Third Amended Complaint that will hopefully correct the
> errors addressed in this Order.
>
> As a final note, the Court found, in considering the arguments vis-à-vis each
> individual claim, that the Defendants raised several strong points that could
> potentially give rise to a dismissal of one or more of the causes of action under Rule
> (12)(b)(6) for failure to plead sufficient factual allegations. JAWHBS would do well
> to consider these points in drafting any amendment.

---

[1]   Jorge E. Arevalo; Ja Energy Resources, LLC; Shutts & Bowen, LLP, Kevin D. Cowan; Omar Botero; Alianza
Financial Services, LLC; Alianza Holdings, LLC; Albert F. Delaney; Crystal Tower Partners II, LLC; Crystal Tower On
Brickell Plaza, LLC, Watson Brickell Development, LLC; Steven Carlyle Cronig; and Francis H. Scola, III;

15278623v2 0981354

Despite having yet a fourth opportunity to allege plausible factual bases for its claims, JAWHBS has ignored the Court's admonitions, and again repeated its shotgun pleading without alleging facts to support its implausible claims.

## I.    Defects Which Permeate the Entire Third Amended Complaint.

Throughout the TAC, JAWHBS continues its unsupportable premise that all of the Defendants acted in concert with every other Defendant by: (i) creating illusory so-called groups of Defendants[2] and alleging that "The Defendants, and each of them, all had various parts and roles in a conspiracy and concert of action to aid and abet and collude with each other to artificially depress the sales price of the Brickell Parcels, to the detriment of the Plaintiff." [D.E. #189, ¶41]; (ii) alleging, without factual basis, that the members of each so-called group were partners, joint venturers, agents or alter egos of each other, making them vicariously or otherwise responsible for the acts of each other. (TAC ¶18); and (iii) by alleging Francis H. Scola III ("Mr. Scola") was a member of both the so-called Arevalo and Watson Groups, thus once again creating a shotgun pleading despite the Court's explicit warning not to do so.

Also mandating dismissal is JAWHBS failure to allege causes of action based upon plausible facts. Instead, JAWHBS makes bald conclusions of law (*e.g.* asserting the right to relief under statutes which do not provide a private right of action) (TAC ¶92)[3], or asserting a non-existent cause of action, "refusing to lend", [4] which the Florida Legislature specifically has prohibited. (TAC ¶59 and ¶60)

---

[2]  The so-called  groups are: (i) the "Arevalo Group" – Jorge Arevalo, JA Energy Resources, LLC, the law firm Shutts & Bowen, LLP, and attorney Kevin Cowan and Mr. Scola; (ii) the "Botero Group" –  Omar Botero, Alianza Financial Services, LLC, Alianza Holdings, LLC, Albert Delaney, Crystal Tower Partners II, LLC, and Crystal Tower On Brickell Plaza, LLC; and (iii) the "Watson Group" – Watson Brickell Development, LLC, Attorney Steven Carlyle Cronig and, again, the only Defendant to be included in two groups, Mr. Scola.

[3]  For example, Florida Statutes §542.22 provides that treble damages are only awardable to "natural persons residing in the state" and may only be brought by the Attorney General or a State Attorney on behalf of a class. JAWHBS is neither a natural person residing in the state nor the Attorney General.

[4]  Florida Statutes §687.0304 specifically prohibits claims for "failure to lend" for which, as in this case, no written commitment has been issued.

2

II.     **The Third Amended Complaint Contains Implausible Shotgun Claims**.

Ignoring the Court's admonition to "correct the deficiency" of shotgun pleading, (D.E. #176 at 19), each of the alleged claims in the TAC are against all of the Defendants, without specifying which Defendants purportedly are liable for which conspiratorial act or damage. The six claims vaguely assert an effort at "bid rigging" by numerous parties, but fail to describe how the Defendants' individual actions amounted to a conspiracy, were wrongful, or in any way damaged JAWHBS. Rather, JAWHBS alleges in a conclusory manner that such "bid-rigging" supposedly depressed the price for the Brickell Parcels below "fair market value", notwithstanding that under Bankruptcy Code §363, "fair market value" is not the standard to be applied to distress sales of assets by a Trustee in Bankruptcy.[5]   JAWHBS' shotgun approach conclusorily and conveniently places various parties into "groups", to imply that each Defendant took part in all other Defendants' alleged conduct. For example, the TAC alleges "[t]he Defendants, and each of them, all had various 'parts and roles' in a conspiracy and concert of action to aid and abet and collude with each other to artificially depress the sales price of the Brickell Parcels, to the detriment of the Plaintiff" [TAC ¶41], yet JAWHBS fails to delineate the wrongful conduct, the actors, the conspiratorial agreement, its scope and object, or effects.).

For example, the TAC asserts the "Botero Group" agreed to pay the Arevalo Group the flat sum of $1,200,000, as well as a share of the profits and a discount to purchase an interest in the Brickell Parcels in exchange for "their forbearance from making an offer or bid to won the subject property". [TAC ¶45].  Notwithstanding this supposed agreement, the TAC then alleges that Mr. Arevalo personally appeared, along with counsel from Shutts & Bowen at the July 10, 2013 Bankruptcy Court hearing and informed Judge Isicoff that he [Mr. Arevalo] was no longer going to

---

[5]   The United States Supreme Court resolved the applicability of "fair market value" in the context of a foreclosure sale in *BFP v. Resolution Trust Corporation as Receiver of Imperial Federal Savings Association, et al.*, 114 S. Ct. 1757 (1994), holding that "fair market value" is not a permissible standard to be applied in Bankruptcy forced sale proceedings, which is exactly what this sale was.

