**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

**Case No.:  15-24176-CV-GAYLES**

JAWHBS LLC, a Florida limited liability
company,

       Plaintiff,

vs.

JORGE E. AREVALO, an individual;
JA ENERGY RESOURCES, LLC, a Florida
limited liability company; SHUTTS &
BOWEN, LLP, a Florida limited liability
partnership; KEVIN D. COWAN, an
individual; OMAR BOTERO aka OMAR
BOTERO-PARAMO, an individual;
ALIANZA FINANCIAL SERVICES, LLC, a
Florida limited liability company; ALIANZA
HOLDINGS, LLC, a Florida limited liability
partnership; ALBERT F. DELANEY, aka AL
DELANEY, an individual; CRYSTAL
TOWER PARTNERS II, LLC, a Florida
limited liability company; CRYSTAL TOWER
ON BRICKELL PLAZA, LLC, a Florida
limited liability company; WATSON
BRICKELL DEVELOPMENT, LLC f/k/a
WATSON INVESTIGATIONS, LLC, a
Florida limited liability company; STEVEN
CARLYLE CRONIG, an individual; and
FRANCIS H. "FRAN" SCOLA, III, an
individual;

       Defendants.

_____

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS COWAN AND**</u>
<u>**SHUTTS & BOWEN, LLP'S MOTION TO DISMISS (ECF #210)**</u>

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS COWAN AND
SHUTTS & BOWEN, LLP'S MOTION TO DISMISS (ECF #210)**</u>

In this Motion to Dismiss for Failure to State a Claim pursuant to FRCP 12(b)(6), the Defendants seek to apply unnecessarily high pleading standards to the complaint and make numerous arguments suited for summary judgment when this case is merely in the pleading stage.

The primary legal issue in this Motion to Dismiss for Failure to State a Claim concerns whether an attorney may assist a client in illegal, criminal bid rigging activity and escape civil liability by claiming they have some sort of immunity from suit and privilege as an attorney to break the law. Plaintiff does not believe attorneys may actively assist clients in illegal, criminal behavior and therefore have sued the Defendant attorneys.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.       This case seeks damages for conduct amounting to bid rigging during the course of a bankruptcy sale/auction of valuable parcels of land. Third Amend. Compl. ("TAC") at ¶¶ 45-63. Bid rigging, which can include both paying other bidders not to bid and/or forming a joint venture solely for the purpose of stifling competition at a sale or auction, is *per se* illegal under the Sherman Act 15 USC § 1, and Federal Trade Commission Act 15 U.S.C §§ 41-58 as well as 11 USC § 363(n) (specific bar to efforts to control prices at bankruptcy sales/auctions) and Florida law.

2.       Plaintiff JAWHBS, LLC has alleged the following claims for relief in this matter: (1) violations of federal Sherman Act antitrust laws, (2) violations of Florida antitrust act, (3) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) predicated on the Federal Trade Commission Act, (4) violations of 11 USC § 363(n) relating to bankruptcy sale fixing, (5) Florida state law civil conspiracy/aiding and abetting claims and (6) Florida state law interference with economic advantage claims.

2

3.     The Third Amended Complaint alleges as damages that as a result of the actions of the Defendants, the subject real estate was undersold by $10,000,000 or more.  TAC at ¶ 83.

4.     Following the sale/auction, the bankruptcy trustees began discovery efforts to investigate suspicions of bid rigging in conjunction with the sale/auction.  TAC at ¶ 66 and 75.

5.     During the course of that investigation, smoking gun documents emerged that established beyond a shadow of a doubt that bid rigging had occurred.  The Third Amended Complaint contains numerous and specific details of the bid rigging at ¶¶ 45-63.  For example, the allegations include a written agreement to pay some Defendants $1.2 million dollars in exchange for "their forbearance from making an offer or bid to own the subject property" (Id. at ¶ 45); warnings among the Defendants that expressing interest to the trustees or bankruptcy court "will cause a bidding war where the only certain result is that the price for the property will go up for everyone…" (Id. at ¶ 50); a written agreement "not to compete in any way, directly or indirectly against [one bidder], in the acquisition of the [Brickell Properties]" (Id. at ¶ 52); and sabotaging other potential bids so competition could be eliminated and the winning bid could be lower.  (Id. at ¶ 59).

6.     More specifically as to the moving Defendants, Mr. Cowan and the law firm Shutts & Bowen, LLP represented developer Defendant Arevalo during the times relevant to the complaint.  TAC at ¶¶ 6-10.

7.     The Third Amended Complaint plainly alleges that Defendants Cowan and Shutts & Bowen, LLP did more than the "mere providing of legal advice" and "actively and knowingly engaged in a scheme designed to achieve anticompetitive ends and performed acts to intentionally further anticompetitive goals."  TAC at ¶¶ 10 & 125.  More specifically, Cowan while acting for Shutts & Bowen, LLP formulated policy decisions for the client which were illegal, actively

concealed the presence of his client from the Court and the trustees, discouraged his client from filing a notice of appearance, used threats to expose the illegal agreement as a negotiation tactic and made hand-written changes on plainly illegal agreements that required his client to conceal his presence from the bankruptcy court and the trustees. Id.

8.     The Third Amended Complaint plainly alleges that Mr. Cowan "knew or should have known" the subject agreements were illegal under antitrust and bankruptcy law. TAC at 10(d).

9.     In addition to the allegations of the Third Amended Complaint, Plaintiff wants the Court to know that there is evidentiary support for their allegations. Plaintiff's expert on attorney conduct has provided a report for Plaintiff opining that "An attorney cannot commit fraud, or an intentional tort or crime, and be shielded by the attorney/client/privity concepts of law" that Cowan's actions "went beyond simply giving legal advice" that "drafting or delivering documents" is sufficient under the applicable legal standard to exceed mere advice and that "based on both his experience as a real estate lawyer and access to other professionals [Cowan] knew or should have known that the bid-rigging scheme was illegal." (Ex. 1, Report of Tannebaum). The expert correctly states that "[a] simple edit of an illegal document can be construed as engaging in the illegal conduct. In fact, anything short of "NO, THIS IS ILLEGAL," can be interpreted as assisting the client."

