UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-cv-24176

JAWHBS LLC, a Florida limited liability
company,

      Plaintiff,

v.

JORGE AREVALO, an individual, *et al*.
      Defendants.
                                  /

## DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants, pursuant to Rule 12 of the Federal Rules of Civil Procedure, submit this Reply in support of their Joint Motion to Dismiss the Third Amended Complaint ("TAC"). The grounds supporting dismissal are set forth in the following memorandum of law[1].

### Introduction and Procedural History

On November 7, 2015 this action was commenced when the original Plaintiffs, JAWHBS LLC ("JAWHBS") and SLS Properties Three LLC ("SLS"), filed a Complaint against the multiple Defendants. [D.E. 1]. On January 25, 2016, the Plaintiffs filed a First Amended Complaint. Thereafter on June 6, 2016, the Plaintiffs filed their Second Amended Complaint. On August 4, 2016, this Court dismissed the First and Second Amended Complaints as to Plaintiff SLS Properties Three, LLC with prejudice in their entirety. [D.E. 176] (the "Dismissal Order")  The Court also dismissed the First and Second Amended Complaints as to Plaintiff JAWHBS with leave to file a TAC [D.E. 176]. The Dismissal Order states, in part:

---

[1] This Reply also should also be considered a Motion to Strike: (i) all of the references to facts outside of the four corners of the Third Amended Complaint as contained in the Opposition, in particular, to references to expert reports and opinions; and (ii) the exhibits attached to the Opposition.

1

> "Moreover, the Court has preliminarily reviewed the Second Amended Complaint and finds that it, too, suffers from the same shotgun-pleading deficiency as the First Amended Complaint. Thus, the Court will dismiss that complaint, as well, and will provide JAWHBS leave to file a **Third Amended Complaint that will hopefully correct the errors addressed** in this Order. (*Emphasis added*)
>
> As a final note, the Court found, in considering the arguments *vis-à-vis* each individual claim, that the Defendants raised several strong points that could potentially give rise to a dismissal of one or more of the causes of action under Rule (12)(b)(6) for failure to plead sufficient factual allegations. JAWHBS would do well to consider these points in drafting any amendment. [D.E. 176 at page 20]"

On August 25, 2016, Plaintiff JAWHBS filed its TAC [D.E. 189] attaching other materials as well. On September 14, 2016, the Defendants filed their Joint Motion to Dismiss the Third Amended Complaint (the "Motion to Dismiss") [D.E. 208] explaining why the TAC was legally insufficient, factually implausible and still an impermissible shotgun pleading. The Motion to Dismiss then addressed each individual count as well. On October 3, 2016, the Plaintiff filed its Opposition to the Joint Motion to Dismiss (the "Opposition") [D.E. 233].

### The Opposition Continues To Deny The Clear Fact That The Third Amended Complaint Is A Shotgun Pleading.

In an astounding lack of understanding of the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure, as further enunciated by the U.S. Supreme Court in *Iqbal v Ashcroft* (556 U.S. 662 (2009)), counsel for the Plaintiff stated in the Opposition:

> "The Court found the First and Second Amended Complaint to be shotgun pleadings and dismissed them. Plaintiff would request oral argument to obtain more guidance from the Court as to what was found deficient in those complaints if the same defects are found to exist in the Third Amended Complaint. Four counsel with likely 50 years of collective experience helped to evaluate those complaints and have been unable to determine exactly why they were dismissed." (Opposition, page 9)

Contrary to Plaintiff's professed confusion, the Dismissal Order made it clear that the Second Amended Complaint had multiple pleading infirmities which led to the dismissal. These infirmities have not been corrected in the TAC, which continues arbitrarily to "lump" groups or

