UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-24176-GAYLES

JAWHBS, LLC,
           Plaintiff,

v.

JORGE E. AREVALO, et al.,
           Defendants.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on the Motion to Disqualify Counsel for Plaintiff filed by Defendants Omar Botero; Alianza Financial Services, LLC; and Alianza Holdings, LLC (collectively, the "Alianza Defendants") [ECF No. 216]. The Alianza Defendants seek to disqualify counsel for the Plaintiff—Adam Breeden; Breeden & Associates, PLLC; Jerrold Wish; and the Wish Law Firm (collectively, "Plaintiff's Counsel")—on the grounds that Plaintiff's Counsel used an unfair tactical advantage gained from reading documents (produced to all counsel in this litigation by another Defendant) that allegedly contain privileged communications between the Alianza Defendants and their former counsel.

The Court has carefully considered the briefs and arguments of counsel, the exhibits and testimony submitted, the record, and the applicable law and is otherwise fully advised in the premises. For the reasons that follow, the motion to disqualify shall be denied.

**I.    BACKGROUND**

Plaintiff JAWHBS, LLC, has sued the Defendants, developers and their legal counsel, bringing antitrust and other claims arising from allegations that the Defendants colluded and participated in a bid-rigging scheme to acquire parcels of land in the Brickell Avenue section of

1

Miami, Florida, at a depressed price during a bankruptcy auction and sale. Given that the Court has already given a detailed account of the factual allegations and legal claims asserted in this case in its previous order on the Defendants' motions to dismiss, *see JAWHBS, LLC v. Arevalo*, No. 15-24176, 2016 WL 4142498, at *1-3 (S.D. Fla. Aug. 4, 2016), its recitation today will be limited to the circumstances giving rise to the instant motion.

A brief overview of the relationships between and among the Alianza Defendants is instructive. Defendant Alianza Holdings, LLC ("Alianza Holdings"), wholly owns Defendant Alianza Financial Services, LLC ("Alianza Financial"). Defendant Omar Botero is the co-manager of Alianza Financial and the CEO of Alianza Holdings. Alianza Holdings owns 99% and Alianza Financial owns 1% of a company called Crystal Tower Partners II, LLC, which, in turn, owned 49.5% of a now-defunct company called Crystal Tower on Brickell Plaza, LLC ("Crystal Tower").[1] Pl.'s Counsel's Ex. 1. Crystal Tower was specially created to purchase the parcels of land at issue (a purchase that ultimately did not take place). Crystal Tower, through Botero, retained the law firm of Carlton Fields, P.A. ("Carlton Fields"), to represent it in its negotiations with the bankruptcy trustee to purchase the parcels of land; the engagement letter detailing the parameters of that representation was signed by Botero in his capacity as manager and CEO of Crystal Tower. Defs.' Ex. 5.

Defendant Al Delaney, who appears *pro se* in this action, was also involved in these negotiations, although his role and the extent of his involvement are disputed by the litigants. Delaney is a former attorney who was previously licensed in Connecticut and Massachusetts. The Alianza Defendants describe Delaney as "an independent contractor for Alianza Financial . . . [who] is neither an owner nor a manager of Crystal Tower or Alianza Financial." Defs.' Mot. at 3. By contrast, Plaintiff's Counsel has proffered emails from the relevant time period in which Delaney

---

[1] Crystal Tower dissolved on September 26, 2014. Pl.'s Counsel's Ex. 9.

described himself as a "Mgr."—*i.e.*, Manager—or Chief Operating Officer of Alianza Financial. *See* Pl.'s Counsel's Ex. 2; Pl.'s Counsel's Supp. Ex. 1.

On March 19, 2016, Delaney made his initial disclosures in this action pursuant to Federal Rule of Civil Procedure 26(a). He first produced to all counsel a document titled "Rule 26 Disclosures by Albert Delaney." Pl.'s Counsel's Ex. 3. Within that document, he identified sixteen categories of documents he intended to produce, with many categories explicitly relating to Crystal Tower's offer to buy the property at issue. One of the listed categories of documents—Category O—read, "Invoices for legal services tendered by Carlton Fields, PA (as they were known then)." *Id.* at 5. At the time these documents were produced, the Alianza Defendants were represented by attorneys from two different firms—Ian Martinez of Bello & Martinez, PLLC, and Andrew Kawel and Edward Maldonado of Kawel, PLLC.[2] These attorneys did not object to Delaney's production of this document.

On April 11, 2016, Delaney sent the following email to Plaintiff's Counsel (specifically, Adam Breeden), copying all other counsel:

> Atty. Breeden;
> Please be advised that today I sent you and all other attorneys of record all documents cited in my Rule 26 initial discovery sent out last week electronically. The Bates stamped documents are contained on a CD-ROM, one for each attorney.
> Al Delaney
> [phone number]
> Pro Se

Pl.'s Counsel's Ex. 4. He then provided 169 pages of Bates-stamped documents to all counsel as he described. Included in this production was a set of billing records prepared by Carlton Fields (stamped DELANEY_000115 through DELANEY_000169).[3] These billing records, the Alianza

---

[2] The attorneys jointly filed a Motion to Withdraw as Counsel on June 26, 2016 [ECF No. 148], which the Court granted on July 11th [ECF No. 163]. Attorney Thomas Lehman then filed a Notice of Appearance on behalf of the Alianza Defendants on August 5th [ECF No. 179].

