UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-24176-GAYLES/Turnoff

JAWHBS LLC, a Florida limited liability
company, and SLS PROPERTIES THREE,
LLC, a Nevada limited liability company,

      Plaintiffs,

vs.

JORGE E. AREVALO, an individual;
JA ENERGY RESOURCES, LLC, a Florida
limited liability company; SHUTTS &
BOWEN, LLP, a Florida limited liability
partnership; KEVIN D. COWAN, an
individual; OMAR BOTERO a/k/a OMAR
BOTERO-PARAMO, an individual;
ALIANZA FINANCIAL SERVICES, LLC, a
Florida limited liability company; ALIANZA
HOLDINGS, LLC, a Florida limited liability
company; ALBERT F. DELANEY aka AL
DELANEY, an individual; CRYSTAL
TOWER PARTNERS II, LLC, a Florida
limited liability company; CRYSTAL TOWER
ON BRICKELL PLAZA, LLC, a Florida
limited liability company; WATSON
INVESTIGATIONS, LLC, a Florida limited
liability company; STEVEN CARLYLE
CRONIG, an individual,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon a discovery dispute regarding the application of the

crime-fraud exception to the attorney-client privilege. This matter was referred to the undersigned

by the Honorable Darrin P. Gayles, United States District Court Judge for the Southern District of

Florida. (ECF No. 79). The parties appeared before the undersigned on October 20, 2016, for discovery calendar on Plaintiffs' Notice of Hearing. (ECF No. 247).

At the discovery hearing, Plaintiff JAWHBS, LLC, sought to compel the production of certain communications between Defendants Arevalo and Shutts & Bowen/Kevin Cowan that had been withheld from production under the attorney client privilege.[1] At issue are 32 email exchanges that have been listed on a privilege log by Defendant Arevalo. They can be classified into three groups: emails dated July 2013; emails pre-dating July 2013; and emails post-dating July 2013. Plaintiff argued that the crime-fraud exception applied to penetrate the privilege and that, in some instances, information had been redacted that was not privileged but merely damaging, non-privileged material, such as factual material.

The undersigned noted problems with resolving the ultimate issue of the applicability of the crime/fraud exception, because those issues were pending in motions to dismiss before Judge Gayles. Because the privilege issue was intertwined with the merits of the case, the undersigned ordered the parties to provide supplemental briefing. (ECF No. 248). In this connection, Plaintiff filed a Motion to Compel Discovery of Alleged Attorney-Client Privileged Documents. (ECF No. 249). Defendants JA Energy Resources, LLC, and Jorge Arevalo filed a Response (ECF No. 269), as did Defendants Shutts & Bowen, LLP, and Kevin D. Cowan (ECF No. 270). Plaintiff filed a Reply. (ECF No. 272).

Plaintiff argued that, because Defendant Arevalo had used his legal counsel to advise him and draft documents regarding a bid-rigging payoff agreement that was *per se* illegal under the Sherman Act, no privilege could apply to protect from disclosure those emails listed on the privilege

---

[1] Defendant Arevalo was represented by Defendant attorney Kevin Cowan, Esq., of Defendant law firm Shutts & Bowen, LLP.

log. In connection therewith, Plaintiff requested an *in camera* inspection of the withheld discovery. According to Plaintiff, the documents that hade been produced thus far showed that, on behalf of Arevalo, attorney Cowan had been heavily involved in the negotiations of the bid-rigging and payoff proposal, knew of the illegal agreement, and affirmatively had worked to further it and conceal it from the Trustees and the bankruptcy court.

## Attorney-Client Privilege and the Crime/Fraud Exception

This court's jurisdiction is grounded in federal question. As such, federal law regarding application of the attorney-client privilege governs this case. Fed. R. Evid.  501; see also Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992) ("We therefore hold that the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question....").

"The purpose of the attorney-client privilege is to promote freedom of consultation between client and lawyer by eliminating the fear of subsequent compelled legal disclosure of confidential communications." United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987). However, "it is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose." Id. The party invoking the privilege bears the burden of proving its applicability. Hickman v. Taylor, 329 U.S. 495, 510-12, 67 S. Ct. 385, 91 L.Ed.2d 451 (1947); MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 584 (S.D. Fla. 2013); United States v. Sigman, 11-80155-CR, 2013 WL 5890714, *4 (S.D. Fla. Nov. 4, 2013) (internal citations omitted).

"The attorney-client privilege attaches only to communications made in confidence to an attorney by that attorney's client for the purposes of securing legal advice or assistance." In re Grand

Jury Investigation (Schroeder), 842 F.2d 1223, 1225 (11th Cir. 1987) (citing United States v. White, 617 F.2d 1131, 1135 (5th Cir. 1980)5). Importantly, the privilege protects communications–not facts. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). However, the privilege "does not protect communications made in furtherance of a crime or fraud." Schroeder, 842 F.2d at 1226. Thus, a "client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." In re Campbell, 248 B.R. 435, 439 (Bankr. M.D. Fla. 2000) (quoting Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933)). In this connection, the application of the crime-fraud exception is primarily controlled by the client's intent–it is unnecessary to show that the attorney had actual or constructive knowledge of the crime. United States v. Soudan, 812 F.2d 920, 927 (5th Cir. 1986). Thus, the exception applies even where the attorney is unaware that his advice is sought in furtherance of an improper purpose. In Re Grand Jury Proceedings (Pavilack), 517 F.2d 666 (5th Cir. 1975); United States v. Friedman, 445 F.2d 1076, 1086 (9th Cir. 1971); Clark, 289 U.S. at 15, 53 S.Ct. at 469.

