**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

**Case No.:   15-24176-CV-GAYLES**

JAWHBS LLC, a Florida limited liability
company,

      Plaintiff,

vs.

JORGE E. AREVALO, an individual;
JA ENERGY RESOURCES, LLC, a Florida
limited liability company; SHUTTS &
BOWEN, LLP, a Florida limited liability
partnership; KEVIN D. COWAN, an
individual; OMAR BOTERO aka OMAR
BOTERO-PARAMO, an individual;
ALIANZA FINANCIAL SERVICES, LLC, a
Florida limited liability company; ALIANZA
HOLDINGS, LLC, a Florida limited liability
partnership; ALBERT F. DELANEY, aka AL
DELANEY, an individual; CRYSTAL
TOWER PARTNERS II, LLC, a Florida
limited liability company; CRYSTAL TOWER
ON BRICKELL PLAZA, LLC, a Florida
limited liability company; WATSON
BRICKELL DEVELOPMENT, LLC f/k/a
WATSON INVESTIGATIONS, LLC, a
Florida limited liability company; STEVEN
CARLYLE CRONIG, an individual; and
FRANCIS H. "FRAN" SCOLA, III, an
individual;

      Defendants.

**PLAINTIFF JAWHBS, LLC'S OPPOSITION TO MOTION IN LIMINE REGARDING
PLAINTIFF'S EXPERT BRIAN TANNEBAUM (ECF # 318)**

**PLAINTIFF JAWHBS, LLC'S OPPOSITION TO MOTION IN LIMINE REGARDING PLAINTIFF'S EXPERT BRIAN TANNEBAUM (ECF # 318)**

## I.   INTRODUCTION

At its core, this case is a simple one:  the Defendants are alleged to have engaged in big rigging during the course of a bankruptcy sale/auction of valuable parcels of land in Miami-Dade County, Florida.  *See* Third Amended Complaint ("Complaint") at ¶¶ 34-76 [ECF # 189].  Bid rigging, which can include both paying other bidders not to bid or forming a joint venture for the purpose of stifling competition at a sale or auction, is *per se* illegal under the Sherman Act, 15 USC § 1, and Federal Trade Commission Act, 15 U.S.C §§ 41-58 as well as 11 USC § 363(n) (specific bar to efforts to control prices at bankruptcy sales/auctions).  It is alleged that the certain attorneys participated in the bid rigging so as to have liability with their clients.  As a result, a threshold question for the Court is what the applicable standard is when considering the attorneys' liability, and then for a jury to determine if the attorneys violated that standard.

Under the existing Eleventh Circuit standard, "[o]ne who causes another to violate the antitrust laws can be liable for the violation."  Longleaf Mitigation Dev. Co., LLC v. Fla. Mitigation Providers, LLC, 519 F. Supp. 2d 1233, 1235 (M.D. Fla. 2007) (citing Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1459 (11th Cir. 1991).  Under this standard, the Attorney Defendants essentially have no defense to their participation in the illegal bid rigging scheme and are responsible for all damages as an antitrust conspirator.

Searching for some defense, the Attorneys have argued that the Court should apply a non-binding, minority position for attorney liability in antitrust cases adopted only by the Sixth[1] and

---

[1] The Shutts Attorneys' reliance on Brown v. Donco Enterprises, Inc., 783 F.2d 644 (6th Cir. 1986) is found in the Motion at page 10 as well as in their Motion to Dismiss [ECF # 210] and Motion for Summary Judgment [ECF # 326]. Brown, a Sixth Circuit case states:  "Individual liability under the antitrust laws can be imposed only where corporate agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends. To support a determination of liability under this standard, the evidence must demonstrate that a defendant exerted his influence so

Ninth Circuits.[2]  If the Court were to follow this requested standard instead of the existing Eleventh Circuit standard, the Plaintiff would be required to demonstrate that the Attorneys' activities somehow went beyond a role as a legal advisor (an issue that requires expert testimony) and were active participants in formulating the underlying anticompetitive policy decisions.

A simple way to resolve this matter is for the Court to rule that the antitrust standard used in the Sixth and Ninth Circuits is not applicable in this case.  That is, the Court should follow the general rule of antitrust liability in the Eleventh Circuit and not fashion any special rules for attorneys.  However, given that the Court had not yet ruled on this issue of law, Plaintiff retained an attorney expert, Brian Tannebaum, to address even the non-binding standard of "exceeding legal advice" as advocated by the attorney Defendants in an abundance of caution.

The attorney Defendants willingly put the standard of care for an attorney at issue in this case by arguing for a higher standard of care that is different from existing Eleventh Circuit law.  In fact, it is their central defense.  They now wish to prevent the Plaintiff's expert from opining about the standard of care and whether it was violated.  Tannebaum is well-qualified and has been admitted as an expert on attorney standards and the Rules of Professional Conduct at both the State and Federal levels (see Exhibit 4).  This Court should deny the Motion in Limine on its face, and should enter an order finding that the Court will apply the Eleventh Circuit standard and not apply the standard from the Sixth and Ninth Circuits as the applicable standard here.  If the Court were

---

as to shape corporate intentions.  Id. at 646.  However, a Sixth Circuit case is not binding here.  Even the Sixth Circuit acknowledged the paucity of support for the above proposition, stating "'[a]t the outset, the court recognizes that the conduct proscribed by the antitrust laws is often difficult to distinguish 'from the gray zone of socially acceptable and economically justifiable business conduct,'" and citing only "one court," from the Northern District of California, in a 1979 decision. See, e.g. Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 2000 WL 264295 at n. 54 (S.D.N.Y. 2000).