15278623v2 0981354

be a party to the supposed agreement and the "Arevalo Group" was prepared to submit a 'higher and better offer." [TAC ¶55]. Thereafter the "Botero Group" withdrew its offer of $19,500,000, and the "Arevalo Group" then "considered" offering $22,000,000, if they could raise the funds on a short deadline.  [TAC ¶57-58].  On July 10, 2013, Mr. Arevalo solicited Mr. Scola to contact Mr. Cronig's client to finance Mr. Arevalo's bid for the Brickell Parcels, but there is no allegation or even plausible theory here as to how such a single contact could be the basis of a "bid rigging conspiracy". [TAC ¶58]

Indeed, JAWHBS' entire theory regarding the events between July 10, 2013 and July 26, 2013 is without plausible basis. Had Watson "conspired" to "sabotage and tank" Mr. Arevalo's supposed consideration of making a $22,000,000 offer [TAC ¶59], "eliminating all competition" as JAWHBS alleges (TAC ¶63), then presumably Watson should have offered $19,500,000 (the figure the Trustees previously had accepted) or even lower, rather than $21,500,000. This is especially true since on July 30, 2013, the automatic stay of the first mortgage foreclosure was to end, after which the Brickell Parcels would have been entirely lost to the Bankruptcy Estates. JAWHBS' allegation that Watson somehow utilized Mr. Arevalo's "proprietary information" to "under-bid" Mr. Arevalo's offer is also implausible as it ignores two important facts: (i) Mr. Arevalo had already announced his intention in open court on July 10, 2013 to make a higher offer; and (ii) to purchase the Brickell Parcels, Watson would have to submit to the Trustees a higher offer, not a lower offer. Clearly, Watson was not part of any agreement to suppress the price of the Brickell Parcels and, without Watson's inclusion in the purported "conspiracy", the allegations against the rest of the Defendants make no sense whatsoever.

JAWHBS did not allege there were any potential purchasers other than the Defendants, nor that the Defendants conspired to preclude other purchasers (assuming that was even possible) from making offers for the Brickell Parcels. The sale by the Trustees occurred on July 26, 2013. [TAC

4

¶65]. The TAC alleges that, had Mr. Arevalo not gotten involved, the $19,500,000 sale to Crystal Tower would have been approved by the Bankruptcy Court. [TAC ¶56 – "a §363(m) finding in the proposed sale to Crystal Tower was unlikely to occur as a result of the information which was disclosed [by Mr. Arevalo] at the July 10 hearing."] Thus, without this so-called conspiracy, the Trustees would have received $2,000,000 less for the Brickell Parcels.

As to implausibility, it is worthwhile to note that, following almost of year of investigation and discovery, the Trustees determined that no cause of action could be brought against any of the Defendants and, in fact, did not even mention the "Watson Group" during their investigation. It defies plausibility that the Trustees would have sold what JAWHBS has variously characterized as between a $10 and $50 million claim, which the Trustees themselves could have pursued and, instead, sold it to JAWHBS for $25,000. [TAC ¶¶ 85-86].[6]

JAWHBS' allegations amount to nothing more than the following: (i) Mr. Arevalo approached multiple parties to try to fund his attempt to purchase the Brickell Parcels; (ii) Mr. Arevalo's disclosure of his intended "higher and better offer" kept Crystal Tower's purchase from receiving approval at the July 10, 2013 hearing; and (iii) Watson somehow "bid-rigged" by refusing to lend money to Mr. Arevalo. The last assertion cannot be correct since Mr. Arevalo's sole contact with Watson was a second hand solicitation for funding, which was promptly refused, and which was not made on behalf of any of the other "non-Arevalo" defendants.

### III.    The TAC Is Predicated On Flawed Statements of Legal Principles

The TAC attempts to allege the existence of an agency relationship among Mr. Cronig, Mr. Scola, Watson and Mr. Arevalo and, as a result of this purported agency (and by placing the Defendants into so-called "groups"), to make each Defendant liable for all of the acts of all

---

[6] Despite the dismissal of SLS, the TAC continues to allege its role as the basis for the causes of action.  (TAC ¶¶ 2, 40, 74, and 75). These allegations are irrelevant in light of the Court's dismissal of SLS for lack of standing. Obviously, if SLS lacks standing, JAWHBS cannot bootstrap Herb B. Sider's common ownership and control of both companies as a basis for its own standing.

Defendants complained of in the TAC. A review of the allegations demonstrates that the TAC fails to plead the requisite elements of an agency relationship and JAWHBS' theory, as pled, is both misleading and fatally flawed.

Under Florida law, to establish the existence of an agency relationship, a plaintiff must allege and prove: (i) acknowledgment by a principal that an agent will act for him, (ii) acceptance by the agent of the undertaking, and (iii) control by the principal over the agent's actions. *Goldschmidt v. Holman*, 571 So.2d 422, 424 (Fla. 1990). The element of control of the agent is fundamental to an agency relationship. *Latin Am. Shipping Co. v. Pan Am. Trading Corp.*, 363 So. 2d 578, 579 (Fla. 3rd DCA 1978). As such, an agency relationship is created by express agreement between the principal and the agent in the same manner as any other contract. *Jaar v. University of Miami*, 474 So. 2d 239, 242 (Fla. 3d DCA 1985). This express agreement requirement is considered the most important element in determining whether an agency relationship exists and the scope of the agent's actual authority. *Folwell v. Bernard*, 477 So. 2d 842, 853 (Fla. 2003).