10.    The Defendants argue that the Plaintiff has not alleged causation, but this is plainly untrue. The Third Amended Complaint properly alleges causation of damages in that the acts of the Defendants controlled the sale/auction price by "(1) reducing the number of bidders/buyers, (2) preventing a competitive bidding/auction process, (3) concealing the identity of other potential bidders/buyers from the trustees and court, (4) causing a time urgency which induced the trustees

to accept an artificially reduced sales price, [and] (5) allowing an artificially low bid/offer which would have been considerably higher if a competitive process had occurred…"TAC at ¶ 83, 93. See TAC at 68 ("…sale price of the Brickell Parcels was artificially depressed by the collusion and concerted acts…").

11.     The Defendants state that they were only involved with the transaction for "a matter of hours—overnight" (Mot. at pg. 4).  However, the earliest document Plaintiff has showing Defendant Cowan dealing with Defendant Arevalo is dated June 20th (Arevalo was negotiating what Plaintiff would describe as a surreptitious agreement with the former owner of the properties to buy the properties and split profits with him outside the bankruptcy estates).  Later, Arevalo and Botero began working on the subject agreement in this case with Arevalo doing so as early as July 3rd.  Cowan begins to again become heavily involved as of July 8th assisting negotiations, drafting and keeping the agreement concealed from the court and the trustees.

12.     Procedurally, the Court issued a ruling on a threshold issue of standing on August 4, 2016 [ECF #176] and found that Plaintiff JAWHBS had standing to assert the claims, that there was no res judicata that barred the claims and that the state law claims were not preempted by federal law.

13.     In a prior ruling on a similar Motion to Dismiss filed by another Defendant, Albert Delaney, the Court correctly determined that at this early pleading stage "accepting the well-pleaded factual allegations of the Amended Complaint as true, and viewing those allegations in the light most favorable to the Plaintiffs, the Complaint 'contains sufficient factual matter…to state a claim to relief that is plausible on its face'" as to that Defendant.  [Order Denying Delaney 12(b)(6) Motion, ECF # 159 pg. 2].

5

14.     Plaintiff has not made "Three Prior, Failed Attempts" at pleading its case.  The issues raised in this Motion have never previously been considered by the Court.  The Court denied the prior Motion without prejudice for Plaintiff to re-plead based on other legal grounds.

15.     The Defendants spin certain pleadings to argue that they in fact helped exposed the collusion in this case.  Plaintiff disputes this characterization of the facts.  The Defendants fully cooperated with the collusion and illegal bid rigging agreement until its effects were beyond control.  The Defendants only revealed the bid rigging after it was too late to cure and only when their client's need suited disclosure, not prior to that time.

The Defendants in this case were essentially caught red handed when their contracts, e-mails and text messages, surf aced *after* the sale.  This information shows that the Defendants committed several per se violations of the aforementioned laws.  Plaintiff now seeks justice and monetary compensation for the acts of the Defendants that artificially reduced the sale/auction price of the parcels and allegedly damaged them by more than $10,000,000.

## II.  LEGAL STANDARD FOR A MOTION TO DISMISS

Defendants Cowan and Shutts & Bowen's Motion to Dismiss is filed under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, the Court must look to the allegations of the Complaint, assume those allegations are true, and draw all reasonable inferences from them.  Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1307 (11th Cir.1998).  The Supreme Court has explained that a complaint is sufficiently nonspeculative, or plausible, if "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Eleventh Circuit has held that Iqbal did not substantively change prior law on this issue.  Randall v. Scott, 610 F.3d 701, 710 (11th Cir. Ga. 2010) ("After Iqbal it is clear that there is no "heightened

pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard.").

In ruling on a motion under FRCP 12(b)(6), the factual allegations of the complaint are accepted as true and all reasonable inferences from these allegations are drawn in the plaintiff's favor. See Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1307 (11th Cir.1998). The factual allegations in a complaint must only "possess enough heft" to set forth "a plausible entitlement to relief." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276 (11th Cir. 2007) (citations/quotations omitted). Controlling case law from the 11th Circuit establishes that it is difficult to obtain a dismissal under FRCP 12(b)(6). Jackam v. Hospital Corp. of Am. Mideast, 800 F.2d 1577, 1579 (11th Cir. 1986) ("The movant sustains a very high burden.") (citations omitted); Quality Foods v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 995 (11th Cir. 1983) (Plaintiffs' "threshold of sufficiency…is **exceedingly low**.").

Plaintiff seeks leave to amend if any insufficient pleading is found. Warner v. Alexander Grant & Co., 828 F.2d 1528, 1531 (11th Cir.1987) (leave to amend is preferred over dismissal).

### III.  LAW AND ARGUMENT

**A.  Plaintiff has Pleaded Claims which Meet the Minimal Requirements of Being "Plausible" Under the Applicable Legal Standard**

As explained further in the sections below and the above statement of fact, the Plaintiff has met the minimal pleading standard of "plausible" claims.

Plaintiff's claims were dismissed with leave to amend on August 4, 2016 with the Court finding that the First Amended Complaint was a "shotgun" complaint because it "impermissibly incorporates every allegation by reference into each subsequent claim for relief." [Order ECF # 176 at 19]. Plaintiff amended and removed the incorporations of every other paragraph and limited them merely to the general allegations which all pertain to each cause of action. A complaint is

not a shotgun complaint merely because it is long or because it contains allegations necessary to satisfy the plausibility standard.  Plaintiff should not be faulted for providing detail in a complaint where the Iqbal case arguably requires the same.

The Defendants are incorrect that the Third Amended Complaint makes only conclusory allegations as to Defendant Cowan.  The Third Amended Complaint contains several detailed complaints outlining Mr. Cowan's willful participation in the illegal bid rigging scheme.  TAC at ¶ 10 (Cowan made policy decisions, concealed his client's involvement from the court and directed the client not to alert the trustees of his presence); TAC at ¶ 52 (Cowan directly negotiated an illegal bid rigging contract "not to compete in any way…"); TAC at ¶ 54 (Cowan threatened to report the agreement as a negotiating tactic and then refrained from doing so when the other side capitulated and Cowan personally revised the agreement in a manner to assure its secrecy).