2

categories of defendants together, and fails to enumerate or identify the alleged specific wrongs or breaches committed by the individual defendants. For the TAC to meet the basic requirements of fact pleading, it must set forth sufficient facts supporting a plausible cause of action against each of the defendants on an individual basis, and, in the case of a claim of conspiracy, plausible allegations of such conspiracy. It does not do so for the reasons clearly delineated in the Motion to Dismiss.  For example, the Opposition does not even attempt to justify JAWHBS's failure to specifically allege, as required, how the Defendants' individual actions amounted to a conspiracy, were wrongful, or in any way specifically damaged JAWHBS.  As the Opposition readily admits, not all of the Defendants were engaged in the same conduct at the same time, however by purporting the existence of so-called "groups" and vaguely alleging non-specific wrongdoing on the part of "the Defendants", Plaintiff once again engages in exactly the type of shotgun pleading condemned by every one of the cases it cites in the Opposition.  *Magluta v. Samples,*  256 F.3d 1282, 1284 (11th Cir. 2000) ("The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").(Opposition, page 9)[2]

**<u>The Opposition Improperly Relies On Facts Outside Of The Four
Corners Of The Complaint.</u>**

In an attempt to overcome the pleading deficiencies of the antitrust claims of the TAC, JAWHBS impermissibly[3] attaches an "opinion" to the Opposition from an auctioneer who is a purported expert as "evidence" to support the Plaintiff's allegations of wrongdoing by the

---

[2] The contradictions and incongruities caused by the Opposition's continuing references to the "Defendants" (see *Opposition*, page 3 and elsewhere) are obvious. For example, although it is undisputed that the so-called Watson Group had absolutely no involvements in drafting the alleged written agreement to pay "some Defendants" $1.2 million in exchange for not submitting their own bid, Watson is included within this designation. Moreover these negotiations never resulted in an agreement.

[3] *See Daubert v. Merrell Dow Pharmaceutical, Inc*., 509 U.S. 579 (1993), and Florida Statutes §§ 90.702, 90.704, and 90.705.

Defendants. As set forth in *Leedom Management Group v Perlmutter,* 2012 WL 503904 (M.D. Fla. Feb. 15, 2014), attaching so-called evidence to a response to a motion to dismiss is unacceptable, and, in fact, justifies the striking of the pleading. In *Leedom*, the defendant moved to strike an affidavit attached to the plaintiff's response to a motion to dismiss. The court granted the motion to strike, reciting the general rule that a court's analysis on a motion to dismiss is confined to the four corners of the complaint and attachments thereto. Additional cases apply the same reasoning. *Masacz v. Correctional Medical Services, Inc.*, 2009 WL 3232008 (S.D. Fla. Oct. 2, 2009); *Cradford's Auto Center, Inc. v. State Farm Mut. Automobile Ins. Co.*, 2016 WL 3144103 (M.D. Fla. June 6, 2016); *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346 (S.D. Fla. 2004). The Court should likewise strike the Opposition here.

**The TAC is Barred by the Doctrine of *Res Judicata* and the Statute of Limitations**

The Defendants, except Shutts & Bowen and Mr. Cowan, moved for dismissal on the basis of *res judicata* and all of the Defendants moved to dismiss because the claims are time barred. The moving Defendants did so relying upon the Court's finding in the Dismissal Order that two of the four elements required for dismissal based upon *res judicata* had been met, but that the remaining two had not. The Motion to Dismiss addressed why those factors had, in fact, been met. First, the Motion to Dismiss explained that the Defendants in this action were either parties or parties in interest in the bankruptcy proceeding. The Opposition does not dispute that the Defendants here were parties in interest, thus meeting the third element to establish *res judicata*. (Opposition, page 11). With respect to the fourth element, the Motion to Dismiss detailed why the claims raised by JAWHBS in this proceeding involve precisely the same facts and legal issues which were raised and adjudicated in the Bankruptcy Court. JAWHBS relies, inappositely, on *Kaiser Aerospace & Elec. Corp. v. Teledyne Indus.,* 244 F.3d 1289 (11th Cir. 2001.) That case actually supports dismissal here. In *Kaiser* the court observed:

4

> "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."