[3] The billing records were provided to the Court under seal for the Court's *in camera* review.

Defendants now contend, "include extensive details about Carlton Fields' representation of Botero and Crystal Tower." Defs.' Mot. at 3. But at the time, then-counsel to the Alianza Defendants again raised no objection to Delaney's production.

Delaney's deposition was noticed and set for July 25, 2016, in Houston, Texas. Breeden sent several emails to Botero in advance of the deposition. One email, sent to Botero and all counsel of record, contained a link to download the exhibits for the deposition—including the now-contested billing records. Pl.'s Counsel's Ex. 10.

Delaney appeared at his deposition represented by counsel. While attorneys for the other parties were also present, Botero—who at that time was without representation—was not. During the deposition, Breeden asked Delaney what counsel at Carlton Fields told him regarding the legality of the negotiations between Crystal Tower and the bankruptcy trustee. Delaney's counsel objected, asserting that the matter was subject to attorney-client privilege. Delaney affirmatively waived his privilege on the record and Breeden continued with his questioning. No other counsel in attendance objected to the billing records or related questioning.

Botero's deposition was held on August 3, 2016. At the deposition, Breeden distributed a book of marked exhibits, which included the disputed billing records, to all in attendance. When Breeden sought to ask questions about or based on the billing records, the Alianza Defendants' present counsel, Thomas Lehman, objected and asserted attorney-client privilege on Botero's behalf. Botero stated that he did not waive the attorney-client privilege with respect to the billing records, after which Breeden continued with his questioning about their substance. The Alianza Defendants contend that they learned after Botero's deposition that Breeden had previously introduced and inquired into the substance of the billing records at Delaney's deposition.

The Alianza Defendants filed the instant motion to disqualify Plaintiff's Counsel on September 19, 2016. They argue that Plaintiff's Counsel "has taken unfair advantage of the inadvertent

4

and unauthorized disclosure of privileged documents." Defs.' Mot. at 6. The motion has been fully briefed, and the Court held an evidentiary hearing on the motion on November 9, 2016.

## II. LEGAL STANDARD

"Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (quoting *Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992)). Thus, courts consider disqualification of a party's chosen counsel to be "a drastic remedy that should be resorted to sparingly." *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010); *see also Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, 961 F. Supp. 1580, 1582 (M.D. Fla. 1997) (stating that "courts should hesitate to impose" orders for disqualification "except when absolutely necessary"). The moving party bears the burden of proving grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d at 961.

## III. DISCUSSION

The Alianza Defendants' asserted grounds for disqualification is Plaintiff's Counsel's receipt of privileged documents from Delaney, in the form of the Carlton Fields billing records. "The receipt of an inadvertent disclosure warrants disqualification when the movant establishes that: (1) the inadvertently disclosed information is protected, either by privilege or confidentiality; and (2) there is a 'possibility' that the receiving party has obtained an 'unfair' 'informational advantage' as a result of the inadvertent disclosure." *Moriber v. Dreiling*, 95 So. 3d 449, 454 (Fla. 3d DCA 2012) (quoting *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Décor, Inc.*, 724 So. 2d 572 (Fla. 3d DCA 1998) ("*Abamar II*")); *see also Atlas Air, Inc. v. Greenberg Traurig, P.A.*, 997 So. 2d 1117 (Fla. 3d DCA 2008); *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Décor, Inc.*, 698 So. 2d 276 (Fla. 3d DCA 1997) ("*Abamar I*").

Before the Court need delve into the substance of the parties' arguments regarding privi-

5

lege, waiver of or exceptions to any privilege, or any possibility of unfair informational advantage, it must first address a threshold matter that the Alianza Defendants seem to presume has been satisfied here. For a movant seeking disqualification of counsel to prevail, he must, at the outset, prove that the disclosure of documents was **inadvertent**. *See Moriber*, 95 So. 3d at 454 (discussing "the receipt of an **inadvertent** disclosure" and "the **inadvertently** disclosed information" (emphases added)); *Atlas Air*, 997 So. 2d at 1118 (Rothenberg, J., concurring) ("[I]t is so difficult to measure how much of an advantage, if any, was obtained due to the **inadvertent** disclosure of privileged documents . . . ." (emphasis added)); *Abamar II*, 724 So. 2d at 574 ("This case demonstrates the effects of the **inadvertent** disclosure, the plaintiffs' recalcitrance in rectifying the disclosure, and the unfair tactical advantage gained from such disclosure." (emphasis added)); *Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp.*, 483 So. 2d 505, 506 (Fla. 4th DCA 1986) (disqualifying counsel because it "had acquired an unfair advantage by virtue of the **inadvertent** disclosure of . . . certain privileged documents" (emphasis added)).