### Crime/Fraud Exception

The application of the crime/fraud exception is guided by a two-part test, as set forth in Schroeder, 842 F.2d at 1226:

> First, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

The *prima facie* standard "is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." Id. at 1226. "Such a showing must have a foundation in fact, and cannot rest upon mere allegation."

Gutter v. E.I. Dupont De Nemours, 124 F.Supp.2d 1291, 1299 (S.D. Fla. 2000) (citing Schroeder, 842 F.2d at 1226). Upon these showings, the burden of persuasion shifts to the party invoking the privilege to provide a reasonable explanation of the conduct or communication to rebut the *prima facie* showing. Gutter, 124 F.Supp.2d at 1307. If the court accepts such explanation, the privilege remains. Id. If the court finds the explanation insufficient to rebut the *prima facie* case, then the privilege is lost. Id. "In order to carry its burden of persuasion, the party seeking to invoke the privilege has to show by a preponderance of the evidence that the *prima facie* showing that the crime/fraud exception applies should not be accepted." Id.

Consistent therewith, in determining the applicability of the crime/fraud exception, the Court may engage in an *in camera* review. United States v. Zolin, 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Before doing so, "'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. (citations omitted). Ultimately, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." Id. In so doing, the court should consider "the facts and circumstances of the particular case, including, *inter alia*, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." Id.

In this case, as noted, the issue of privilege is inextricably intertwined with the merits. Plaintiff's complaint alleged that Defendants engaged in illegal bid-rigging in *per se* violation of the

Sherman Act. Plaintiff's argument that the crime-fraud exception to the attorney-client privilege should apply is based upon the same allegations of wrongdoing. Thus, the basis of Plaintiff's argument entails a determination as to whether the alleged conduct was fraudulent and/or criminal–the ultimate issue in the case. Previously, the undersigned had denied Plaintiff's request for disclosure of the allegedly privileged documents due to pendency of motions to dismiss. (ECF No. 123). At this juncture, the motions to dismiss remain pending (ECF No. 210, 219), wherein the district court must still make determinative rulings that are germane to the application of the crime-fraud exception. In this connection, Defendant argued that, until Plaintiff can articulate a plausible claim, these privilege issues are premature.

In essence, the undersigned is being called upon to preemptively decide that Defendant Arevalo's actions in this case were fraudulent and/or criminal. As Magistrate Judge Goodman noted in Barba v. Shire US, Inc., No. 13-21158-CIV-Lenard, 2015 WL 7015324, at *2 (S.D. Fla. Nov. 12, 2015), "the ultimate determination as to whether the crime-fraud exception should apply seemingly requires the resolution of some of the very same factual and legal issues that have not yet been decided by a jury and/or the presiding District Court Judge." Id. at * 2. Deciding the applicability of the crime/fraud exception, at this juncture, would essentially amount to a "trial on the papers," See, e.g., In re Fundamental Long Term Care, Inc., 509 B.R. at 961; Barba, 2015 WL 7015324, at *2-3; In re Method for Processing Ethanol Byproducts (Iroquois), No. 1:10-ml-2181, 2015 WL 2345635, at *2 (S.D. Ind. May 15, 2015), because the same inferences required to prove Plaintiff's underlying claim are required in order to apply the crime/fraud exception. Plaintiff is attempting to establish in discovery "the very abuse that must be shown to the satisfaction of the judge" or jury at trial. Iroquois, 2015 WL 2345635, at *2.

The court in Iroquois was faced with a similar scenario. Rather than conduct a lengthy hearing on the crime/fraud exception prior to trial, the court balanced the parties' interests and denied without prejudice the movant's motion to compel documents until the "factual predicate for the crime-fraud exception [could] be determined in an adversarial proceeding–most likely during the . . . trial itself given the near identity of the issues." Id. at *3-4. In so doing, the court considered four factors: (1) Iroquois had developed a "significant body of evidence;" (2) the "consequences of an incorrect decision to apply the crime-fraud exception before full airing of the existing evidence;" (3) the amount of access to critical evidence by the movant; and (4) the possibility of waiver of the attorney-client privilege by non-movant. Id. at *12-13. Here, Defendants correctly argued that Plaintiff has already developed a significant body of evidence and that the privileged documents in question were only a small sub-set of the responsive discovery produced to date. Defendants argued further that the consequences of an incorrect application of the exception were significant, because Plaintiff had not yet alleged a viable cause of action. As noted in Iroquois, "[t]he compelled disclosure of otherwise privileged communications cannot be undone, but the [Plaintiff's] problem of not having every piece of evidence they would like to have before trial or some other evidentiary hearing can be ameliorated." Id. at *3.

Under the instant circumstances, the undersigned finds that determination of the applicability of the crime/fraud exception would be premature. Moreover, even if Plaintiff presented *prima facie* evidence indicative of wrongdoing, Defendant provided a reasonable explanation to rebut same. Given the pending substantive motions addressing the same issues, the undersigned declines to engage in an *in camera* inspection of the documents listed on the privilege log.

**Conclusion**

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion

to Compel Discovery of Alleged Attorney-Client Privileged Documents (ECF No. 249) is **DENIED**

**without prejudice** as premature, and the request for *in camera* inspection likewise is **DENIED**

**without prejudice**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of February 2017.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Darrin P. Gayles
All Counsel of Record