[2] Pinhas v. Summit Health, Ltd., 894 F.2d 1024 (9th Cir. 1989).  The Shutts Attorneys' reliance on Pinhas is found in their in their Motion to Dismiss [ECF # 210] and Motion for Summary Judgment [ECF # 326].    Again, the Ninth Circuit opinion is not binding on this Court, and not a single court in the Eleventh Circuit has relied upon or cited to Pinhas.

not so inclined to rule so on the papers in favor of permitting Tannebaum's expert testimony, it is respectfully requested that the Court conduct a Daubert hearing and permit oral argument on the Motion at hand.

## II.       FACTUAL HISTORY

### A.  *Factual Background*

Plaintiff has been assigned the claims of certain bankruptcy trustees to pursue antitrust, bid rigging and collusion claims against certain developers and their legal counsel (the Attorneys), who are alleged to have colluded to artificially lowered the price of certain parcels of land sold by the bankruptcy court.

Plaintiff alleges that developer Defendants Botero and Arevalo, previously competitors to acquire the parcels of land, negotiated a payoff for Arevalo not to bid and other terms of a joint venture for the purpose of stopping competitive bidding.  During this process, Arevalo was represented by attorney Defendant Cowan of the Shutts & Bowen law firm.  The Shutts & Bowen Attorneys had been representing Arevalo for weeks and were well aware of the illegal negotiations that ensued.  Cowan's communications plainly show he knew there was a competitive bidding environment with the competitor telling them they had made a "min. bid" and "would go higher."[3] Cowan then fully approved of the blatantly illegal $1.2M payoff and other terms being negotiated, calling them a "good letter/approach" thus specifically guiding his own client and the co-conspirators on how to implement the bid rigging agreement.[4]  Cowan made numerous handwritten changes to an "Option Agreement" which contained a $1.2M payoff and other illegal joint venture terms in exchange for forbearance from bidding.[5]  He specifically revised the Option Agreement

---

[3] Exhibit 1 Arevalo Subpoenaed documents at PLTF 000090.
[4] Exhibit 1 Arevalo Subpoenaed documents at PLTF 000048-000050.
[5] Exhibit 1 Arevalo Subpoenaed documents at PLTF 000083-000086.

to make clear that his own client would file nothing prior to a July 10, 2013, hearing in order to conceal Arevalo's presence.[6]  Cowan was also prepared to serve as an intermediary to receive the proposed $1.2M payoff meant for his client, per the draft Option Agreement.[7]

Shutts & Bowen claims that it disclosed these events at the July 10, 2013, hearing to the bankruptcy court, but this is not exactly the full picture.  Instead, when the bankruptcy Trustee learned of Arevalo's involvement, they gave what Plaintiff would describe as a polite ultimatum that either Shutts & Bowen disclose the events to the court or the Trustees would do so.[8]  Plaintiff's complete statement of facts in this complex case with citations to evidentiary support can be found in its Motion for Partial Summary Judgment (ECF # 305) and is incorporated herein.

### B.  Background over the Legal Standard to be Applied in this Case to Attorneys

The Cowan and Shutts & Bowen Defendants originally brought the Attorneys' standard of care into issue in this case themselves by arguing for a change in the Eleventh Circuit law and for the Court to adopt a new attorney standard of care in antitrust matters from the Sixth and Ninth Circuits.  Beginning early in this case via a Motion to Dismiss (ECF # 97) and in a later Motion for Summary Judgment (ECF # 326), the attorney Defendants willingly opened the door as to attorney standard of care in this case by arguing that attorneys have a *different* standard of care or conduct in antitrust cases and that Cowan's conduct was within this standard of care and prevented civil liability against him.  The cases from the Sixth and Ninth Circuits have not even decided on firm language for this standard and instead used vague standards such as (1) "actively and knowingly engaged in a scheme designed to achieve anticompetitive ends,"[9] (2) "may be found individually liable for antitrust violation[s] if the attorney exceeds his role as legal adviser and

---

[6] Exhibit 1 Arevalo Subpoenaed documents at PLTF 000084.
[7] Exhibit 1 Arevalo Subpoenaed documents at PLTF 000084 at ¶ 5.
[8] Exhibit 2 Drew Dillworth deposition at page 101-102.
[9] Brown v. Donco Enterprises, Inc., 783 F.2d 644, 646 (6th Cir. 1986).

becomes an active participant…"[10] (3) if the attorney acts as "more than a legal adviser"[11] or (4) the attorney "becomes an active participant in formulating policy decisions with his client to restrain competition."[12]  Applications of these standards is practically non-existent.

None of the cases have been adopted by the Eleventh Circuit, nor cited to by any Court in the Eleventh Circuit.  Plaintiff contends that this Court should follow the general rule of antitrust liability in the Eleventh Circuit that "[o]ne who causes another to violate the antitrust laws can be liable for the violation."  Longleaf Mitigation Dev. Co., LLC, 519 F. Supp. 2d at 1235 (M.D. Fla. 2007) (citation omitted).  As of today, there is no definitive ruling by this Court as what standard is applicable.  Should the Court rule that it will not follow the Sixth and Ninth Circuits, as Plaintiff argues, the need for expert testimony would be greatly reduced if not eliminated.