Here the TAC fails to allege: (i) the so-called "Arevalo Group's" acknowledgment that the so-called "Watson Group" (or any of its members) agreed to act on its behalf; (ii) the so-called "Watson Group's" acceptance of any agency appointment; and (iii) the so-called "Arevalo Group's" control over Watson's actions. Instead, JAWHBS just baldly alleges that Mr. Cronig, Mr. Scola and Watson are Mr. Arevalo's "agents" in an attempt to impute Mr. Arevalo's actions to the Watson Defendants [TAC ¶62]. These pleading flaws are compounded by JAWHBS repeated use of the phrase "*on information and belief*" throughout the TAC. Even a cursory review of the TAC demonstrates why. For example, paragraph 62 of the TAC states:

> Regardless of the fact that the Watson Group pretended to disassociate itself from the activities of the Arevalo Group and Botero Group, the Watson Group became the agent of the Arevalo Group by its status of being consulted for financing…. Although the Watson Group was an unloyal agent, it was nevertheless an agent of the Arevalo

6

Group and ratified Arevalo's acts by submitting their own bid and, therefore, are responsible along with the Arevalo Group.

The TAC states further, "[I]n turn, the Watson Group ratified the acts of Arevalo by using the knowledge and information and results of the prior bid rigging scheme of the Arevalo Group to its advantage..." [*See* TAC ¶59]. According to JAWHBS, the "Watson Group" was an "agent" of the so-called "Arevalo Group" (a competing bidder) and simultaneously, Mr. Scola somehow was a partner of Arevalo and was the principal behind Mr. Cronig and Watson. JAWHBS offers no facts to support these tortured and conclusory allegations, but one thing is clear - JAWHBS simultaneously attempts here to allege an agency theory that *the Watson Defendants somehow were "agents" of Mr. Arevalo - the purported "principal" - while at the same time alleging that JAWHBS' basis for damages is that Watson refused to have anything to do with Mr. Arevalo*.

Following its attempt to bootstrap an agency relationship, JAWHBS then alleges that Mr. Arevalo "ratified" all of its unloyal agent's actions [TAC ¶62]. The core characteristic of "ratification" is that the principal ratifies the acts of, a purported agent, not the reverse. Thus, an allegation that Watson "ratified" the acts of Mr. Arevalo is wholly misplaced. Florida law is clear that a principal may be held liable for the acts of an agent if the principal authorizes, participates or ratifies the wrongful conduct. *Laborers' Int'l Union v. Rayburn Crane Service, Inc*., 559 So.2d 1219 (Fla. 2nd DCA 1990).  Ratification requires allegations and proof that the principal had knowledge and some form of approval after the tort was committed.  *Port Largo Club, Inc. v. Warren*, 476 So.2d 1330 (Fla. 3d DCA 1985).  More specifically, the doctrine of ratification is the express or implied adoption by a person of an act or a contract entered into in his behalf by another without authority.  *Id*.  Thus, ratification only applies to unauthorized acts which are beyond the scope of the agent's real or apparent authority.  *Armstrong v. Blackadar*, 118 So.2d 854 (Fla. 2nd DCA 1960). Further, before a principal can form the intent to ratify an agent's unauthorized act, he must have full

7

knowledge, at the time of ratification, of all material facts and circumstances relating to the act or transaction. *Abd Constr. Co. v. Diaz*, 712 So.2d 1146 (Fla. 3d DCA 1998).

JAWHBS' assertion of Watson's "ratification" of Mr. Arevalo's acts belies the fundamental principle of agency law. Even assuming, *arguendo*, that the Watson Defendants somehow were agents of Mr. Arevalo, JAWHBS' assertion that the Watson Defendants "ratified" the acts of Mr. Arevalo make no sense and would have no legal consequence because, as outlined above, it is the principal's ratification of the agent's acts that may bind the principal – not the agent ratifying an act of the principal.

Under the U.S. Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), the TAC must be dismissed as it fails to "state a claim to relief that is *plausible on its face*." The TAC is not plausible as it is devoid of factual content which allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. *Iqbal* at 678. Plausibility will not be found where, as here, the claims alleged are based solely on legal conclusions, or made up of "naked assertions devoid of further factual enhancement." *Id.* For these reasons the TAC must be dismissed.

## IV.  All JAWHBS' Claims are Barred by *Res Judicata*[7]

Although the allegations in the TAC are characterized as being "more expansive" than in the three prior iterations, the claims still involve the July 2013 bankruptcy sale of the Brickell Parcels. [TAC ¶34].  In their previous Motion to Dismiss the SAC, the Defendants argued that: (i) the Bankruptcy Court's Order approving the sale of the Brickell Parcels to Watson (the "Sale Order") was entered by a court of competent jurisdiction and was a final order; (ii) this proceeding and the sale proceeding in the Bankruptcy Court involve the same parties or their privies; and (iii) this

---

[7]  Shutts & Bowen, LLP and Kevin D. Cowan do not join in Section iv of the argument.

15278623v2 0981354

proceeding and the sale proceeding in the Bankruptcy Court involve the same causes of action. The Court found in the Dismissal that, the first two elements of the doctrine of *res judicata* were met by the Defendants – *i.e.,* the Bankruptcy Court is a court of competent jurisdiction and the Sale Order was a final order. [*See*, Dismissal, page 15].

Respectfully, the third and fourth elements of the doctrine are also met. First, there is no question that the Plaintiff is the claimed successor in interest to the two bankruptcy Trustees [TAC ¶76], and that the Trustees were both parties and parties in interest in the bankruptcy sale process.[8] The Defendants in the so-called "Botero Group" were parties and parties in interest in the sale proceedings by virtue of the agreement to purchase the Brickell Parcels from the Trustees (and subjecting a deposit of $20 million to the Bankruptcy Court's jurisdiction) and in their participation in the July 16, 2013 hearing before the Bankruptcy Court which led to the entry of the Sale Order. [*See*, Transcript, BR #54, pages 4-5]. The Defendants in the so-called "Watson Group" (with the exception of the Mr. Scola[9]) were involved as the purchaser of the Brickell Parcels from the Trustees, were participants in the July 16, 2013 hearing before the Bankruptcy Court which led to the entry of the Sale Order. [*See*, Transcript, BR #54, pages 4, 11, 34-39].