The Defendants argue that Cowan's work was "extremely minimal" and "over a two day period."  This really does not matter because a conspirator, which Cowan is alleged to be TAC at ¶9 & 41, is liable for all acts done to further the conspiracy.  Moreover, these are disputed issues and time periods.

The moving Defendants argue that "there is no allegation that a deal was entered between the Botero and Arevalo groups."  Mot. at 6.  This is especially surprising considering that Mr. Koroglu of the Shutts & Bowen, LLP Defendant stated previously in court that Arevalo "admitted that the prior agreement… was 'to effectively not make a higher and better bid in bankruptcy.'"  TAC at ¶ 55.  The Complaint also plainly alleges that there was an agreement.  See TAC at ¶ 45 "Prior to July 10, 2013, the AREVALO GROUP and the BOTERO GROUP agreed to collude to artificially prevent competitive bidding on the Brickell Parcels and depress the sales price." TAC at ¶ 49 "we are going to do the business with you."  There are sufficient allegations

8

to show that not only was there an agreement that was acted upon but also that Cowan knew of the agreement and participated in the illegal behavior.

The Defendants also cleverly argue that their illegal acts actually helped the estates by raising the purchase price.  This is a bit like arguing that since the bid rigging only cost the estates $10,000,000 instead of $12,000,000 the Defendants should be congratulated.  Regardless, arguments about damages are an issue for trial, not the pleading stage.  Further, the Plaintiff is entitled to per se damages under 11 USC § 363(n) fixing the damages at the difference between the sale price and the actual value.

"Plausibility" is not the new substitute for a jury trial.  The Court cannot resolve issues of fact at the pleading stage and the Motion to Dismiss should be denied.

**B.** <u>**Defendants' Arguments as to the Amount of the Assignment Payment are Irrelevant and Mischaracterized Regardless**</u>

Next, Plaintiff is compelled to respond to an otherwise irrelevant argument made by the Defendants regarding the transfer of the claims to it by the trustees.  The Defendants cite the fact that the trustees transferred these claims to JAWHBS for $25,000 and call this a "speculative" "investment" by the Plaintiff.  They also argue that "two highly reputable bankruptcy trustees and two highly reputable law firms specializing in bankruptcy reviewed JAWHBS' claims and declined to bring them…" as some sort of argument that Plaintiff's claims lack merit.

It is, of course, irrelevant whether the claims were transferred for $1 or $1,000,000.  Additionally, any argument as to what the trustees thought of the claims is irrelevant speculation.  However, Plaintiff must correct the Defendants' spin on the facts of this case.

Following the July 2013 sale, the trustees rightfully suspected bid rigging and began investigating.  The trustees sent subpoenas, conducted Rule 2004 examinations, conducted legal research and successfully litigated motions to block their efforts.  The trustees went so far as to

draft a complaint to file against several Defendants, including Mr. Cowan and Shutts & Bowen, LLP as well.  [See TAC ECF # 189 at Ex. 1].  The trustees also billed the estates tens of thousands of dollars to investigate the claims the Defendants mischaracterize as worthless.  As a result of the collusion, SLS Properties actually lost millions of dollars it was owed.  In fact, nearly all of the money lost from the collusion would have been paid to SLS Properties because other creditors were secured and thus were paid in full.  Therefore, in order to select its own counsel and control the litigation, the principals of SLS Properties formed a company, Plaintiff JAWHBS, and negotiated a transfer of the trustee's claims so the trustees could step into the background, close the estates and allow the litigation to proceed.  See TAC at 75-76.

This background is irrelevant to adjudication of the present Motion, but the Plaintiff will not tolerate the Defendants attempting to sway the Court by incorrectly painting this case as some wild speculation where there was no actual loss to the Plaintiff.  It seems a bit misleading for the Defendants to argue that the trustees thought nothing of these claims when the trustees extensively researched them, conducted discovery and had actually drafted a complaint to file against the Defendants.  The Court should understand that the Defendant's spin on these facts is disputed.

   C. **The Antitrust Claims are Adequately Pleaded and Should not be Dismissed**

      a. **Attorneys are _not_ Exempt from Antitrust Liability**

This matter is at the pleading stage, not summary judgment.  Complete discovery has not yet occurred.  However, the Defendants are incorrect when asserting that attorneys cannot be held responsible for federal and state antitrust law claims as explained herein.

   1. _Bid Rigging is Illegal, Criminal Activity under the Sherman Act and Other Law_

Bid rigging is illegal, criminal activity under the Sherman Act and is a per se violation of the law.  United States v. Portsmouth Paving Co., 694 F.2d 312, 325 (4th Cir.1982) ("Any

agreement between competitors pursuant to which contract offers are to be submitted or withheld from a third party constitutes bid rigging per se violative of 15 U.S.C. section 1."); United States v. Flom, 558 F.2d 1179, 1183 (5th Cir. 1977) ("Conspiracies between firms to submit collusive, noncompetitive, rigged bids are per se violations" of the Sherman Act.); Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 7-8 (1979) (price-fixing agreements among competitors are conclusively presumed illegal without further examination under the rule of reason; they are per se illegal); United States v. Bensinger Co., 430 F.2d 584, 589 (8th Cir. 1970) (bid rigging agreement "is a price-fixing agreement of the simplest kind, and price-fixing agreements are per se violations of the Sherman Act.").  Similarly, bid rigging is also a per se violation of the Federal Trade Commission Act and FDUTPA.  Mack v. Bristol-Myers Squibb Co., 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1st Dist. 1996) ("Section 5(a)(1) of the FTC Act encompasses violations of the antitrust laws. Thus, the acts proscribed by subsection 501.204(1) [the FDUTPA] include antitrust violations.").

Plaintiff has plainly alleged a cause of action for bid rigging (Third Amend. Comp. at ¶ 45-54) and alleged that Defendants Cowan and Shutts & Bowen, LLP took actions to further the bid rigging scheme.

2. *An Attorney may be held Civilly Liable to a Third Party for Assisting a Client in Illegal Transactions, including Antitrust Violations.*

i. *The General Rule that an Attorney is not Privileged to Commit Illegal Acts*

The over-arching principle of attorney liability is that "a lawyer is subject to liability to a client or non-client when a non-lawyer would be in similar circumstances." Restatement 3d of the Law Governing Lawyers, § 56 (3rd ed. 2000). A lawyer is not privileged to break the law simply because he or she is a lawyer.  Further, "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent."