*Res judicata* did not apply in *Kaiser* because the bankruptcy court made no finding nor engaged in any express inquiry at the time of confirmation. (*Id* at 1238) That is not the case here as Judge Isicoff first stated that the sale to Crystal Tower on July 10, 2013, would be "problematic" based upon testimony presented at the July 10, 2013 hearing. (*See* Transcript, July 10, 2013 hearing, page 12) The Court then adjudicated those claims when Judge Isicoff made a finding of Watson's good faith in the Sale Order [*See,* Sale Order page 7]. Second, the claims in *Kaiser* did not arise out of the same factual predicate as the facts initially giving rise to the bankruptcy proceeding related primarily to the financial collapse of Piper and did not involve the Kaiser–Teledyne relationship at all. *Id* at 1239.  Accordingly, because all of the elements for *res judicata* are present, the TAC should be dismissed.[4]

### The Anti-Trust and FDUPTA Claims Are Not Properly Pled

JAWHBS relies on a single case to argue that its case survives the withdrawal of Crystal Towers' bid. *In re: Am. Paper Mills of Vt., Inc,* 322 B.R. 84, 94 (Bankr. D. Vt. 2004). (Opposition, page 14-15). However, *Am. Paper Mills* was: (i) decided prior to *Iqbal,* which requires JAWHBS to state a claim to relief that is *plausible on its face*; (ii) is not followed in this Circuit; and (iii) is distinguishable on its facts; because the defendants in *Am. Paper Mills* knew of the agreements to control the bidding during an auction process and failed to disclose them to the Court. Moreover, the Court in *Am. Paper Mills* only ruled that the Committee of Unsecured Creditors appointed in the bankruptcy case had authority to commence an action under 11 U.S.C. § 363(n) against an initial bidder who withdrew its bid. In overruling the initial bidder's

---

[4] In the Dismissal Order the Court did not address the Statute of Limitations issue.  For the reasons set forth in the Motion to Dismiss, the Defendants request the Court to dismiss the TAC on this basis as well.

objection to the Committee's request to bring suit, the *Am Paper Mills* Court only made an initial determination that the allegations contained in the Committee's proposed complaint would likely survive a Rule 12(b)(6) motion. However, the Court specifically reserved determination of the merits of the complaint to be filed by the Committee, undercut its Rule 12(b)(6) dicta by conditioning payment of the Committee's legal fees on a recovery from the Section 363(n) action and pointedly observed, "that the Committee is sailing into relatively unchartered waters in pursuing this action which names defendants who were not successful bidders, which does not seek to set aside the Sale Order, and which requires a showing that the sale price of a difficult-to-evaluate asset was less than fair market value." *Am. Paper Mills,* 322 B.R. 94 n.6. Further, the subsequent bidder in that case (like the so-called Watson Group and Mr. Scola here) was not even proposed to be sued by the Committee in that case.

The Opposition has conceded that there is no cause of action under Florida law for "failure to lend" and in fact, Florida law specifically prohibits such a cause of action[5]. The Opposition then tries to salvage its cause of action against the so-called Watson Group by claiming that this is "more" than a failure to lend case. (Opposition, pages 16-17)  JAWHBS is wrong. To be clear, the only thing alleged in the TAC was this: "in an attempt to secure financing, the [so-called] Arevalo Group contacted persons associated with the [so-called] Watson Group (*Id.* ¶58) and, rather than agreeing to finance the Arevalo Group's purchase, the [so-called] Watson Group 'sabotaged' the Arevalo bid by 'pulling out of or refusing to fund the Arevalo Group'." (*Id.* ¶59)  Indeed, there are no allegations that Watson committed to extend such financing, only that Mr. Arevalo "*consulted*" Mr. Scola.