"Inadvertent" has been defined as "not focusing the mind on a matter . . . ; unintentional,"[4] and as "[a]n accidental oversight; a result of carelessness."[5] Manifestations of these definitions are apparent in several Florida appellate decisions ruling on similar motions to disqualify. First, in *Abamar I*, counsel for one party produced seventy boxes containing over one-hundred thousand documents, and it was later discovered that two files containing twenty-three privileged documents that had not been listed on the privilege log were included among the produced documents. Second, in *General Accident Insurance Co.*, an insurance company submitted a claim file to the court for in camera review in connection with a request for a protective order, but the judge inadvertently forwarded the file to counsel for the insured. 483 So. 2d at 505. Third, in *Atlas Air*, a third-party

---

[4] "Inadvertent," *Merriam-Webster* (2016), https://www.merriam-webster.com/dictionary/inadvertent.

[5] "Inadvertence," *Black's Law Dictionary* (10th ed. 2014).

6

contractor retained by the parties to copy and produce agreed-upon documents to be produced to the defendant inadvertently commingled two boxes of the plaintiff's privileged documents before sending a computer disc containing the documents to defendant's counsel. 997 So. 2d at 1119 (Rothenberg, J., concurring). And fourth, in *Moriber*, an assistant to one party's counsel intended to attach an electronic copy of a motion for summary judgment to an email to opposing counsel, but instead inadvertently attached a confidential mediation statement. 95 So. 3d at 451.

While none of these cases explicitly hold that the ***inadvertence*** of the disclosure is a separate element that must be proven to warrant disqualification, this Court finds that it must be treated as such.[6] The Alianza Defendants cannot presume this element is satisfied simply because Plaintiff's Counsel received documents that the Alianza Defendants claim are privileged. To the contrary, the Court must consider the actual factual circumstances of the challenged disclosure to determine whether the Alianza Defendants have ***affirmatively proven*** that the disclosure was inadvertent.[7]

Upon consideration of the circumstances at issue, it is clear the Alianza Defendants have not carried their burden. Delaney, a former attorney, intentionally identified the billing records as a category of documents he intended to produce pursuant to Rule 26(a). He intentionally Bates stamped the billing records along with his other documents and included them with his production. And he intentionally sent those Bates-stamped billing records—a significant portion of the document production (nearly one-third of the 169 pages he produced)—to all counsel of record in this

---

[6] The Court declines to adopt the Alianza Defendants' characterization that "[u]nder Florida law, the receipt of an inadvertent ***or unauthorized*** disclosure warrants disqualification." Defs.' Reply at 7 (emphasis added). The standard governing disqualification of counsel based on the receipt of privileged documents, as applied by a number of Florida appellate courts, contemplates ***inadvertent*** disclosures only. The Court will not read an additional, lower standard into Florida law that would permit disqualification based on receipt of a mere "unauthorized" disclosure, and the Alianza Defendants have given the Court neither reason nor justification to do so. *See Brenmar Holdings, LLC v. Regions Bank, N.A.*, No. 15-23755, 2016 WL 4270206, at *3 (S.D. Fla. Aug. 15, 2016) ("This Court is not in the business of indiscriminately creating Florida law where none exists, based solely on a party's unsupported assertions."). Even so, the Court cannot find under the circumstances that Delaney's disclosure was clearly unauthorized or that Plaintiff's Counsel should have known that.

[7] Notably, the Alianza Defendants in their Reply elected not to respond to Plaintiff's Counsel's argument on this point.

7

case. None of these actions can be characterized as "unintentional," "accidental," or "careless," nor can it reasonably be said that Delaney had not focused his mind on the matter at hand—*i.e.*, ostensibly to fulfill his Rule 26(a) responsibility to make an initial disclosure—when producing the billing records to counsel for all parties. At bottom, these circumstances are unlike those found in any of the inadvertent-disclosure cases detailed above: the billing records are the documents Delaney intended to produce, and the billing records are the documents he did, in fact, produce.

Accordingly, the Court finds that the Alianza Defendants have failed to prove that Delaney's disclosure of the Carlton Fields billing records was inadvertent.[8] Because this threshold requirement has not been satisfied, it necessarily follows that the Alianza Defendants have failed to give this Court the "compelling reasons" required to override the Plaintiff's choice of counsel, *In re BellSouth Corp.*, 334 F.3d at 961 (internal citation omitted), and resort to the "drastic remedy," *Armor Screen Corp.*, 709 F. Supp. 2d at 1310, of disqualifying Plaintiff's Counsel from its representation of the Plaintiff in this matter.[9] It is therefore

**ORDERED AND ADJUDGED** that the Motion to Disqualify Counsel for Plaintiff [ECF No. 216] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of December, 2016.

                                                        DARRIN P. GAYLES
                                                        UNITED STATES DISTRICT JUDGE

---

[8] In reaching this conclusion for purposes of the motion to disqualify, the Court makes no findings as to whether Delaney was actually authorized to disclose the billing records; who does or does not have standing to assert any privilege; whether the billing records are privileged; or, if the billing records *are* privileged, whether any privilege was waived as a result of Delaney's disclosure.

[9] As this conclusion is dispositive of the motion, the Court need not consider any of the Alianza Defendants' remaining arguments.