However, if the Court does follow the minority rule of the Sixth and Ninth Circuits, a jury without the assistance of expert testimony (the Defendants have retained their own expert, whose report is attached hereto as Exhibit "3"),  would be required to discern with no expert guidance as whether the Attorneys exceeded the role as legal advisers, became active participants in formulating policy decisions with their client to restrain competition and then would be required to determine if these actions would violate the attorney's standard of care under the facts of this specific case.  Here, Tannebaum provides expert opinions on these issues, and the Defendants have provided their own expert to rebut these opinions.  It is urged that the Court permit Tannebaum to offer his opinions and allow the Defendants to both cross examine him.

/ /

/ /

---

[10] Id.
[11] Invictus Records, Inc. v. American Broadcasting Cos., 98 F.R.D. 419, 429 (E.D. Mich. 1982).
[12] Pinhas v. Summit Health, Ltd., 894 F.2d 1024, 1033 (9th Cir. Cal. 1989).

### III.   MEMORANDUM OF LAW

*A.   Federal Rule of Evidence 702 and the Daubert standard.*

Rule 702, Fed. R. Evid., governs the admissibility of expert testimony.  Admissibility of expert testimony is also governed by the landmark US Supreme court ruling in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  It is well-accepted law under Daubert that expert evidence is reliable and relevant, and thus admissible, when "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (explaining Daubert).   The first two (2) factors in Rule 702 relate to the "reliability" of the evidence. The reliability requirement is aimed at excluding so-called "junk science." Daubert, 509 U.S. at 593. The last factor relates to the testimony's relevance.  Relevancy is satisfied where the expert's opinion is one that will be helpful to the trier of fact. McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004).

With that said, and most importantly, after twenty (20) plus years of varying interpretations of Daubert, the federal courts have now concluded that "[a] review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Warfield v. Stewart, 2009 WL 2421594, at *1 (M.D. Fla. 2009) (citing Advisory Committee Notes to the 2000 Amendment to Rule 702).  This is because "Daubert did not work a 'seachange over federal evidence law,'" (Id.) and the Court's function as a gatekeeper "is not intended to supplant the adversary system or the role of the jury." Allison v. McGhan, 184 F.3d 1300, 1311

(11th Cir. 1999). "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting <u>Daubert</u>, 509 U.S. at 596). "In other words, challenges to the weight and sufficiency of the expert testimony are not properly raised under <u>Daubert</u> which governs admissibility." <u>Walters v. Altec Industries, Inc.</u>, 2003 WL 25686829, at *3 (M.D. Fla. 2003) (citing <u>Frazier</u>, 387 F.3d at 1268).

"The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" <u>Vision I Homeowners Ass'n, Inc. v. Aspen Speciality Ins. Co.</u>, 674 F. Supp. 1321, 1325 (S.D. Fla. Dec. 15, 2009) (Court concluded that expert was properly admitted to testify and that issues raised by moving party went to weight to be given to testimony and not the admissibility). Experience in a field may offer another path to expert status. <u>See</u> Fed. R. Evid. 702 ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.")

Fed. Rule Evid. 702's admissibility standard "is a liberal one." Courts are to start with the assumption that a well-qualified expert's testimony is admissible. <u>United States v. Frazier</u>, 387 F.3d 1244, 1294 (11th Cir. 2004). Weaknesses in the underpinnings of the expert's opinion go to the opinion's weight rather than its admissibility. <u>Jones v. Otis Elevator Co.</u>, 81 F.3d 655, 663 (11th Cir. 1988). Accordingly, "[c]ourts have found that an abuse of discretion occurs when under <u>Daubert</u> the admissibility bar is too high." <u>Frazier</u>, 387 F.3d at 1294. Rejection of expert testimony is to be "the exception rather than the rule." <u>Id</u>. As to the requirement that the

testimony must assist the jury, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen")).

A moving party must also not confuse effective cross-examination with exclusion under Daubert. All experts are subject to cross-examination. However, cross-examination, even if considered effective by one's adversary, does not form a basis to exclude an expert under the Daubert standard. Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Any alleged "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." Jones, 861 F.2d at 663. [I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).

## B. *Expert Brian Tannenbaum's Opinions are Admissible*

### 1. __The Defendants have put the Attorney Standard of Care in Dispute in this Case__

Contrary to the argument contained in the Motion in Limine, issues regarding the conduct of an attorney, the standard of care required by an attorney, and whether an attorney's actions in a particular matter fell beneath the applicable standard of care are classic examples of subjects where expert testimony is allowed. United States v. Silverman, 745 F.2d 1386, 1400 (11th Cir. 1984) (prosecutor's question to attorney with advanced knowledge of criminal law about whether certain acts would constitute interference with the administration of justice legal standard were not

objectionable as concerning applicable law or requesting an ultimate issue under Fed. Rule Evid.

704); Remington v. Newbridge Sec. Corp., 2014 U.S. Dist. LEXIS 15867, *11 (S.D. Fla. Feb. 7,

2014) (attorney expert could testify regarding securities enforcement issues because "the realm of

securities regulation is arcane and inaccessible" to lay jurors); Arlaine & Gina Rockey, Inc. v.