With respect to the fourth element, the Bankruptcy Court record is clear that claims raised by JAWHBS in this proceeding involve exactly the same facts and legal issues as were raised in the Bankruptcy Court with respect to the alleged collusion between the Defendants, which led to Judge

---

[8]  The term "party in interest" is defined to include the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indentured trustee, among others. *In re Westwood Community Two Ass'n Inc.*, 293 F.3d 1332, 1336-37 (11th Cir. 2002) (finding that the definition of "party in interest" under Chapter 11 of the Bankruptcy Code also applies to Chapter 7 cases). Thus, the term is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *In re E.S. Bankest,* 321 at 594-95 (quoting *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995).

[9]  Mr. Scola is alleged by JAWHBS to be a "member" of two so-called groups and an "agent" of Mr. Arevelo. Hence he also qualifies as a privy and the claims against Mr. Scola, based on the allegations of the complaint, are also barred by the doctrine of *res judicata*.

15278623v2 0981354

Isicoff's conclusion that the sale to Crystal Tower on July 10, 2013, would be "problematic" *(i.e.* that Crystal Tower was a good faith purchaser). [*See* Transcript, BR #44, page 13]. Thus, the terms of the anticipated joint venture between Crystal Tower and Mr. Arevalo (which form the purported basis for JAWHBS' claims against all Defendants) were known to all parties and parties in interest in the bankruptcy proceeding six days prior to the entry of the Sale Order. Those claims were adjudicated when Judge Isicoff made a finding of Watson's good faith in the Sale Order [*See,* Sale Order page 7]. These claims arose after the filing of the bankruptcy cases (known as post-petition claims), and are treated differently than claims that arose before the bankruptcy cases (pre-petition claims).  Pre-petition claims are discharged by the bankruptcy proceeding, while post-petition claims are not discharged and, thus, with the Sale Order dealing with post-petition claims, res judicata applies. The Sale Order, being a final order to which no appeal was taken by any party or party in interest, thus is binding on JAWHBS in this proceeding. Accordingly, all of the elements for *res judicata* are present and JAWHBS is precluded from stating any of the causes of action set forth in the TAC.

## V.    <u>All of the Claims Are Time Barred</u>

At a minimum, Count IV is barred by the one-year statute of limitations of Fed. R. Civ. P. 60 ("Rule 60")  Section 363(n) claims are a statutory exception to the finality of bankruptcy sale orders for *res judicata* purposes.  *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 968 (9th Cir.1994). Section 363(n), however, "is not … a wholly independent exception" to the rules of finality.  *Id.*  Instead, it is analyzed under Rule 60, which applies to bankruptcy cases. [10]. *Id.* at 968-69; Fed. R. Bankr. P. 9024. Since section 363(n) does not itself contain a statute of limitations, federal courts characterize section 363(n) claims as motions under Rule 60(b)(3). *Nutronics*, 28 F.3d at 968-69; *In re Clinton*

---

[10]    Since all of JAWHBS' purported claims arise out of the sale proceedings in the Bankruptcy Court when the Trustees were attempting to sell the Brickell Parcels, all claims asserted in the TAC are necessarily tied to the section 363 sale process, and it is Defendants' position that Rule 60's time limitation applies to all of the purported causes of action.

15278623v2 0981354

*Street Food Corp.*, 254 B.R. 523, 530 (Bankr. S.D.N.Y. 2000)).  Rule 60(c)(1) provides that Rule 60(b)(3) motions must be made "no more than a year after the entry of the judgment or order or the date of the proceeding". *Nutronics*, 28 F.3d at 969.  Therefore, section 363(n) claims brought more than one year after the bankruptcy court's section 363 sale order are time-barred. *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) (explaining the applicability of the one-year statute of limitations to motions under Rule 60(b)(3)).  JAWHBS' (as purported successor in interest to the Trustees) claims are time-barred because they first were raised over two years after the Sale Order.

Rule 60's one-year statute of limitations applies to equitable claims for relief as well as legal claims for damages under or related to section 363(n). *In re Clinton*, the Southern District of New York squarely addressed this issue.  There, several years after the bankruptcy sale, the trustee brought an adversary proceeding alleging a violation of section 363(n), as well as various causes of action sounding in fraud.  *Id.* at 528-29. The court held the one-year statute of limitations barred the trustee's section 363(n) action to avoid the sale *and* the trustee's section 363(n) money damage claims for fraud and fraudulent concealment. *Id.* at 529-30.   In concluding that the trustee's remaining common law claims were time-barred, the *Clinton* court found the trustee's section 363(n) claims and common law claims were "indistinguishable", and although the common law claims enjoyed distinctive elements, those claims were not distinct for *res judicata* purposes since "all of the claims depend on the bid rigging scheme and the issuance of the Sale Order, and seek damages based upon the improper procurement of the Sale Order." *Id* at 531.  The *Clinton* court cogently observed: "[i]f a party could transform a § 363(n) damage claim into a common law claim and avoid the one year period of limitations, § 363(n) would become meaningless." *Id.* at 531-32.