Florida Rule of Professional Conduct 4-1.2.  Comment c to the Restatement § 56 instructs that "[w]hen a lawyer advises or assists a client in acts that subject the client to civil liability to others, **those others may seek to hold the lawyer liable along with or instead of the client.**"  Even when an attorney acts within a client's best interest, the rights of others must be considered. Miller v. Ortman, 136 N.E.2d 17, 41-2 (Ind. 1956). The law does require that while an attorney is acting within the scope of his employment, he may not commit fraud or collusion, or a malicious or tortious act, even if doing so is for the benefit of the client.  Such actions are beyond the qualified privilege and an attorney is personally liable for them. Strid v. Converse, 331 N.W.2d 350, 356 (Wis. 1983).  "An attorney who has actual knowledge that his client is engaged in unlawful activity may not aid, assist or encourage the carrying on of that unlawful activity." Fraidin v. Weitzman, 93 Md. App. 168, 236-237 (Md. Ct. Spec. App. 1992).

       ii.    *In the Specific area of Antitrust Actions, Attorneys may be held Liable to Third Parties for Assisting Clients in Illegal, Anti-competitive behavior*

The Defendants are simply incorrect when they assert that attorneys are "exempt" from antitrust liability.  Hopefully, it strikes the Court as odd that any person—let alone an attorney—would simply claim that they are "exempt" from a criminal statute.

The US Supreme Court has held that "[I]n antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 746 (1976) (citations omitted).  "[T]o survive a motion to dismiss [in an antitrust matter], the Plaintiff must allege that each defendant 'participated in, authorized, directed, and/or knowingly approved or ratified' the illegal conduct…" In re Se. Milk Antitrust Litig., 555 F. Supp. 2d 934, 949 (E.D. Tenn. 2008).

Specifically as to <u>attorney</u> liability for assisting clients with anticompetitive acts, the correct statement of the law is that an attorney may be held personally liable under antitrust laws where the attorney is "actively and knowingly engaged in a scheme designed to achieve anticompetitive ends" and acts to "intentionally further anticompetitive goals." <u>Brown v. Donco Enterprises, Inc.</u>, 783 F.2d 644, 646 (6th Cir. 1986) (analyzing attorney liability under antitrust law). "Attorneys are not…immunized from antitrust liability" and "may be found individually liable for antitrust violation[s] if the attorney exceeds his role as legal adviser and becomes an active participant…" <u>Id.</u> at 646. <u>See</u>, <u>Tillamook Cheese & Dairy Asso. v. Tillamook County Creamery Asso.</u>, 358 F.2d 115, 118 (9th Cir. Or. 1966) ("[the attorney is not liable] if the role of the counsel was only that of a legal adviser…But if he goes beyond that role and, acting by himself or jointly with others, makes policy decisions for the corporation, then he subjects himself to liability."); <u>Invictus Records, Inc. v. American Broadcasting Cos.</u>, 98 F.R.D. 419, 429 ( E.D. Mich. 1982) (Attorney may be held personally liable under antitrust laws where he acts as "more than a legal adviser."); <u>Pinhas v. Summit Health, Ltd.</u>, 894 F.2d 1024, 1033 (9th Cir. Cal. 1989) ("An attorney is not immune from antitrust liability if he becomes an active participant in formulating policy decisions with his client to restrain competition.").

The Middle District of Florida has also recognized that an attorney may be held civilly liable for assisting a client in an antitrust violation as well. <u>Longleaf Mitigation Dev. Co., LLC v. Fla. Mitigation Providers, LLC</u>, 519 F. Supp. 2d 1233 (M.D. Fla. 2007) (denying defendant's motion to dismiss, explaining <u>Brown</u>'s ruling that "a law firm could be liable for its client's antitrust violations…").

Additionally, the report of Plaintiff's attorney conduct expert is helpful on this point of law. (Ex. 1, Report of Tannebaum). As that report correctly states "[a]n attorney cannot commit

fraud, or an intentional tort or crime, and be shielded by the attorney/client/privity concepts of law" and finds that Cowan's actions "went beyond simply giving legal advice." Id. at 2 and 7. The report notes that that "drafting or delivering documents" is sufficient under the applicable legal standard to exceed mere advice and that "based on both his experience as a real estate lawyer and access to other professionals [Cowan] knew or should have known that the bid-rigging scheme was illegal." (Id. at pg. 5). The expert plainly states "[a] simple edit of an illegal document can be construed as engaging in the illegal conduct. In fact, anything short of "NO, THIS IS ILLEGAL," can be interpreted as assisting the client." Id. at pg. 5. Further, "The handwritten document with changes made by Cowan is an attempt to conceal information about a second potential bidder from the tribunal." Id. at pg. 6. Under Florida law, where an attorney assists a client illegal activity, he can be held responsible. The Florida Bar v. Calvo, 630 So.2d 548 (Fla. 1993) (attorney disciplined for helping client in scheme to violate securities laws). Mr. Cowan greatly exceeded the passive rendering of advice by directly negotiating the illegal agreement as well as actively working to conceal the agreement and conspiracy from the court.

Notably, the cases cited by the Defendants all seem to have been *summary judgment* rulings after discovery, not successful motions to dismiss at the pleading stage. In short, "I was only an attorney so I can break whatever laws I like for a client" is not a recognized antitrust defense.

      iii.    *The Actions of Defendant Cowan show that He was Aware of the Bid Rigging and took Actions to Advance the Bid Rigging Agreement*

The Third Amended Complaint at ¶ 10 plainly alleges that the acts of Mr. Cowan "exceed the mere providing of legal advice and instead constitute active, personal participation in an illegal bid rigging scheme and other tortious behavior. Cowan actively and knowingly engaged in a scheme designed to achieve anticompetitive ends and performed acts to intentionally further anticompetitive goals." The Third Amended Complaint then proceeds to describe Mr. Cowan's

acts which were not limited to merely advising the client as to whether the agreement was legal or illegal but including directly negotiating the illegal agreement and revising the agreement to assure its secrecy.  TAC at ¶¶ 10, 46, 47, 52 and 54.