The Opposition now concedes, as it must, that the mere failure to lend does not state a cause of action. JAWHBS claims that Mr. Cronig "sabotaged" Mr. Arevelo's bid by making

---

[5] Florida Statutes §687.0304.

allegedly "false" statements, without identifying what was said, to whom those statements were made, and, most importantly, as a direct result of such statements, that Mr. Arevelo was unable to secure financing from anyone else in Miami or elsewhere. The Opposition's baldly conclusory allegations of "false statements" and "sabotage", without more, simply do not support a cause of action. *Nezelek, Inc. v. Sun Beam Television Corp.*, 413 So. 2d 51 (Fla. 3d 1982) (in the context of defamation, to survive dismissal the plaintiff must set out the substance of the spoken words with sufficient particularity to enable the court to determine if the statements were false). Nor are these allegations sufficient to establish that Mr. Cronig "interfered" with Mr. Arevelo's $22 million contemplated offer for two distinct reasons. First, the TAC does not allege any facts showing that Mr. Cronig's alleged statements to a person who is not even identified in the TAC actually impaired Mr. Arevelo's ability to solicit a loan from that person (or anyone else), let alone a loan for $22 million from a person with whom Mr. Arevelo had no prior business relationship.[6] *See McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 398 (Fla. 1st DCA 1992) (dismissing tortious interference claim where "[i]t is not alleged that Davis' brother was induced by M-G or Green to breach the agreement with Davis"); *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988) (dismissing tortious interference claim because "subject complaint [did] not allege any facts to demonstrate that the business relationship between Register and the other eleven members of the Association afforded Register any legal rights that have been substantively damaged due to Hvide's alleged conduct").

Second, the TAC does not set forth any plausible basis to believe that Mr. Arevalo, within the three day window available to make the bid, had the ability to obtain a $22,000,000 loan commitment (100% of his bid) or otherwise to consummate a bid which would require the

---

[6] The fact that JAWHBS's claims hinge on Mr. Arevelo's obtaining $22 million in new financing in a few days conclusively demonstrates why the entire TAC is simply not plausible on its face and should be dismissed. See *Jerry Wolman v Leonard Tose,* 467 F 2d 29 (4th Cir. 1972).

7

immediate posting of at least $22 million in cash. *See Nodal-Tarafa v. ARDC Corp.*, 579 So. 2d 414, 414 (Fla. 3d DCA 1991) (affirming dismissal of tortious interference claim where "plaintiff was unable to state any operative facts in the amended complaint detailing the specific acts the defendant . . . allegedly committed which caused plaintiff to be discharged"). These omissions are fatal to JAWHBS' Anti-Trust and FDUPTA claims.

### The Claim Under 11 USC § 363(n) Fails to State a Cause of Action

Recognizing that, in order to state a claim under 363(n), JAWHBS must allege the so-called Watson Group entered into an actual agreement with *another bidder* to control the sale price of the Brickell Parcels, JAWHBS instead returns to its vague allegations of "sabotage" discussed above. Simply stated, the allegations of "sabotage" are insufficient as a matter of law to establish a 363(n) claim as, indeed, "sabotage" is the antithesis of an agreement between two parties, such as the so-called Watson Group and any other Defendant, including Mr. Arevalo, to control the sales price.[7] This is fatal to JAWHBS's 363(n) claim as the case cited by JAWHBS clearly establishes. (Opposition, page 19) *In re Sunnyside Timber,* LLC, 413 B.R. 352, 363 (Bankr. W.D. La. 2009) Section 363(n) only applies when the existence of an agreement, the intended objective of which is to control the sale price, is proved. It does not apply when an agreement only has the unintended consequence of affecting the sale price. Without JAWHBS alleging plausible facts demonstrating the existence of an agreement among the so-called Watson Group and *another* bidder to control the sale price, no cause of action has been stated under 11 USC § 363(n).

### The Civil Conspiracy Claim Fails to Allege a Cause of Action

The Opposition claims the TAC goes to great lengths to describe the agreement and acts of the Defendants to conspire with one another by referring to the common allegations at

---

[7] It should be noted that there is no cause of action in Florida for "sabotage".