Cordis Corp., 2004 U.S. Dist. LEXIS 30795, *67 (S.D. Fla. Mar. 11, 2004) (expert testimony from

attorney in patent law case admissible because it "may assist the jury in understanding the evidence

and determining the facts in issue."); Henkel v. The Brothers Mill, Ltd. (In re Eddy), 2015 Bankr.

LEXIS 1113, *17 (Bankr. M.D. Fla. Apr. 3, 2015) (expert opinion from attorney considered as to

appropriateness of certain actions under tax and trust law); Greenwald v. Eisinger, 118 So. 3d 867,

871 (Fla. 3d DCA 2013) (acknowledging that "each side called a legal expert to offer opinions

regarding the applicable standards of care and whether the conduct of defendant [attorney] Brown

fell below those standards of care."); Martinez v. Law Offices of David J. Stern, P.A. (In re

Martinez), 266 B.R. 523, 541 (Bankr. S.D. Fla. 2001) (attorney expert testimony on fee awards

allowed).  Where the standard of care for a professional at issue is complex such that a lay fact

finder would be unable to evaluate whether a breach of that standard occurred, a plaintiff may

present expert testimony as to the appropriate standard of care, including whether the professional

breached that standard.[13]

The Defendants contend that Tannebaum cannot testify as to matters of law, or the

implication of conduct.  See Motion in Limine at Page 9.  As shown above, there are clear

exceptions to this general statement.  In regard to the need for expert testimony, this case is

analogous to an attorney malpractice action. Florida substantive law holds that expert opinion

---

[13] Reiber v. United States, 2010 U.S. Dist. LEXIS 93526, *4 (S.D. Fla. Aug. 13, 2010) ("Just as in a medical malpractice case where an expert doctor must be called to explain the appropriate standard of care rendered in the diagnosis and treatment of patients, here, an expert FSS Specialist [air traffic controller] must be called to explain the appropriate standard of care rendered in the dissemination of weather and other pertinent information to pilots.")

testimony—from a lawyer—is not only routinely accepted in legal malpractice cases but is, for the most part, considered to be necessary to establish the appropriate standard of care in such a case. Evans v. McDonald, 313 F. App'x 256 (11th Cir. 2009) ("Our review of Florida law indicates that a legal malpractice plaintiff must present expert testimony to establish the appropriate standard of care (and breach thereof) unless the lawyer's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge.").

As further example, federal courts have also permitted an expert to express an opinion regarding bad faith. Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc., 2004 WL 3770571 at *2 (M.D. Fla. Aug. 20, 2004) (permitting an expert to testify as to a "series of opinions regarding as to the customs and practices of the insurance industry concerning the issues in dispute," especially where those opinions provided a backdrop to other factual opinions.) Other trial level decisions have similarly permitted experts to testify regarding the duties owed by an insurer to its insured, the standards of the insurance industry, whether an insurer's conduct in handling a claim met those standards, the legal duties of insurer-retained defense counsel, and insurance bad faith generally. Sterling v. Provident Life and Acc. Ins. Co., 619 F. Supp. 2d 1242, 1258 (M.D. Fla. 2009) (commenting on the ability of an expert to rely on hearsay documentation in rendering an opinion on claims handling practices); Mendez v. Unitrin Direct Prop. & Cas. Ins. Co., 2007 WL 2696795 at *1 (M.D. Fla. Sept. 12, 2007); GEICO Cas. Co. v. Beauford, 2007 WL 2412974 at *3 (M.D. Fla. Aug. 21, 2007); Salerno v. Auto Owners Ins. Co., 2007 WL 106538 at *2 (M.D. Fla. Jan. 9, 2007).

Here, like in all the examples cited above, it is essential that the jury hear from experts. Furthermore, it should come to no surprise to the attorneys, having placed the standard of care at issue, that Plaintiff would retain an expert to opine on this subject. In fact, as noted supra, the

Attorneys retained their own attorney expert to testify on this issue,[14] a disclosure that seemingly concedes the appropriateness of this type of expert on attorney standards and conduct in this case.

### 2.   Tannebaum is Qualified to Render Opinions as an Expert

Tannebaum is extremely qualified to render opinions.  His full CV is attached for the Court to review.[15]  He is a licensed attorney admitted in the state of Florida and before this Court for over 20 years.[16]  His practice is tailored to representation "law firms as well as future, current, and former lawyers and legal professionals in matters before the Florida Bar...and in civil and criminal courts."[17]  This includes ethics matters and he "has been counsel in over 50 Florida Bar matters"[18]  His list of numerous publications include topics on attorney standard of care, with one publication appropriately entitled "How Far should You go for a Client."[19]  He is the President of the Florida Association of Bar Defense Lawyers, a past member of the Peer Review and Attorney Grievance Ad Hoc Committee for the United States Court for the Southern District of Florida and has held numerous other positions relating to attorney standards.[20]  He is also a frequent speaker on attorney ethics and grievance issues listing more than ten (10) such speaking engagements over the last five (5) years.[21]  In short, Tannebaum's practice is centered around attorneys and the required standard of care for attorneys.