The situation before this Court when considering JAWHBS' TAC is the same.  All of JAWHBS' causes of action <u>directly</u> are dependent upon the bid rigging scheme alleged to have occurred post-petition but prior to the July 10, 2016 hearing and the issuance of the subsequent Sale

Order where JAWHBS' purported predecessors in interest were parties and active participants. Thus, all causes of action based on the Sale Order should be dismissed as being time barred.

**VI.** **The Antitrust Claims must be Dismissed (Counts I and II)**

    **(a)** **The Claims of Antirust Conspiracy Are Implausible**

The TAC's claim of anticompetitive conduct is both implausible and contradictory.  The TAC alleges that the "Arevalo Group" and the "Botero Group" had not reached agreement concerning what JAWHBS characterizes as a "non-compete clause" and what the Botero Defendants and the Arevalo Defendants characterize as the proposed terms of a possible joint venture on July 9, 2013. There is no allegation or factual basis to find that any agreement was actually reached by July 9, indeed, the very next day, Mr. Arevalo acted inconsistently with the existence of such a purported agreement when he appeared at Bankruptcy Court and stated that he intended to make a higher offer. Thereafter, Watson made an offer for $2 million more than the Trustees had already approved and purchased the Brickell Parcels.  Such allegations "are no more consistent with an illegal agreement than with rational and competitive business strategies, independently adopted by firms acting within an interdependent market."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1189 (9th Cir. 2015).

In addition, any July 9 conspiracy (even if it had actually occurred) terminated on July 10, 2013 when the "Botero Group" withdrew its bid. The law recognizes that a conspirator may withdraw from a conspiracy. *Hyde v. United States,* 225 U.S. 347 (1912);*United States v. Read,* 658 F.2d 1225, 1233 (7th Cir.1981) (withdrawal marks a conspirator's disavowal or abandonment of the conspiratorial agreement and once a conspirator withdraws from the conspiracy the subsequent acts of the conspirators usually do not bind him).  As the Court observed in *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 837 (11th Cir. 1999), *amended in part,* 211 F.3d 1224 (11th

15278623v2 0981354

Cir. 2000), once that withdrawal occurred, no damages (or cause of action) could have ever flowed from the alleged conspiracy:

> Actual harm is indicated by a factual connection between the alleged harmful conduct and its impact on competition in the market, *Spanish Broad. Sys.,* 376 F.3d at 1072, and the plaintiff claiming it should point "to the specific damage done to consumers" in the market, *id.* (citing *Full Draw Prods. v. Easton Sports, Inc.,* 182 F.3d 745, 753–54 (10th Cir.1999)). The plaintiff has the burden of demonstrating damage to competition with "specific factual allegations."

*Id.* at 1073. JAWHBS therefore lacks an antitrust injury.

### (ii)    No cause of Action Exists for the "Refusal to Lend"

Watson's refusal to finance Mr. Arevalo's bid to purchase the Brickell Parcels cannot constitute an improper restraint of trade in violation of either federal or state antitrust law. To survive dismissal, the TAC would have had to allege a concerted refusal to deal and an unlawful agreement to fix prices by Watson.  Section 1 of the Sherman Act is, by its terms, is limited to collusive conduct — to "contracts," "combinations," and "conspiracies" that restrain the nation's domestic or foreign trade or commerce.  15 U.S.C. §1. To establish a violation of §1 of the Sherman Act, a claimant must "allege facts which show: the defendant[s] entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market."  *Spanish Broad. Sys., Inc. v. Clear Channel Communications, Inc.*, 242 F. Supp. 2d 1350, 1356 (S.D. Fla. 2003). Therefore, the "*sine qua non*" of §1 is concerted action; the threshold question for purposes of §1 being whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 553; *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 190 (2010) ("Section 1 applies only to concerted action ..."); *In re Fla. Cement & Concrete Antitrust Litg.*, 746 F. Supp. 2d 1291, 1308 (S.D. Fla. 2010) ("Under any formulation of the necessary elements of a Section 1 cause of action, a plaintiff must allege the existence of a conspiracy.").

13

Importantly, courts have made the following explicitly clear: a refusal to finance can neither constitute a combination, contract or conspiracy that unreasonably restrains trade nor support a finding of antitrust injury.  In *Medical Supply Chain, Inc. v. General Electric Co.*, 144 Fed. App'x 708, 710 (10th Cir. 2005), the plaintiff sought office space for its e-commerce business and solicited financing from GE Capital. GE Capital decided not to provide financing for the purchase of the property and the plaintiff filed its complaint against GE Capital and others GE entities, alleging "GE's refusal to finance [Plaintiff's] purchase of the [office space] improperly restrained trade" in violation of §1 of the Sherman Act.  *Id.* at 713.  On appeal, the Tenth Circuit affirmed the district court's dismissal of the plaintiff's complaint, holding that "GE's failure to provide financing *would not be an antitrust violation*." *Id.* In reaching this result, the Tenth Circuit focused on antitrust injury, reasoning that the plaintiff did not have to purchase the office space at issue to enter the e-commerce market.  *Id.*  More importantly, the Tenth Circuit also reasoned that "while like any new business it did need funds to start operations, there was no requirement that it obtain these funds from GE."  *Id.* at 714-15. Therefore, plaintiff's claim that it suffered antitrust injury was "untenable."  *Id.* Other federal courts have reached similar conclusions.  *See, e.g.*, *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 142 F. Supp. 2d 296, 300 (E.D. N.Y. 2001) (ruling that the Sherman Act does not restrict the long recognized right of a private business freely to exercise its own independent discretion as to parties with whom it will deal); *Loren Data Corp. v. GXS, Inc.*, 501 Fed. App'x 275, 281 (4th Cir. 2012) (concluding that allegations did not plausibly suggest a concerted  refusal to deal because they contradicted any inference of conspiracy and instead showed  defendant's unilateral business judgment as to "the parameters under which it was willing to deal with [plaintiff], an entity it viewed as having an incompatible business model").