Thus, Plaintiffs have clearly asserted sufficient allegations to support a cause of action. Plaintiffs do not, however, want the Court to think that Plaintiffs are merely artfully pleading a cause of action to survive a Motion to Dismiss.  There exists serious evidence in this case that Mr. Cowan did not merely provide advice to Mr. Arevalo.  The irrefutable evidence is that Mr. Cowan personally drafted or revised the illegal agreement.  (See *Exhibit* 3, 48-65).  He made handwritten notes on the agreement to make certain no party alerted the court to the presence of a second bidder.  E-mails establish that he was personally involved in the negotiations of the agreement, apparently with Mr. Delaney.  Id. Most concerning are Mr. Cowan's comments to the Botero Group intended apparently to coerce the Botero Group into compliance with Mr. Arevalo's demands and to maintain the secrecy of the bid rigging agreement from the Court.  For example, Mr. Cowan writes "I'm getting pressure from my client," (PLTF 57) that Mr. Arevalo was uneasy about "holding back the filing of na [notice of appearance]" (PLTF 55) and when Mr. Arevalo was apparently threatening to tell the Court or trustees of his involvement Mr. Cowan wrote "We have a problem.  Please call me on my cell…" (PLTF 92).  Mr. Cowan was affirmatively working to keep the nature of the bid rigging agreement and presence of a second competitive bidder secret from the bankruptcy court and the trustees.  Plaintiff also notes that many pages of Mr. Cowan's communications are being withheld under a disputed claim of privilege at this time as well.  (See PLTF 55-66 and others).  In other words, if given the opportunity for full discovery Plaintiff believes that even more evidence will be uncovered.

Plaintiff would also like to point out the following:  The acts of attorney Cowan and Shutts & Bowen Defendants in this case are particularly troubling.  The Shutts & Bowen firm touts itself as one of Florida's oldest and most esteemed law firms.  Shutts & Bowen had *multiple* lawyers working on this legal matter.  These lawyers should have been the whistle-blowers, the fail-safes or the safety mechanisms to prevent the blatant bid rigging that occurred.  It seems impossible to believe that out of the several sophisticated real estate attorneys involved in this matter from Shutts & Bowen that not a single one realized that bid rigging—including a brazen proposed payoff to another bidder to simply not submit a competitive bid—was illegal under the Sherman Act, the Fair Trade Commission Act/FDUTPA and 11 USC § 363(n).[1]  In fact, one of the Shutts & Bowen attorneys admitted in open court that the effect of the agreement between Botero and Arevalo was "to effectively not make a higher and better bid in bankruptcy."  Third Amend. Comp. at ¶ 55.  Yet, instead of refusing to participate and sounding the alarm, neither Cowan nor any other attorney at Shutts & Bowen did so.  At some point even the attorneys for the Botero Group realized the gravity of the situation and filed a motion to withdraw as counsel on an order shortening time— yet Shutts & Bowen continue to pretend that there is nothing wrong with helping a client break the law and engage in bid rigging.  Instead, Shutts & Bowen continues to argue that it is somehow privileged to help its client fix a sale conducted by a US bankruptcy court.

Respectfully, the Defendants' position on this issue of law is incorrect and the Third Amended Complaint states a cause of action against the attorney Defendants.

/ /

---

[1] As an aside, it does appear so far that Shutts & Bowen intends to take the position that instead of intentionally breaking the law, its attorneys merely incompetently failed to realize that a $1.2 million dollar payoff from one bidder to another was illegal.  Even should Shutts & Bowen take this position, ignorance of the law is no excuse to civil liability.  One cannot run a red light and cause a serious automobile accident, then claim they did not know the law required them to stop at a red light as an excuse.

### D.   **Attorneys are *not* Immune or Exempted from the FDUTPA**

Defendants next argue that the practice of law is immune from liability under the FDUTPA, an assertion which is simply untrue.  To begin, the United States Supreme Court definitively found that the practice of law is "trade or commerce" in Goldfarb v. Va. State Bar, 421 U.S. 773 (1975). Next, it is unusual that the Defendants cite to Kelly v. Palmer, Reifler, & Associates, P.A., 681 F. Supp. 2d 1356 (S.D. Fla. 2010) to argue that attorneys are exempt from the FDUTPA because the case holds the **exact opposite**.  In Kelly, the Court noted that "no Florida court has held that attorney conduct will not give rise to a FDUTPA claim." Id. at 1369.  The court held that "we decline…to read attorney conduct out of the statute based only upon an attorney's status under the law" and that the **"FDUTPA does not exclude attorney conduct."** Id. at 1371.  The attorneys did ultimately prevail in the Kelly case, but only on the limited holding that the mere sending of a collection demand letter was not "trade or commerce."

Anticompetitive behavior is per se illegal under the FDUTPA.  "Section 5(a)(1) of the FTC Act encompasses violations of the antitrust laws. Thus, the acts proscribed by subsection 501.204(1) [the FDUTPA] include antitrust violations." Mack v. Bristol-Myers Squibb Co., 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1st Dist. 1996) citing FTC v. Indiana Federation of Dentists, 476 U.S. 447, 454-55 (1986) (finding that antitrust violations are unfair methods of competition under the FTC Act).  The Florida Supreme Court has expressly determined that the anticompetitive behavior of price fixing is forbidden under the FDUTPA.  Execu-Tech Bus. Sys. v. New Oji Paper Co., 752 So. 2d 582 (Fla. 2000) (Japanese corporation could be sued in Florida under the FDUTPA for alleged price fixing).

In the present case, Plaintiff alleges that the trade or commerce invoking the FDUTPA was the "the sale of real property, and participation in a bid/auction." TAC at ¶ 102.  Although Plaintiff

sues Cowen and Shutts & Bowen, LLP for joining in illegal, anticompetitive acts during its practice of law and not just mere giving of legal advice, surely either qualifies as "trade or commerce" under the FDUTPA.  Plaintiff's complaint adequately pleads a claim under the FDUTPA.

### E.  Plaintiff has Sufficiently Pleaded a Bid Rigging Scheme under 11 USC § 363(n)

The Shutts & Bowen and Cowan Defendants next make an argument that a bid rigging agreement in violation of 11 USC § 363(n) has not been properly pleaded.  They argue that an agreement to collude has not been properly alleged and that attorneys cannot be held liable under 11 USC § 363(n).  Both arguments are incorrect.