Paragraphs 41-64 (Opposition, page 21). JAWHBS simply is wrong. The TAC falls far short of the heightened pleading required in conspiracy cases. See *Griswold v. Alabama Dep't of Indus. Relations*, 903 F. Supp. 1492, 1500-1501 (M.D. Ala. 1995); *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). Nowhere in the general allegations of the TAC does JAWHBS allege any agreement between the so-called Watson Group or Mr. Scola and any other party to do any unlawful or overt act to further a conspiracy and there are, of course, no specific allegations. As noted above, this is not surprising since the TAC's allegations clearly admit that the so-called Watson Group and Mr. Scola were not even contacted by Mr. Arevalo until July 10, 2013, well after the purported agreement (which was never consummated in any event) to pay "some Defendants" $1.2 million in exchange for not submitting their own bid was proposed. After being contacted by Mr. Arevalo, the so-called Watson Group simply chose not to lend him money, which was neither unlawful or an act in furtherance of the alleged conspiracy. As to the other Defendants, the TAC states no plausible evidence that they entered into any agreement to "bid-rig" and even if they had, the bid was withdrawn.

### **The Tortious Interference Claim Fails to Allege a Cause of Action**

JAWHBS places great reliance on *Walters v. Blankenship*, 931 So. 2d 137 (Fla. 5th DCA 2006) to try and establish a claim for tortious interference and asserts the Defendants offer no reason why *Walters* does not apply. Opposition, page 22. There is a very good reason – the facts in the two cases are entirely different. In *Walters,* the plaintiffs were selling four condominium units by auction. Prospective purchasers were required to post a substantial bond prior to bidding. The *Walters* court found the existence of a pre-existing business relationship among the plaintiffs and those 20 bidders. On the day of the auction, by pre-arrangement and with the professed purpose of injuring the Walters, the defendants, other owners in the same condominium, placed "for sale by owner" signs in front of their respective units. (*Id* at 139) The

9

*Walters* court did not rule on liability, but instead remanded the case to the trial court to adjudicate the Walters's claims for tortious interference and emotional distress, based on the defendants "intentional, spiteful, malicious and non-privileged acts". In *Walters*, the interference was not "to the community at large" as it was in *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla. 1994), but with those 20 bidders who posted a bond.

The TAC alleges that "The sale of the Brickell Parcels was open for offers from within the State of Florida, from interstate bidders or even international bidders." (TAC, ¶38) The TAC, unlike the complaint in *Walters*, does not allege or identify any particular bidder that in all probability would have been successful but for the Defendants' interference. See, *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.* 946 F. Supp.2d 1321, 1339 (S.D. Fla. 2013) (distinguishing *Walters* and dismissing a claim for tortious interference where the complaint did not allege that the agreements in *all probability* would have been completed if the defendants had not interfered, and therefore failed to allege a protected business relationship.) (Emphasis in the original). Rather, the TAC alleges "the Defendants" tortiously interfered with the "community at large" to bid on the Brickell Parcels, a clear impossibility.

## Conclusion

For the reasons set forth in the Motion to Dismiss and this Reply, the Defendants respectfully request this Court enter an order dismissing the TAC with prejudice as it fails to allege with particularity sufficient factual allegations against each Defendant to form a plausible basis that the particular Defendant was involved in the actions alleged.