It is beyond dispute that Tannebaum is a well-qualified, experienced[22] expert on attorney standards of care and conduct, including but not limited to the Florida Rules of Professional

---

[14] Exhibit 3 Defendant Shutts & Bowen's expert report of Morgan.
[15] Exhibit 4 Tannebaum Curriculum Vitae, generally
[16] Exhibit 4 Tannabaum Curriculum Vitae at PLTF 002569.
[17] Exhibit 4 Tannebaum Curriculum Vitae at PLTF 002569.
[18] Exhibit 4 Tannebaum Curriculum Vitae at PLTF 002569.
[19] Exhibit 4 Tannebaum Curriculum Vitae at PLTF-002571.
[20] Exhibit 4 Tannebaum Curriculum Vitae at PLTF 002570-002571.
[21] Exhibit 4 Tannebaum Curriculum Vitae at PLTF 002572-002573.
[22] Experience alone can qualify an attorney as an expert in a given field.  Falic v. Legg Mason Wood Walker, Inc., 2005 U.S. Dist. LEXIS 47664, *8 (S.D. Fla. Jan. 6, 2005) ("Court does not exclude Mr. Meeks' testimony [as an expert attorney] merely because his testimony may be based primarily on his professional experience as a litigator.");

Conduct which govern the applicable standard here.  Simply put, the qualification standard for expert testimony is "not stringent," and so long as the expert is minimally qualified, which Tannebaum is, objections to the level of the expertise go to credibility and weight, not admissibility. Kilpatrick v. Breg, Inc., 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009).

The defense's arguments regarding Tannebaum's qualifications are incorrect or merely points for cross-examination and not grounds to exclude an expert under Daubert.  For example, the defense argues that Tannebaum is not an antitrust or a real estate attorney.  This is true, but is not fatal to his offered testimony.  The defense try to insist that Plaintiff would have to find a real estate attorney with a secondary practice area in antitrust law in addition to attorney conduct/ standards in order to testify as an expert in this case.  This is simply incorrect.  It is well-recognized that "[a]n expert may testify regarding narrow sub-topics within his broader expertise— notwithstanding a lack of specific experience with the narrower area—as long as his testimony would still assist a trier of fact."  Maiz v. Virani, 253 F.3d 641 (11th Cir. 2001) (allowing an economic expert to testify on damages relating to real-estate fraud, though the expert had no specific real-estate experience); Remington v. Newbridge Sec. Corp., 2014 U.S. Dist. LEXIS 15867, *11-12 (S.D. Fla. Feb. 7, 2014) (allowing testimony of a securities law expert, even though the expert had not specifically prosecuted FINRA cases).

Here, Tannebaum's credentials as to his ability to testify from his area of expertise as to whether the standards of care were violated by the actions of the attorneys, and what those actions were as well as the standards in Florida, are sound, and this Court should not preclude him from

---

Moses v. Halstead, 477 F. Supp. 2d 1119, 1123 (D. Kan. 2007) (finding attorney to qualify as an expert where he "practiced in state and federal court in Kansas for 30 years, and has written numerous books and articles" on the subject at issue); compare to Jones v. Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988) (finding an elevator expert with "30 years experience as an elevator engineer and was extremely familiar with the operation and appearance" as sufficient qualifications under Daubert).

testifying based upon what is nothing more that cross examination as to the credibility of his opinions.

### 3. Tannebaum's Evaluation of Evidence is Sufficient to State his Opinion as to the Attorneys

The Defendants contend that Tannebaum's testimony should be precluded because he did not review certain evidence in reaching his opinion. Tannebaum was asked to opine as to whether the attorney's behavior in this case violated the applicable standard of care and other issues. For purposes of the report it was assumed that the highest standard of care applied, i.e., whether the attorney "exceeds his role as legal adviser and becomes an active participant" in the anticompetitive activity. This language comes directly from the cases cited by the defense, even though Plaintiff does not concede this is the applicable standard. Tannebaum's opinions can be summarized as follows:

- The applicable standard of care is determined in part by the Florida Rules of Professional Conduct. Said rules are analyzed with examples and factual scenarios from case law are given;[23]

- Under the applicable standard, the drafting or revision of documents (which Cowan admittedly performed) constitutes exceeding the mere giving of legal advice in an of itself and is sufficient to show assisting the client in an illegal act. In fact, "drafting or delivering documents" is specifically given as an example of attorney conduct that exceeds merely giving legal advice in the Rule comments. Thus, Tannebaum's opinion is that Cowan's acts fell below the applicable standard of care.

- Further, under the applicable standard "drafting of" or "merely commenting on" an illegal agreement exceeds merely giving legal advice. "[A]nything short of 'NO THIS IS ILLEGAL,' can be interpreted as assisting the client."[24] Thus, Tannebaum's opinion is that Cowan's acts fell below the applicable standard of care.

- In the opinion of Tannebaum, based on Cowan's 30 years of experience and status as a partner at a major Florida law firm and his access to other legal professionals at that firm, Cowan at a minimum *should have known* he was assisting a client in a criminal act;

- In the opinion of Tannebaum, based on Cowan's actions of actively deterring any filing, such as a notice of appearance, by Arevalo, it appears that Cowan had

---

[23] Exhibit 5 Tannebaum report at PLTF 002563-002565.
[24] Exhibit 5 Tannebaum report at PLTF 002566.