In this case, the TAC does not allege that Watson, Mr. Cronig or Mr. Scola entered a contract, combination or conspiracy with any of the other Defendants to unreasonably restrain trade;

14

rather, JAWHBS alleges that Watson somehow committed an antitrust violation by *refusing* to fund Mr. Arevalo's intended purchase. Specifically, JAWHBS alleges that, after Crystal Tower "withdrew its offer" after the alleged collusion between the so-called "Arevalo and Botero Groups" was "exposed to the Court," the "Arevalo Group" prepared to submit a $22,000,000 offer for the Brickell Parcels to the Trustees." [TAC at ¶¶57-58.][11]   In an attempt to secure financing for the purchase, JAWHBS alleges that the so-called "Arevalo Group contacted persons associated with the so-called "Watson Group." *Id.* ¶58.  Rather than agree to finance the "Arevalo Group's' purchase, JAWHBS alleges that the so-called "Watson Group" "sabotaged" the Arevalo bid by "pulling out of or refusing to fund the Arevalo Group." *Id.* ¶59.

JAWHBS would have this Court accept the paradoxical logic that Watson's *refusal* to lend money to Mr. Arevalo could somehow also operate as an anticompetitive, bid-rigging *agreement.* JAWHBS then alleges, without any supporting facts, the so-called "Watson Group" became an "agent" of the Arevalo Group "by its status of *being consulted for financing.*" *Id.* ¶ 62.  It also is worthwhile to note that Florida Statutes §687.0304 specifically prohibits claims for "failure to lend" for which, as in this case, no written commitment has been issued. Indeed, there is not even an allegation that Watson <u>committed to extend</u> such financing, only that Mr. Arevalo "*consulted*" Mr. Scola.

JAWHBS has alleged no plausible set of facts which would establish an anticompetitive contract, an agency relationship *or* combination *or* conspiracy sufficient to support its §1 claims. Rather, as in *Medical Supply Chain*, JAWHBS here attempts impermissibly to attribute liability to Watson's *refusal* to finance Mr. Arevalo's bid.  As in *Medical Supply Chain*, JAWHBS cannot

---

[11] The problem with the TAC's attempt at grouping is highlighted by the attempts to link Mr. Scola to both two of the so called "groups". However, at the time the alleged bid-rigging was exposed to the Bankruptcy Court, JAWHBS alleged that Mr. Arevelo had not yet even contacted Mr. Scola.

15278623v2 0981354

demonstrate any antitrust injury for a party's unilateral refusal to lend.

As the *Twombly* court explained in the context of an antitrust claim, the pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 971 F. Supp. 1419, 1424 (M.D. Fla. 1997) *aff'd,* 145 F.3d 1258 (11th Cir. 1998) (dismissing an antitrust claim based on "conclusory and speculative allegations). JAWHBS' allegations of Counts I & II are insufficient to allege an unlawful agreement in restraint of trade and must be dismissed as to all Defendants.

**VII**.    **JAWHBS Does Not Allege a Claim under FDUTPA (Count III)**

The elements of a FDUTPA claim are: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Rollins v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006).  Here, JAWHBS alleges the same faulty and implausible theory as for the other claims.  Notably as well, any plausible allegations of causation are lacking as causation in a FDUTPA claim must be direct and cannot be based on remote conduct or speculation.  *See Lombardo v Johnson & Johnson Consumer Companies, Inc*., 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).  As discussed above, the TAC fails to directly link the actions of any of the Defendants with any non-speculative harm.  Under *Twombly*, JAWHBS' allegations are insufficient to allege a FDUTPA claim and should be dismissed.

**VIII**.   **JAWHBS Does Not Allege a Valid Claim Under Section 363(n) (Count IV)**

Watson purchased the Brickell Parcels in the bankruptcy sale for $21,500,000 [Sale Order B.R. #73].  However, nowhere in the "Allegations Common To All Claims" (TAC at ¶¶34-76) does the JAWHBS allege that Watson entered into an agreement with any person, firm or entity to control the sale price of the Brickell Parcels that were the subject of the Sale Order (as required by 363(n)).  As to the remaining Defendants, as addressed above, that bid was withdrawn before the so-called "Watson Group" was ever contacted by Mr. Arevelo. Without JAWHBS setting forth the specific

facts as to "who, what, when, where and how" an agreement among Watson and another bidder controlled the sale price, no cause of action has been stated under 11 USC § 363(n).

Even if the allegations in the TAC were somehow considered to state a claim for violation of section 363(n), JAWHBS still has no standing to bring this cause of action. The Trustees' Joint Motion for Authority to Sell Certain Litigation Claims Pursuant to 11 U.S.C. §363 specifically stated "the Trustees have opted to sell whatever rights and claims and all of each estate's right, title, and interest in any claims pursuant to 11 U.S.C. § 363(n) or otherwise relating to *Crystal's offer* to purchase the [Brickell] Parcels, as is, where is, without representations or warranties." (Emphasis supplied)  (D.E. #32-1, Recitals). Thus, JAWHBS, at best, only purchased those rights and claims related to the original purchase offer of $19,500,000 by Crystal Tower Partners II, LLC. JAWHBS did not purchase any rights or claims related to the $21,500,000 purchase by Watson, and, thus, has no standing to pursue those claims and causes of action. Since it is undisputed that Watson purchased the Brickell Parcels, Count IV must be dismissed based on the plain language of section 363(n), since the Trustees did not sell JAWHBS any claims in connection with Watson's purchase of the Brickell Parcels.