Plaintiff has plainly alleged that "Prior to July 10, 2013, the AREVALO GROUP and the BOTERO GROUP agreed to collude to artificially prevent competitive bidding on the Brickell Parcels and depress the sales price," TAC at ¶ 45, and that Cowan "Personally knew of the negotiations and the agreement (which was a violation of law) and participated in the negotiations toward the illegal, anticompetitive purpose."  TAC at ¶ 46.  The complaint in great detail then proceeds to describe the agreement and its negotiation.  TAC ¶¶ at 45-69.

Antitrust law does not require a tidy, written, signed contract to impose liability since parties would rarely do so for an illegal agreement.  Instead, "[a]n agreement proscribed by section 363(n) need not be an explicit written agreement, but may be an oral agreement to collude or an agreement inferred from the behavior of the parties or the circumstances."  In re Sunnyside Timber, LLC, 413 B.R. 352, 363 (Bankr. W.D. La. 2009).  Further, "Intent in antitrust cases, as in all cases, is a question to be resolved by the trier of fact after consideration of all the evidence."  Cromar Company v. Nuclear Materials & Equipment Corp., 543 F.2d 501, 511 (3d Cir. 1976).  Courts have also well-reasoned that "parties who are accused of controlling bidding in a bankruptcy sale cannot avoid suit under § 363(n) simply by withdrawing their bid."  In re: Am. Paper Mills of Vt.,

18

Inc., 322 B.R. 84, 94 (Bankr. D. Vt. 2004).  Therefore, no signed, written agreement needs to be alleged, only any agreement to collude and achieve bid rigging which is surely alleged in this case. Plaintiff has clearly alleged that the Defendants conspired with, aided and abetted and acted to further the bid rigging scheme.  That is all that is required.

Defendants Cowan and Shutts & Bowen had full knowledge of the bid rigging agreement. They helped to draft and revise it.  They directly negotiated it with the Botero Group.  At times, Mr. Arevalo would threaten to file a notice of appearance and alert the bankruptcy court and trustees of the presence of a second bidder, but Defendant Cowan worked to stop this disclosure to the Court, saying that would be "a problem" and worked to reach an agreement quickly so no Notice of Appearance would be needed.  Mr. Cowan was aware that the Botero Group was willing to "go higher" in the price to purchase the Brickell parcels, but worked toward the bid rigging agreement so the Arevalo Group would not have to compete.

The Defendants also allege that the July 10, 2013 hearing proves there was never any "agreement among potential bidders" that "controlled" the sales price.  Such issues of causation would be an issue of fact for the jury.  However, the complaint sets forth numerous written correspondence that establish beyond all question that a per se bid rigging agreement was entered into.  Numerous e-mails and the written agreement establish it.  The writings refer directly to the intent of "forbearance" from submitting a competing offer (TAC at ¶45), a written agreement "not to compete in any way…in the acquisition," (TAC at ¶52) a text message acceptance by the Botero Group, (TAC at ¶ 49) and concern that a second bid would only "cause a bidding war where the only certain result is that the price for the property will go up for everyone…"  (TAC at ¶50). There was clearly a bid rigging agreement.  Defendants may view the agreement as unsuccessful because they were unable to ultimately acquire the parcels.  But from Plaintiff's view, the bid

rigging was tremendously successful as it stifled competition and drove off at least one bidder, among other alleged effects on the auction, greatly harming the Plaintiff.  (TAC at ¶ 82).

Further on the causation issue, under 11 USC § 363(n) the law sets presumed or per se damages for collusion in the bankruptcy context.  Section 363(n) sets the damages at "any amount by which the value of the property sold exceeds the price at which such sale was consummated." This is an intentionally harsh statute designed to deter bid rigging and eliminate arguments as to causation of damages.  Nevertheless, Plaintiff has also designated an auctioneer expert who has opined on the collusion in this case and rendered a written report that "This case illustrates a classic case of collusion or bid rigging" and that auction sale price is "linked to the valuation of the underbidder…" and when such additional bidder is "eliminated or restricted from bidding, the price of the assets being sold is artificially reduced."  The expert also opines that "the property which was sold during the bankruptcy proceeding was worth far more than the $21,500,000 that it was sold for."  (Ex. 2, Stampler Report).  Now, such evidence is typically reserved not for the pleading stage but summary judgment.  However, Plaintiff feels the need to show the Court why its allegations as set forth are "plausible" under the applicable standard.

Lastly on this issue, Defendants have an interesting spin on what happened at the June 10, 2013 hearing.  Defendants most certainly did <u>not</u> disclose the bid rigging in good faith to prevent it.  Instead, after furthering the illegal, criminal bid rigging and working to keep it secret, they were forced to go to Court and reveal their presence to argue for more time.  This was a bombshell in Court.  The bankruptcy court judge indicated the Botero Group sale would not be deemed in good faith.  The attorneys representing the Botero Group withdrew on an order shortening time, presumably to try to avoid further association with the illegal, criminal agreement and a legal news article was even written over the remarkable events.

It is incredible for the Defendants to now act like there was never any bid rigging agreement, nor any negative effect on the competition at the auction.  Ultimately, these may be issues for trial, but Plaintiffs have pleaded numerous, detrimental effects the bid rigging scheme had on the sale/auction.  TAC at ¶ 83, 93 et. al. (listing detrimental impact of bid rigging on the sale/auction).  This is sufficient pleading and the Motion to Dismiss should be denied.

**F.  <u>The Third Amended Complaint Adequately States a Claim for Civil Conspiracy</u>**

Cowan and Shutts & Bowen, LLP next argue failure to state a claim for civil conspiracy. This is simply a premature motion for summary judgment.  The cause of action for civil conspiracy is plainly recognized in the state of Florida.  The cause of action requires (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.  <u>Walters v. Blankenship</u>, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 5th Dist. 2006).  These elements are properly pleaded in Paragraphs ¶¶ 118-132 of the Third Amended Complaint.  Plaintiff has located at least one other case where an antitrust lawsuit against attorneys for a company was found to state a valid cause of action against the attorneys for conspiracy to commit antitrust violations.  <u>Pinhas v. Summit Health, Ltd.</u>, 894 F.2d 1024, 1033 (9th Cir. Cal. 1989) (attorney defendants could be held liable for antitrust conspiracy where they "direct[ed] them to engage in the complained of acts for an anticompetitive purpose.").  Again, we are in the pleading stage here and the allegations are sufficiently pleaded.