Respectfully submitted,

| | |
|---|---|
| Ronald L. Kammer, Esq.<br>rkammer@hinshawlaw.com<br>H. Steven Vogel, Esq.<br>svogel@hinshawlaw.com<br>HINSHAW & CULBERTSON LLP<br>2525 Ponce de Leon Boulevard, 4th Floor<br>Coral Gables, FL 33134<br>*/s/ H. Steven Vogel*<br>Florida Bar No. 432784<br>*Counsel for Watson Investigations, LLC and Francis H. Scola, III* | Thomas Ralph Lehman, Esq.<br>trl@lklsg.com<br>LEVINE KELLOGG LEHMAN SCHNEIDER GROSSMAN LLP<br>201 S. Biscayne Boulevard<br>The Miami Center<br>22nd Floor<br>Miami, Florida 33131<br>*/s/ Thomas Ralph Lehman*<br>Florida Bar No. 351318<br>*Counsel for Omar Botero* |
| Kendall Coffey, Esq.<br>kcoffey@coffeyburlington.com<br>Kevin C. Kaplan, Esq.<br>kkaplan@coffeyburlington.com<br>COFFEY BURLINGTON<br>2601 South Bayshore Drive, PH1<br>Miami, FL 33133<br>*/s/ Kevin C. Kaplan*<br>Florida Bar No. 33848<br>*Counsel for Shutts & Bowen, LLP and Kevin Cowan* | Charles M. Tatelbaum, Esq.<br>cmt@trippscott.com<br>Edward Curtis, Esq.<br>erc@trippscott.com<br>Michael C. Foster, Esq.<br>mcf@trippscott.com<br>TRIPP SCOTT<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>*/s/ Charles M. Tatelbaum*<br>Florida Bar No. 177540<br>*Counsel for Steven C. Cronig* |
| Lawrence Goodman, Esq.<br>lgoodman@devinegoodman.com<br>DEVINE GOODMAN et. al.<br>2800 Ponce de Leon Boulevard, Suite 1400<br>Coral Gables, FL 33134<br>*/s/ Lawrence Goodman*<br>Florida Bar No. 712647<br>*Counsel for JA Energy Resources, LLC and Jorge Arevalo* | Albert F. Delaney<br>45 Scarlet Woods Court, Suite 1102<br>Spring, TX 77380<br><br>*/s/ Albert F. Delaney*<br>*Defendant* |

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 19th day of October 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic filing.

*s/ H. Steven Vogel*

Miami1 15293885v2 0981354

**SERVICE LIST**

| | |
|---|---|
| Adam J. Breeden, Esq.<br>Adam@breedenandassociates.com<br>BREEDEN & ASSOCIATES, PLLC<br>1404 S. Jones Blvd.<br>Las Vegas, NV 89146<br>Ph. 702-508-9250<br>Fax 702-508-9365<br>*Co-Counsel for Plaintiffs* | Jerrold A. Wish, Esq.<br>jwish@wishlaw.net<br>THE WISH LAW FIRM<br>1927 NW 104th Way<br>Gainesville, FL 32606<br>Ph.786-200-7077<br>*Co-Counsel for Plaintiffs* |
| Kendall Coffey, Esq.<br>kcoffey@coffeyburlington.com<br>Kevin C. Kaplan, Esq.<br>kkaplan@coffeyburlington.com<br>COFFEY BURLINGTON<br>2601 South Bayshore Drive, PH1<br>Miami, FL 33133<br>Tel: 305.858.2900<br>Fax: 305.858.5261<br>*Counsel for Shutts & Bowen, LLP and Kevin Cowan* | Charles M. Tatelbaum, Esq.<br>cmt@trippscott.com<br>Edward Curtis, Esq.<br>erc@trippscott.com<br>Michael C. Foster, Esq.<br>mcf@trippscott.com<br>TRIPP SCOTT<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>Ph. 954-525-7500<br>Fax 954-761-7500<br>*Counsel for Steven C. Cronig* |
| Al Delaney<br>45 Scarlet Woods Court, Suite 1102<br>Spring, TX 77380<br><br>*Pro Se Defendant* | |
| Lawrence Goodman, Esq.<br>lgoodman@devinegoodman.com<br>DEVINE GOODMAN et. al.<br>2800 Ponce de Leon Boulevard, Suite 1400<br>Coral Gables, FL 33134<br>Ph. 305.374.8200<br>Fax 305.374.8208<br>*Counsel for JA Energy Resources, LLC and Jorge Arevalo* | |

Miami1 15293885v2 0981354