*actual notice* that what he and his client was doing was improper. This is particularly relevant because "suggesting how the wrongdoing [of a client] might be concealed" is another example of attorney conduct that exceeds merely giving legal advice in the Rule comments.

• Under the applicable standards, it is irrelevant whether an illegal agreement was not finalized. The attorney's duty is to decline assistance in <u>all</u> improper acts at <u>all</u> stages of planning.[25]

• Tannebaum concludes with his final opinion that based on his review of the facts, Cowan's actions fell below the standard of care and "went well beyond the mere practice of law and the giving of legal advice, and that Cowan actively participated in, aided and abetted his client…in the bid rigging scheme."[26]

In short, having conducted an analysis of the applicable attorney standard of care and the particular acts of the defendant attorney, Tannebaum is able to testify that the attorney's acts fell beneath the applicable standard of care. Tannebaum's analysis—i.e. examining the legal standard, comparing it to the acts of the Defendant in this particular case, and opining as to whether the conduct conforms to the standard—is no different than countless other expert analysis, be they medical experts, legal experts, or experts in some other field.

In seeking to exclude Tannebaum, the defense attempts to create a laundry list of items (Mot. at §B(iii)(a)-(c), (f), and (k)) that Tannebaum had *not* reviewed as of the date of his deposition to argue his opinions should be excluded. This trick could be done with any expert and is merely a basis for cross-examination, not exclusion of the expert. Notably, at deposition the Defendants did not provide him with the additional information they claim he needs to rely on, to ask if his opinion changed. Instead, they merely argue that the expert could have hypothetically reviewed *more*. Well over 60,000 pages of documents have been produced in this litigation, it is ridiculous to expect the expert to review all voluminous documents in complex litigation. The expert need only review those documents relevant for his review. The mere fact that an expert

---

[25] Exhibit 5 Tannebaum report at PLTF 002566.
[26] Exhibit 5 Tannebaum report at PLTF 002568.

*might have* done more to lay a foundation for his opinions is simply argument for the jury or cross-examination, not a basis to exclude an expert altogether.  Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (district court did not err in allowing economist's lost income damage, even though he did not interview individual plaintiffs).  Notably, when asked about review of additional deposition transcripts, Tannebaum responded that he found the documents to be more reliable because "testimony can be self-serving.  Documents speak for themselves."[27]   Tannebaum reviewed the Complaint and attached documents, Second Amended Complaint and attached documents, the Motions to Dismiss, Plaintiff's Opposition to the Motions to Dismiss, the Reply to the Motions to Dismiss and Cowan's deposition and other discovery.   The Defendants did and can at trial cross-examine Tannebaum as to whether he could have reviewed more, but it is not a basis to preclude him from testifying at trial.

### 4.   Tannebaum's Opinions will Assist the Jury

The final requirement for admissibility of expert testimony is that it "assist the trier of fact." United States v. Frazier, 387 F.3d 1244, 1247 (11th Cir. 2004).  In practice, this does not seem to be a rigorously applied standard.  "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. (citing United States v. Reno, 765 F.2d 983, 995 (11th Cir.1985)).  Expert testimony is only properly excluded "when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F .3d 908, 917 (11th Cir. 1995).

The moving Defendants intend to present to the jury complex issues involving an alleged standard of care for an attorney different from a member of the public and how the attorney's acts

---

[27] Exhibit 6 Tannebaum deposition at page 201.

in this particular case are considered under that standard.  This district and other Florida courts have repeatedly allowed attorney experts to testify to the jury when confusing or complex legal standards of care are alleged.  See, e.g. Remington v. Newbridge Sec. Corp., 2014 U.S. Dist. LEXIS 15867, *11 (S.D. Fla. Feb. 7, 2014) (attorney expert could testify regarding securities enforcement issues which were otherwise "the realm of securities regulation is arcane and inaccessible" to lay persons); Arlaine & Gina Rockey, Inc. v. Cordis Corp., 2004 U.S. Dist. LEXIS 30795, *67 (S.D. Fla. Mar. 11, 2004) (expert testimony from attorney in patent law case admissible because it "may assist the jury in understanding the evidence and determining the facts in issue."); Henkel v. The Brothers Mill, Ltd. (In re Eddy), 2015 Bankr. LEXIS 1113, *17 (Bankr. M.D. Fla. Apr. 3, 2015) (expert opinion from attorney considered as to appropriateness of certain actions under tax and trust law).

In this case, Tannebaum's testimony will assist the jury in understanding this standard of care under Florida law and what actions by an attorney exceed the mere giving of legal advice and cross into active participation in a client's wrongful act.  The Defendants obviously intend to argue to a jury that the standard has not been met.  Plaintiff is entitled to present expert opinion to the contrary.

### 5.   Rebuttal to Particular Arguments of the Defendants

In their Motion in Limine, the Defendants raise a number of arguments that Plaintiff wishes to specifically address and rebut.  The Defendants incorrectly argue that Tannebaum is just giving an opinion on the law or instructing the jury on the law.  This is an incorrect characterization of his testimony.  Expert testimony on the standard of care for an attorney and whether certain acts of a defendant violate those standards is standard fare for expert testimony.