## IX.    JAWHBS Fails to Allege a Plausible Civil Conspiracy Claim (Count V)

The TAC's claim of a "civil conspiracy" is utterly implausible. Under Florida law, "a civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997). Moreover, as with fraud claims "the 11th Circuit requires a heightened pleading standard in conspiracy cases because the defendant must be informed of the nature of the conspiracy alleged." *Griswold v. Alabama Dep't of Indus. Relations*, 903 F. Supp.

1492, 1500-1501 (M.D. Ala. 1995) (citations omitted), and "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint" dependent upon the existence of a conspiracy. *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985).

The TAC's allegations are entirely conclusory and fail to allege any agreement between or among any of the Defendants or any unlawful or overt act by any of the Defendants to further a conspiracy and, for that reason alone, should be dismissed. *Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 419 (S.D. Fla. 1996). The conspiracy claim also fails and should be dismissed, given the absence of any actionable underlying wrong and JAWHBS' inability to state any independent claims. *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360-61 (S.D. Fla. 2002).

**X.      JAWHBS Fails to Allege Tortious Interference (Count VI)**

JAWHBS has failed to allege a tortious interference claim.  To state a supportable claim for interference with a business relationship, a plaintiff must allege "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of a defendant; (3) an intentional and unjustified interference with the relationship by that defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla. 1994).

First, JAWHBS does not even remotely plead sufficient facts to support its purported causes of action, but rather relies on bald conclusions that there existed "potential bidder/buyers" (without naming them after nearly a year of litigation and discovery) of whom Defendants were "aware" and intended to interfere, causing damage to JAWHBS based on alleged "bid rigging" conduct.[12]  Such

---

[12]   This again highlights JAWHBS's implausible, shotgun-pleadings approach. The TAC alleges the so-called "Watson Group" was not aware of the opportunity to purchase the Brickell Parcels until July 10, 2013 when Mr. Arevalo approached Mr. Scola. Nevertheless, supposedly, during the 6 days between July 10 and July 16, while it was preparing its bid (which netted the Trustees an additional $2 million), Watson also had time simultaneously to determine the "world-wide" existence of "potential bidders/buyers" and then was able to interfere with these unnamed bidders/buyers such that not one other party came to the publicly advertised sale. Had any such potential bidders/buyers existed, they

conclusory allegations do not meet the pleading requirements mandated by *Iqbal*. The "nature of the alleged interference, what advantageous business relationship was interfered with, or where or when the alleged interference occurred," are essential to the claim. *Am. Seafood, Inc. v. Clawson*, 598 So. 2d 273, 274 (Fla. 3d DCA 1992). None of these facts are alleged and JAWHBS therefore has failed to allege any set of setting forth a plausible and non-speculative claim. *See MYD Marine Dist., Inc. v. International Paint Ltd.*, 76 So. 3d 42, 47-48 and n. 4 (Fla. 4th DCA 2011), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Second, a cause of action does not exist for interference with a relationship "to the community at large." *Ethan Allen*, 647 So.2d at 815. The business relationship (as to each defendant) must be "evidenced by an actual and identifiable understanding or agreement which, in all probability would have been completed if the defendant had not interfered." *Coach Service*s, *Inc. v. 777 Lucky Accessories, Inc.* 752 F.Supp. 2d 1271, 1273 (S.D. Fla. 2010). Here, the Brickell Parcels were sold pursuant to a public bankruptcy sale and the "potential bidders/buyers" are synonymous with the "community at large". The TAC does not begin to allege or identify any particular bidder with whom the Defendants interfered.

Third, the Defendants' interference must be "direct and intentional." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (applying Florida law). Here, and as further explained below, the TAC contains no allegations of direct and intentional interference with "potential bidders/buyers."

Fourth, the tortious interference count fails to allege facts that would satisfy the causation element of a tortious inference claim under Florida law. *See Networkip, LLC v. Spread Enterprises, Inc.*, 922 So.2d 355, 357-58 (Fla. 3d DCA 2006). "[E]mbedded within the essential elements . . . is

---

would have surfaced long before Crystal Tower submitted its $19.5 million offer, since the Trustees had been looking for buyers since March of 2013 when the Bankruptcy was filed.

the legal requirement that the plaintiff prove causation." *St. Johns River Water Management Dist. v. Fernberg*, 784 So.2d 500, 504 (Fla. 5th DCA 2001).   Nor has JAWHBS  alleged any direct harm. *See, e.g., Dinuro Investment, LLC v. Camacho*, 141 So.3d 731, 740 (Fla. 3d DCA 2014) (dismissing tortious inference claim where direct harm and special injury were not alleged by the plaintiff). Here, the property sold for $2 million more than the Trustees otherwise would have received had the sale to Crystal Tower been completed.