Shutts & Bowen's self-serving, conclusory statements that "the Shutts Defendants' only alleged act was appearing at the July 13, 2013 hearing…" is simply incorrect and a premature motion for summary judgment.  The Third Amended Complaint plainly alleges that Cowan "acted in concert with, aided and abetted and/or entered into a civil conspiracy with AREVALO."  TAC

at 9.  The complaint then proceeds to outline Cowan's negotiation and drafting of the agreement and efforts to maintain its secrecy from the bankruptcy court and the trustees.  TAC at ¶ 10.  The evidence in this case plainly shows that Shutts & Bowen and its attorneys had full knowledge of an illegal bid rigging scheme and chose to assist their client in the drafting, negotiation and maintaining the secrecy of that agreement from the Court and trustees.  This is sufficient evidence to prevent summary judgment, let alone the lesser standard under Rule 12(b)(6) to reject a Motion to Dismiss for Failure to State a Claim.

G. **The Third Amended Complaint Adequately States a Cause of Action for Tortious Interference**

Allegations that a party interfered with the auction or sale of real property (Third Amend. Comp. at ¶133-141) state a cause of action for <u>tortious interference</u> under Florida law.  <u>Walters v. Blankenship</u>, 931 So. 2d 137 (Fla. Dist. Ct. App. 5th Dist. 2006) (neighbors' efforts to interfere with and depress the sales price of condominiums sold at auction, apparently out of spite, stated a claim for civil conspiracy and tortious interference).

Plaintiff does not present a claim based on Defendants' simple rendering of legal advice. The allegations of the Third Amended Complaint are that the Defendants' actions clearly went further than mere advice to a client.  TAC at ¶ 10 ("exceed the mere providing of legal advice and instead constitute active, personal participation in an illegal bid rigging scheme and other tortious behavior.").  The allegations state the specific actions of the Defendants in the interference, when such actions occurred, and the business relationship that was interfered with, namely the relationship between the trustees in bankruptcy and actual or potential bidders for the parcels. Defendants personally drafted and revised the bid rigging agreement, negotiated the illegal agreement directly with the other side and took steps to maintain the secret nature of the bid rigging from the bankruptcy court and trustee.  The complaint alleges that Cowan and Shutts & Bowen,

22

LLP did not only give legal advice but actively participated in advancing the anticompetitive goals of the Arevalo Group.  Id.

The Parker v. Gordon, 442 So.2d 273 (Fla. 4th DCA 1983) case cited by Shutts & Bowen, LLP is distinguishable.  The Parker case actually concerned statute of limitations issues and an apparent legal malpractice claim against a client's own former lawyer.  In dicta, the court stated that "professional counsel, being under a duty to advise his clients, is not liable for interference." The case did not deal with bid rigging and did not address an attorney assisting in an illegal, criminal act and is clearly distinguishable.  Plaintiff has stated a valid tortious interference cause of action under Walters v. Blankenship, 931 So. 2d 137 (Fla. Dist. Ct. App. 5th Dist. 2006).

Plaintiff is not suing Cowan and Shutts & Bowen for merely giving legal advice to a client. Had the Defendant attorneys merely rendered a legal opinion and then not proceeded to take part in the actual bid rigging transaction, they would not have been sued.  Instead, the Third Amended Complaint alleges that Cowan and Shutts & Bowen conspired with and aided and abetted the illegal, criminal bid rigging scheme of their client, Mr. Arevalo.  These are sufficient allegations at the pleading stage and the Defendants' Motion should be denied.

**H.    Plaintiff has Adequately Pleaded a Cause of Action for Punitive Damages**

Lastly, the Defendants argue that punitive damages are not adequately pleaded.  Plaintiff has several responses to this argument.

First, to the extent the Defendants would be referring to treble damages as punitive damages, such damages are expressly permitted by statute based on the federal and state antitrust claims, 15 USC § 15 (plaintiff "shall recover threefold the damages by him sustained"); Fla. Stat. § 542.22 (plaintiff "shall recover threefold the damages").  Therefore, to the extent Defendants are referring to treble damages, those are expressly allowed by statute.

Second, punitive damages are expressly permitted under Plaintiff's claims under 11 USC § 363(n) for collusion during a US bankruptcy court sale. 11 USC § 363(n) ("In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.").

Third, Plaintiff has pleaded a state law claim for intentional interference. When accompanying antitrust claims, such causes of action can warrant punitive damages. See Ad-Vantage Tel. Directory Consultants v. GTE Directories Corp., 943 F.2d 1511, 1513 (11th Cir. Fla. 1991) (noting punitive damages award on interference claim in Florida antitrust case). "Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others." W.R. Grace & Co. v. Waters, 638 So. 2d 502, 503 (Fla. 1994).

The Defendants continuously isolate one allegation in the complaint regarding the hearing before judge Isicoff where the Defendants did not appear to realize the ramifications of the admissions they were making to the bankruptcy court. The attorney that made these statements to the court were another attorney, Mr. Koroglu, not Defendant Cowan. Plaintiff is prepared to present expert opinion that a real estate partner attorney such as Mr. Cowan should have realized the transactions were illegal. (See Ex. 1 at pg. 5 "in my opinion Mr. Cowan, based on both his experience as a real estate lawyer and access to other professionals - particularly in the bankruptcy arena - knew or should have known that the bid-rigging scheme was illegal."). The Complaint otherwise clearly alleges intentional and illegal acts of Mr. Cowan. TAC at ¶ 10. Even if the Defendants argued at trial that Mr. Cowan did not realize his actions were illegal at the time, ignorance of the law provides no excuse.

With all reasonable inferences and allegations taken as trust, the Third Amended Complaint alleges causes of action upon which punitive damages could be based.

## IV.  CONCLUSION

No level of pleading will be sufficient to the Defendants in this case.  They merely raise hyper-technical pleading arguments regarding the plausibility of Plaintiff's claims, which the Court otherwise found well-pleaded as to Defendant Delaney.