Defendants incorrectly argue that Tannebaum applied the wrong legal standard. They first *assume* their legal standard is correct, which is undetermined by the Court. They then pull a particular phrase used in one case "formulate policy decisions" and asked Tannebaum about it and cite to that portion of his deposition. Later, on re-direct Tannebaum testified further about this standard and that he had no reason to believe that Cowan's changes to the documents at issue were not his own policy decisions.[28]

The Defendants mockingly calling Tannebaum's opinions the "Tannebaum standard," but Tannebaum specifically states in his report that he was asked to render an opinion as to "whether the attorney's involvement under the facts of this particular case went beyond giving mere legal advice…"[29] While the Plaintiff and Defendant disagree as to the appropriate legal standard, Tannebaum was asked to opine on the *heightened* standard regardless. The very heightened standard the Defendants argue is that "[a]ttorneys are not…immunized from antitrust liability" and "may be found individually liable for antitrust violation[s] if the attorney *exceeds his role as legal adviser and becomes an active participant*…" Brown v. Donco Enterprises, Inc., 783 F.2d 644, 646 (6th Cir. 1986) (analyzing attorney liability under antitrust law). Tannebaum did not fabricate his own legal standard, his opinions were based on the defense standard.

This standard, if such a heightened standard even applies, would be confusing to a lay person juror who would not have an intricate understanding of attorney standards of conduct, ethical rules that govern attorney conduct and what behavior an attorney can or cannot engage in without being considered to have exceeded his or her role as a legal advisor. To listen to the Defendants argue it, this standard is very, very high. However, the actual standard in the state of Florida is very, very low and violated by Cowan's conduct. The line here that needs explained to

---

[28] Exhibit 6 Tannebaum deposition at pages 210-213.
[29] Exhibit 5 Tannebaum report at PLTF 002562 ¶ 2.

the lay person jury is exactly how far an attorney may go and what conduct is considered going beyond simply giving legal advice.

Defendants contend that violation of the Rules Regulating the Florida Bar should not by itself give rise to a cause of action against a lawyer and argue that Tannebaum's opinions are about same are therefore inadmissible. <u>See</u> Motion in Limine at §B(ii).  However, in so arguing the Defendants purposefully omit the section of the Rules of Professional Conduct Preamble that plainly states that "[n]evertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct." The Rules of Professional Conduct are highly relevant because they establish the appropriate standard of care for the attorney.  <u>Greenwald v. Eisinger</u>, 118 So. 3d 867, 871 (Fla. 3d DCA 2013) (citing the preamble to the Florida Rules of Professional Conduct that "a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct."); <u>Pressley v. Farley</u>, 579 So. 2d 160, 161 (Fla. 1st DCA 1991) (holding violation of the Rules of Professional Conduct may be used as evidence to show an attorney breached a standard of care).

The standard of care for attorneys under Florida law is established by Rule 4-1.2(d), "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer know or reasonably should know is criminal…"[30]   There is a clear mandate written right into the comments to the Florida rule that the mere "drafting or delivering documents" will constitute assisting the client beyond merely giving legal advice,[31] which is especially relevant given the standard that the Defendants request the Court to apply in this case.  Tannebaum's opinion that the Defendant

---

[30] Exhibit 5 Tannebaum report at PLTF 002564.
[31] Exhibit 5 Tannebaum report at PLTF 002564.

Attorneys should have known the conduct was illegal is based upon these standards and application of opinions that a lay juror would have not the expertise to discern without expert assistance.[32]

Other arguments of the Defendants are also misleading.  For example, they argue that Tannebaum did not know their defenses, but this is because the Defendants themselves refused to file an answer and instead filed a motion to dismiss.

The Defendants used another classic defense attorney trick of asking a witness about matters *outside* the scope of his expert opinion, having the expert honestly answer he does not know (since he was not retained for that issue), then quoting that passage and arguing that it shows the expert's opinions should be excluded.  The deposition of Tannebaum was a grueling four and a half (4 ½) hour affair filled with such questions.  For example, he was cross-examined about whether he had personally drafted a joint venture agreement, an issue which would not affect his opinions.  Similarly, he was asked if he had participated in any real estate transactions as an attorney, an issue that again is irrelevant to his opinions.  These points, which are cross-examination points at best, are not the correct standard because "[a]n expert may testify regarding narrow sub-topics within his broader expertise—notwithstanding a lack of specific experience with the narrower area—as long as his testimony would still assist a trier of fact."  Maiz v. Virani, 253 F.3d 641 (11th Cir. 2001).

Notwithstanding the efforts of the Defendants to attack Tannebaum's credibility, the fact remains that his expert testimony should be permitted and it will assist the jury to understand the evidence and determine facts in issue.  In essence the Motion is about an attempt for the Defendants to obtain a ruling that the Sixth and Ninth Circuit's standard should be applied by the Court here,

---

[32] Exhibit 5 Tannebaum report at PLTF 002567-002568; Exhibit 6 Tannebaum deposition at pages 128-129.

yet at the same time preclude the Plaintiff from having an expert provide opinions as to the standard and applicably to the conduct of the Attorneys.