Respectfully submitted,

Signatures of Counsel and Certification of Service appear on following pages

15278623v2 0981354

SIGNATURES OF COUNSEL

| | |
|---|---|
| Ronald L. Kammer, Esq. <br> Florida Bar No. 360589 <br> rkammer@hinshawlaw.com <br> H. Steven Vogel, Esq. <br> Florida Bar No. 432784 <br> svogel@hinshawlaw.com <br> HINSHAW & CULBERTSON LLP <br> 2525 Ponce de Leon Boulevard, 4th Floor <br> Coral Gables, FL 33134 <br> Telephone (305) 428-5041 <br> /s/ H. Steven Vogel <br><br> *Counsel for Watson Brickell Development LLC and Francis H. Scola, III* | LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP <br> Counsel for Omar Botero, Alianza Financial Services, LLC, and Alianza Holdings, LLC <br> Miami Center, 22nd Floor <br> 201 S. Biscayne Boulevard <br> Miami, FL 33131 <br> Telephone (305) 403-8788 <br> Facsimile  (305) 403-8789 <br> By: /s/ Thomas R. Lehman <br> THOMAS R. LEHMAN, P.A. <br> Florida Bar No. 351318 <br> Primary: trl@lklsg.com <br> Secondary: ar@lklsg.com <br> MARCELO DIAZ-CORTES, ESQ. <br> Florida Bar No. 118166 <br> Primary: md@lklsg.com <br> Secondary: cod@lklsg.com |
| Kendall Coffey, Esq. <br> kcoffey@coffeyburlington.com <br> Kevin C. Kaplan, Esq. <br> kkaplan@coffeyburlington.com <br> COFFEY BURLINGTON <br> 2601 South Bayshore Drive, PH1 <br> Miami, FL 33133 <br> /s/ Kevin C. Kaplan <br> Florida Bar No. 33848 <br> *Counsel for Shutts & Bowen, LLP and Kevin Cowan* | Charles M. Tatelbaum, Esq. <br> cmt@trippscott.com <br> Edward Curtis, Esq. <br> erc@trippscott.com <br> Michael C. Foster, Esq. <br> mcf@trippscott.com <br> TRIPP SCOTT <br> 110 S.E. 6th Street, 15th Floor <br> Ft. Lauderdale, FL 33301 <br> /s/ Charles M. Tatelbaum <br> Florida Bar No. 177540 <br> *Counsel for Steven C. Cronig* |
| Lawrence Goodman, Esq. <br> lgoodman@devinegoodman.com <br> Florida Bar No. 712647 <br> DEVINE GOODMAN et. al. <br> 2800 Ponce de Leon Boulevard, Suite 1400 <br> Coral Gables, FL 33134 <br> /s/ Lawrence Goodman <br><br> *Counsel for JA Energy Resources, LLC and Jorge Arevalo* | Albert F. Delaney <br> vfsdelaney@att.net <br> 45 Scarlet Woods Court, Suite 1102 <br> Spring, TX 77380 <br> /s/ Albert F. Delaney <br><br> *Defendant* |

21

15278623v2 0981354

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on the 14th day of September 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic filing.

*s/  H. Steven Vogel*
H. Steven Vogel

15278623v2 0981354

## SERVICE LIST

| | |
|---|---|
| Adam J. Breeden, Esq.<br>Adam@breedenandassociates.com<br>BREEDEN & ASSOCIATES, PLLC<br>1404 S. Jones Blvd.<br>Las Vegas, NV 89146<br>Ph. 702-508-9250<br>Fax 702-508-9365<br>*Co-Counsel for Plaintiffs* | Jerrold A. Wish, Esq.<br>jwish@wishlaw.net<br>THE WISH LAW FIRM<br>1927 NW 104th Way<br>Gainesville, FL 32606<br>Ph.786-200-7077<br>*Co-Counsel for Plaintiffs* |
| Kendall Coffey, Esq<br>Florida Bar No. 259861<br>kcoffey@coffeyburlington.com<br>Kevin C. Kaplan, Esq.<br>Florida Bar No 933848<br>kkaplan@coffeyburlington.com<br>COFFEY BURLINGTON<br>2601 South Bayshore Drive, PH1<br>Miami, FL 33133<br>Tel: 305.858.2900<br>Fax: 305.858.5261<br>*Counsel for Shutts & Bowen, LLP and Kevin Cowan* | Charles M. Tatelbaum, Esq.<br>Florida Bar No. 177540<br>cmt@trippscott.com<br>Edward Curtis, Esq.<br>Florida Bar No. 236845<br>erc@trippscott.com<br>Michael C. Foster, Esq.<br>Florida Bar No.427065<br>mcf@trippscott.com<br>TRIPP SCOTT<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>Ph. 954-525-7500<br>Fax 954-761-7500<br>*Counsel for Steven C. Cronig* |
| Al Delaney<br>45 Scarlet Woods Court, Suite 1102<br>Spring, TX 77380<br>*Pro Se Defendant* | LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP<br>Counsel for Omar Botero, Alianza Financial Services, LLC, and Alianza Holdings, LLC<br>Miami Center, 22nd Floor<br>201 S. Biscayne Boulevard<br>Miami, FL 33131<br>Telephone (305) 403-8788<br>Facsimile   (305) 403-8789<br>By: /s/ Thomas R. Lehman<br>THOMAS R. LEHMAN, P.A.<br>Florida Bar No. 351318<br>Primary: trl@lklsg.com<br>Secondary: ar@lklsg.com<br>MARCELO DIAZ-CORTES, ESQ.<br>Florida Bar No. 118166<br>Primary: md@lklsg.com<br>Secondary: cod@lklsg.com |

15278623v2 0981354

| | |
|---|---|
| Lawrence Goodman, Esq.<br>lgoodman@devinegoodman.com<br>DEVINE GOODMAN et. al.<br>2800 Ponce de Leon Boulevard, Suite 1400<br>Coral Gables, FL 33134<br>Ph. 305.374.8200<br>Fax 305.374.8208<br>*Counsel for JA Energy Resources, LLC and*<br>*Jorge Arevalo* | Andrew P. Kawel, Esq.<br>apkawel@kawellaw.com<br>KAWEL, PLLC<br>2850 Douglas Rd., Suite 303<br>Coral Gables, FL 33134<br>Ph. 305.209.4529<br>*Co-Counsel for Defendants*<br>*Alianza Financial Services, LLC and*<br>*Alianza Holdings, LLC and Omar Botero* |

15278623v2 0981354