We are at the <u>pleading stage</u> in this case, not summary judgment.  The Motion to Dismiss filed by Shutts & Bowen, LLP and Cowan is merely a premature Motion for Summary Judgment filed before full discovery occurs.  If true, the facts alleged in the Third Amended Complaint would state valid causes of action against Cowan and Shutts & Bowen, LLP.

Cowan and Shutts & Bowen, LLP were up to their neck in this bid rigging conspiracy. They helped draft, revise and negotiate the illegal, criminal agreement.  They negotiated the agreement directly with the Botero Group.  They took actions specifically intended to keep the agreement and the presence of a second competitive bidder secret from the bankruptcy court and the trustees.  This is <u>not</u> a case where Shutts & Bowen, LLP simply gave a private legal opinion as to the transaction, then further refrained from any involvement.  Instead, Cowan and Shutts & Bowen, LLP were active participants in the anticompetitive behavior.  There is already smoking gun evidence against Cowan and Shutts & Bowen, LLP and full discovery has not yet even occurred.  Attorneys enjoy no immunity from illegal, criminal and tortious acts simply because they are attorneys.  They have committed per se violations of antitrust and other laws.  The Court

/ /

/ /

/ /

should not grant their effort to extricate themselves from the wasp's nest of liability of which they

created and willing participated.

       Dated this 3rd day of October, 2016:

Respectfully Submitted:

    **s/ Adam J. Breeden**

_____

| | |
|---|---|
| Adam J. Breeden, Esq. | Jerrold A. Wish, Esq. |
| Appearing Pro Hac Vice | Florida Bar # 352721 |
| Florida Bar # Pending | jwish@wishlaw.net |
| Adam@breedenandassociates.com | THE WISH LAW FIRM |
| BREEDEN & ASSOCIATES, PLLC | 1927 NW 104th Way |
| 1404 S. Jones Blvd. | Gainesville FL 32606 |
| Las Vegas, NV 89146 | Ph. 786-200-7077 |
| Ph. 702-508-9250 | *Attorneys for Plaintiffs* |
| Fax 702-508-9365 | |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Opposition to the Shutts & Bowen Defendants' Motion to Dismiss was served on October 3, 2016 on all counsel or parties of record on the service list through the Court's ECF system and via e-mail by consent.

Dated:  October 3, 2016

**s/ Adam J. Breeden**
_____

Adam J. Breeden, Esq.
Appearing Pro Hac Vice
Florida Bar # Pending
Adam@breedenandassociates.com
BREEDEN & ASSOCIATES, PLLC
1404 S. Jones Blvd.
Las Vegas, NV 89146
Ph. 702-508-9250
Fax 702-508-9365

Jerrold A. Wish, Esq.
Florida Bar # 352721
jwish@wishlaw.net
THE WISH LAW FIRM
1927 NW 104th Way
Gainesville FL 32606
Ph. 786-200-7077
*Attorneys for Plaintiffs*

**Case No.:  15-24176-CV-GAYLES**
SERVICE LIST

| | |
|---|---|
| Adam J. Breeden, Esq.<br>Adam@breedenandassociates.com<br>BREEDEN & ASSOCIATES, PLLC<br>1404 S. Jones Blvd.<br>Las Vegas, NV 89146<br>Ph. 702-508-9250<br>Fax 702-508-9365<br>*Co-Counsel for Plaintiffs* | Jerrold A. Wish, Esq.<br>jwish@wishlaw.net<br>THE WISH LAW FIRM<br>1927 NW 104th Way<br>Gainesville FL 32606<br>Ph. 786-200-7077<br>*Co-Counsel for Plaintiffs* |
| Kendall Coffey, Esq.<br>kcoffey@coffeyburlington.com<br>Kevin C. Kaplan, Esq.<br>kkaplan@coffeyburlington.com<br>Erika S. Handelson, Esq.<br>ehandelson@coffeyburlington.com<br>COFFEY BURLINGTON<br>2601 South Bayshore Drive, PH1<br>Miami, FL 33133<br>Tel:  305.858.2900<br>Fax:  305.858.5261<br>*Counsel for Shutts & Bowen, LLP and*<br>*Kevin Cowan* | Charles M. Tatelbaum, Esq.<br>cmt@trippscott.com<br>Edward Curtis, Esq.<br>erc@trippscott.com<br>Michael C. Foster, Esq.<br>mcf@trippscott.com<br>TRIPP SCOTT<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>Ph. 954-525-7500<br>Fax 954-761-5701<br>*Counsel for Steven C. Cronig* |
| Ronald L. Kammer, Esq.<br>rkammer@hinshawlaw.com<br>H. Steven Vogel, Esq.<br>svogel@hinshawlaw.com<br>HINSHAW & CULBERTSON, LLP<br>2525 Ponce de Leon Blvd., 4th Floor<br>Coral Gables, FL 33134<br>Ph. 305-358-7747<br>Fax 305-577-1063<br>*Counsel for Watson Investigations, LLC and*<br>*Francis Scola* | Thomas R. Lehman, Esq.<br>trl@lklsg.com<br>Victoria J. Wilson<br>vjwilson@lklsg.com<br>Levine Kellogg Lehman, et. al.<br>Miami Center, 22nd Floor<br>201 South Biscayne Blvd.<br>Miami, FL 33131<br>Ph. 305-403-8788 Fax 305-403-8789<br>*Counsel for Defendants*<br>*Alianza Financial Services, LLC,*<br>*Alianza Holdings, LLC and*<br>*Omar Botero* |
| Lawrence Goodman, Esq.<br>lgoodman@devinegoodman.com<br>DEVINE GOODMAN et. al.<br>2800 Ponce de Leon Boulevard, Suite 1400<br>Coral Gables, FL 33134<br>Ph. 305.374.8200<br>Fax 305.374.8208<br>*Counsel for JA Energy Resources, LLC and*<br>*Jorge Arevalo* | Albert Delaney<br>Delaneyal@att.net<br>45 Scarlet Woods Court<br>Spring, TX 77380<br>*Via E-mail outside the ECF system*<br>*per consent given on 3/14/2016* |