## IV.   CONCLUSION

In closing, the Defendants willingly put the standard of care for an attorney at issue in this case.  In fact, it is their central defense.  They now complain that Plaintiff retained an attorney expert (as did they in rubuttal) to opine about the standard of care and whether Cowan breached it.  The expert is an extremely well-qualified attorney expert who makes his living regarding attorney standards and the Rules of Professional Conduct.  He reviewed a mass amount of discovery, depositions of the involved attorney and performed research on this particular issue of Florida law, i.e. when an attorney's acts exceed merely giving legal advice.  The expert is qualified. The expert's review and methodology is no different from what any other medical or legal standard of care expert would testify regarding.  Lastly, the field of standard of care for an attorney, either inside or outside an antitrust context, and what acts of the Defendant breached that standard of care are issues where expert testimony can assist the jury.  Most assuredly, the Defendants intend to argue that they Attorneys did not violate the standard.  They have even designated their own expert on the issue. This Court should not preclude Tannebaum from testifying at trial.  However, should the Court rule that the standard presented by the Defendants is not applicable, the scope of Tannebaum's testimony can be greatly limited.

Dated this 28th day of March, 2017.
**/s/ Adam J. Breeden**
Adam J. Breeden, Esq.
Florida Bar # 124046
Adam@breedenandassociates.com
BREEDEN & ASSOCIATES, PLLC
1404 S. Jones Blvd.
Las Vegas, NV 89146
Ph. 702-508-9250
*Co-Counsel for Plaintiff*

Jerrold A. Wish, Esq.
Florida Bar # 352721
jwish@wishlaw.net
THE WISH LAW FIRM
1927 NW 104th Way
Gainesville FL 32606
Ph. 786-200-7077
*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Opposition to Motion in Limine as to Plaintiff's Expert Brian Tannebaum was served on the 28th day of March, 2017, on all counsel or parties of record on the service list through the Court's ECF system or as otherwise indicated.

**s/ Adam J. Breeden**
_____

Adam J. Breeden, Esq.     Jerrold A. Wish, Esq.
Florida Bar # 124046      Florida Bar # 352721
Adam@breedenandassociates.com  jwish@wishlaw.net
BREEDEN & ASSOCIATES, PLLC  THE WISH LAW FIRM
1404 S. Jones Blvd.       1927 NW 104th Way
Las Vegas, NV 89146      Gainesville FL 32606
Ph. 702-508-9250       Ph. 786-200-7077
Fax 702-508-9365       *Attorneys for Plaintiffs*

Case No.:  **15-24176-CV-GAYLES**
SERVICE LIST

| | |
|---|---|
| Adam J. Breeden, Esq.<br>Adam@breedenandassociates.com<br>BREEDEN & ASSOCIATES, PLLC<br>1404 S. Jones Blvd.<br>Las Vegas, NV 89146<br>Ph. 702-508-9250<br>Fax 702-508-9365<br>*Co-Counsel for Plaintiff* | Jerrold A. Wish, Esq.<br>jwish@wishlaw.net<br>THE WISH LAW FIRM<br>1927 NW 104th Way<br>Gainesville FL 32606<br>Ph. 786-200-7077<br>*Co-Counsel for Plaintiff* |
| Kendall Coffey, Esq.<br>kcoffey@coffeyburlington.com<br>Kevin C. Kaplan, Esq.<br>kkaplan@coffeyburlington.com<br>David Zack, Esq.<br>dzack@coffeyburlington.com<br>COFFEY BURLINGTON<br>2601 South Bayshore Drive, PH1<br>Miami, FL 33133<br>Tel:  305.858.2900<br>Fax:  305.858.5261<br>*Counsel for Shutts & Bowen, LLP and Kevin Cowan* | Charles M. Tatelbaum, Esq.<br>cmt@trippscott.com<br>Edward Curtis, Esq.<br>erc@trippscott.com<br>Michael C. Foster, Esq.<br>mcf@trippscott.com<br>TRIPP SCOTT<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>Ph. 954-525-7500<br>Fax 954-761-7501<br>*Counsel for Steven C. Cronig* |
| Ronald L. Kammer, Esq.<br>rkammer@hinshawlaw.com<br>H. Steven Vogel, Esq.<br>svogel@hinshawlaw.com<br>HINSHAW & CULBERTSON, LLP<br>2525 Ponce de Leon Blvd., 4th Floor<br>Coral Gables, FL 33134<br>Ph. 305-358-7747<br>Fax 305-577-1063<br>*Counsel for Watson Brickell Development, LLC and Francis Scola* | Omar Botero<br>3333 Halissee Street<br>Miami, FL 33133<br>*Defendant- Served via US Mail and E-mail*<br>omar@alianzadevelopmentgroup.com<br><br>Alianza Financial Services, LLC<br>Alianza Holdings, LLC<br>999 Brickell Ave. PH 1002<br>Miami, FL 33133<br>*Defendants- Served via US Mail and E-mail* |
| Lawrence Goodman, Esq.<br>lgoodman@devinegoodman.com<br>DEVINE GOODMAN et. al.<br>2800 Ponce de Leon Boulevard, Suite 1400<br>Coral Gables, FL 33134<br>Ph. 305.374.8200<br>Fax 305.374.8208<br>*Counsel for JA Energy Resources, LLC and Jorge Arevalo* | Albert Delaney<br>Delaneyal@att.net<br>45 Scarlet Woods Court<br>Spring, TX 77380<br>*In proper person*<br>*Served via e-mail outside ECF* |