UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:15-cv-24176-GAYLES

**JAWHBS LLC**, a Florida limited liability company,

    Plaintiff,

vs.

**JORGE AREVALO**, an individual;
**JA ENERGY RESOURCES, LLC**, a Florida limited liability company; **SHUTTS & BOWEN LLP**, a Florida limited liability Partnership; **KEVIN D. COWAN**, an Individual; **OMAR BOTERO**, an individual; **ALIANZA FINANCIAL SERVICES, LLC**, a Florida limited liability company; **ALIANZA HOLDINGS, LLC**, a Florida limited liability partnership; **AL DELANEY**, an individual; **CRYSTAL TOWER PARTNERS II, LLC**, a Florida limited liability company; **CRYSTAL TOWER ON BRICKELL PLAZA, LLC**, a Florida limited liability company; **WATSON INVESTIGATIONS, LLC**, a Florida limited liability company; **STEVEN CARLYLE CRONIG**.

    Defendants.
_____/

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

Defendants Shutts & Bowen LLP ("Shutts"), Kevin D. Cowan ("Cowan" and Shutts collectively referred to as "Shutts Defendants"), Jorge Arevalo, and JA Energy Resources, LLC (the parties joining this response collectively referred to here as "Defendants"), hereby submit their response to Plaintiff's Statement of Material Facts (ECF No. 305 at 2-11) pursuant to Southern District of Florida, Rule 56.1.[1] Information designated "undisputed" is undisputed for purposes of responding to Plaintiff's Motion for Partial Summary Judgment (ECF No. 305) only:

1.   <u>Undisputed</u> that the so-called Beacon Parcels were sold through bankruptcy proceedings. <u>Paragraph 1 is otherwise disputed</u>:[2] A) No agreement was entered between any of the parties to this case (Arevalo Dep. 103:15-7 and 202:9-14 and, Nov. 15, 2016, Ex. "1" to Notice of Filing (ECF No. 345) ("NOF"); Pl.'s Ex. 7; Tr. of R. at 7, *In Re Beacon*, No. 13-11961 (Bankr. S.D. Fla. July 10, 2013), ECF No. 63, Ex. "2" to NOF; Pl.'s Ex. 13; Delaney Dep. 263:22-25, July 25, 2016, Ex. "3" to NOF; Pl.'s Ex. 6; Botero Dep. 198:14-200:10, Aug. 3, 2016, Ex. "4" to NOF; Pl.'s Ex. 4; Cowan Dep. 100:12-14, January 25, 2017, Ex. "5" to NOF; B) The unsuccessful negotiations between Jorge Arevalo and Omar Botero were for a lawful joint venture to develop the Beacon Parcels—Botero would provide funding to purchase the land and Arevalo providing construction financing and an equity investment. (Cowan Dep. 57:8-12 and 103:2-5; Botero Dep. 24:20-25:5, 146:18-19:20, 164:2-9-165:6-12, 173:21-174:14, 178:5-179:3; Pl.'s Ex. 3; Pl.'s Ex. 8, PLTF at 39-41; Delaney Dep. 43:12-21 and 150:4-151:1; Pl.'s Ex. 6; Arevalo Dep. 103:9-14); C) Competition was not harmed and the sale price of the Beacon Parcells increased by $2 million to the benefit of SLS Properties III, LLC (Plaintiff's sister company), as confirmed by bankruptcy Trustee Dillworth, and Plaintiff's principals, Herbert

---

[1] Defendants do not waive their objections to Plaintiff's Statement of Material Fact under S.D. Local Rule 56.1. *See* Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, Section III A.
[2] Objection: Pl.'s Third Am. Compl. ("TAC") is not competent evidence. FRE 802.

Sider and Jerrold Wish. (Sider Dep. 105:14-106:7, March 3, 2017, Ex. "6" to NOF; Dillworth Dep. 53:10-25, March 8, 2017, Ex. "7" to NOF; Pl.'s Ex. 2; Wish Dep. 81:1-25, Feb. 22, 2017, Ex. "8" to NOF)

2. <u>Undisputed</u> that the Beacon Parcells are on the corner of 8th Street and S.E. 1st Ave in Miami, FL. <u>Paragraph 2 is otherwise disputed</u>:[3] The Beacon Parcels are impossible to develop without the addition of other parcels (Botero Dep. 95:16-19; Scola Dep. 12:21-23 and 15:9-12, Feb. 16, 2017, Ex. "9" to NOF; Pl.'s Ex. 9)

3. <u>Undisputed</u>, except as follows: the July 30, 2013 deadline set by the bankruptcy Judge was a hard deadline, there was a real sense of urgency, and no one, including plaintiff's principals, Wish and Sider, requested an extension. (Tr. of R. at 9, *In Re Beacon*, No. 13-11961 (Bankr. S.D. Fla. July 16, 2013), ECF No. 78, Ex."10" to NOF; Dillworth Dep. 34:3-35:2, 36:10-14, 38:24-25, 128:7-15, and 136:3-13; Pl.'s Ex. 2)[4]

4. <u>Undisputed</u> that 1) Botero, through entities he controlled, was interested in the property and initially tried to negotiate with Renzi, 2) he obtained financing to make a $19.5 million offer, through Crystal Tower, on the Beacon Parcels to the Trustees, 3) the Trustees sought approval from the bankruptcy court for a private sale and filed a Letter of Intent dated June 16, 2013, 4) an approval hearing was set for July 10, 2013, and 5) the Trustees were prepared to proceed with the sale. <u>Paragraph 4 is</u> <u>otherwise disputed</u>:[5] The documents cited by Plaintiff did not actually reflect values at $30 or $31 million. (Botero Dep. at 95:10-18, 100:10-

---

[3] Objection to Pl.'s Ex. 1: Wish has no personal knowledge other than hearsay and speculation on such matters as the number of possible stories, units and zoning. FRE 602.
[4] Objection that Plaintiff's ¶ 3 is argumentative and violates Rule 56.1 by failing to provide record citations as required.
[5] Objection to Pl.'s Ex. 16, Alianza 53-54 as inadmissible hearsay against the Shutts Defendants and other Defendants and is irrelevant. Plaintiff's ¶ 4 is argumentative, is based on speculation, and violates Rule 56.1 by failing to append record citations for all statements.

18, and 101:4-9; Dillworth Dep. 179:11-25; Alianza Holdings Executive Overview, ALIAZNA 71, Pl.'s Ex. 16; Capital Subscription Agreement, BOTERO SUPP 71, Pl.'s Ex. 3; Arevalo Dep. 42:18-43:2 and 44:10-12; Scola Dep. 12:21-23 and 15:9-12; Pl.'s Ex. 9; Delaney Dep. 81:7-13 and 82:3-13; Pl.'s Ex. 6) Botero and Crescent Heights discussed the purchase of a parcel to facilitate street access for the Beacon Parcels, as well as a lawful joint venture. (Botero Dep. 73:15-23; Delaney Dep. 82:3-13 and 106:8-107:10) In mid-June, Trustee Dillworth first learned there was interest in the property when Botero, the principal of Alianza Holding, LLC, Alianza Financial Services, LLC, Crystal Tower Partners II, LLC, and Crystal Tower on Brickell Plaza, LLC ("Crystal Tower"), approached him about purchasing the property. (Wish Dep. 113; Dillworth Dep. 14:22-20:6) Trustee Dillworth testified that the $19.5 million price for the agreement with Crystal Tower "made sense [and] we could extract some value for the creditors," that any other offers had to be "on the same terms" and "apples to apples" (i.e., all or substantially all cash on deposit), and that he was promoting a private sale to Crystal Tower due to the hard deadline set by the bankruptcy court. (Dillworth 14:22-16:1, 38:10-39:6 and 123:19-124:17) An all cash down payment purchase is a "killer" provision to buyers (Shapiro Dep. 86:9-17, Feb. 14, 2017, Ex. "11" to NOF) Botero had no objection if Arevalo made a separate offer. (Botero Dep. 200:7-10; Pl.'s Ex. 4) Trustee Dillworth may have signed the letter of intent with Crystal Tower. (Dillworth Dep. 123:3-8)

     5.    <u>Undisputed</u> that 1) Arevalo contacted Renzi and 2) Arevalo was interested in a joint venture to obtain the Beacon Parcells and contacted Botero to work out a joint venture. <u>Paragraph 5 is otherwise disputed</u>:[6] The contention of Botero's knowledge is not supported by

---

[6] Objection to hearsay and irrelevant documents Pl.'s. Ex. 3, at Botero Supp 775 and 776, and Pl.'s Ex. 10, SCOLA 5-6, as inadmissible against the Shutts Defendants and the other Defendants. Plaintiff's ¶ 5 is argumentative and violates Rule 56.1.

3

the record cited by Plaintiff. (Arevalo Dep. 30-46) The Renzi draft letter did not call for a cash-sale; Arevalo would pay only $500,000 down and $30,000 per month up to $900,000, with a $31,400,000 future buyout, less any amounts paid to the judgment holder (Pl.'s Ex. 8, JA 17-19, ¶¶ 4(c) and 14) Such terms are not equivalent to an all cash upfront purchase and would have been rejected by the Bankruptcy Court. (Dillworth Dep. 174:2-175:25) Arevalo did not have the funds to purchase the Beacon Parcels for cash. (TAC ¶ 58, ECF No. 189) Arevalo and Botero wanted a joint venture to combine their resources for Arevalo's construction funding and investment in the property and Arevalo did not have funds to buy the property. (*See* ¶1B above). Arevalo testified that document 775-776, Pl.'s Ex. 3, was untrue, and he did not offer Renzi $29 million for the property (Arevalo Dep. 113:17-115:24) Scola testified that he did not know if the $33 million valuation was true, the square feet on which it was based is wrong (so the arithmetic is wrong), and the was based on a larger property without the Beacon Parcel's parking and access problems. (Scola Dep. 12:21-23; 15:9-12, and 45:11-17; Pl.'s Ex. 9 Scola 5-6; Pl.'s Ex. 10; Delaney Dep. 81:7-13, 82:3-13; Pl.'s Ex. 6)

6. <u>Undisputed</u> that the first contact between Arevalo and Botero was on July 4, 2013, (Botero Dep. 125:19-21) one week prior to the July 10, 2013 approval hearing of the Crystal Tower purchase agreement. <u>Paragraph 6 is otherwise disputed</u>: Arevalo disputed the entire substance of Pl.'s Ex. 3, at BOTERO SUPP. 775-776. (Arevalo Dep. 113-122) The document itself discusses an equity investment to be made and providing a $100 million construction loan commitment. (BOTERO SUPP. 775-776) [7] The Botero-Arevalo negotiations concerned a lawful joint venture. (*See* ¶1B above) (Defendants seek to minimize repetition of

---

[7] Objection: Pl.'s Ex. 3, Botero Supp at 775-776; Pl.'s Ex. 8, PLTF 38-94, Pl.'s Ex. 11, are irrelevant, hearsay documents, inadmissible against the Shutts Defendants and other Defendants. Plaintiff's ¶ 6 is argumentative, and violates Rule 56.1.

lengthy record citations.) Arevalo could make a separate offer. (Botero Dep. 200:7-10; Pl.'s Ex. 4)

7.  Disputed:[8] Botero testified that he meant that he could not change the terms of the private sale to the Trustees, he did not want to risk a prompt closing, and he was not concerned about other offers coming in. (Botero Dep. 156:22-157:9 and 158:16-159:9; *see also* Arevalo Dep. 62:22-25 and 64:13-19) Moreover, the negotiations between Arevalo and Botero were for a lawful joint venture to develop property. (*See* ¶ 1B above) Botero had no objection if Arevalo made a separate offer. (Botero Dep. 200:7-10; Pl.'s Ex. 4)

8.  Undisputed that Delaney, on behalf of Botero, sent Arevalo a "draft terms sheet" on July 8, 2013. (Terms for Capitalization, at JA 36-42, July 8, 2013, Ex. "12" NOF). Paragraph 8 is otherwise disputed:[9] No agreement was entered, Arevalo was not "required" to do anything. (*See* paragraph 1A above). Botero explained that the text was prospective and contingent: "if you bring the equity capital and the construction financing, we'll do business." (Botero Dep. 165:11-12; Pl.'s Ex. 3)

9.  Undisputed that on behalf of Botero, Delaney sent Arevalo an email, which was copied to Cowan. (Pl.'s Ex. 8, at PLTF 48-49) Paragraph 9 is otherwise disputed:[10] The negotiations between Arevalo and Botero were for a lawful joint venture to develop property, with Botero's group providing funding to purchase the land and Arevalo providing construction financing and an equity investment. (*See* paragraph 1B above). Botero had no objection if

---

[8] Objection: irrelevant hearsay documents, Pl's. Ex. 11, at PLTF 2547, and inadmissible against the Shutts Defendants and other Defendants. Plaintiff's ¶ 7 is argumentative and violates Rule 56.1 by failing to cite record evidence.

[9] Objection: Ex. 11, PLTF at 2552, irrelevant and hearsay against the Shutts Defendants and other Defendants. Plaintiff's ¶ 8 as argumentative and violates Rule 56.1 by failing to provide record citations.

[10] Defendants object to Plaintiff's ¶ 9 as argumentative and violating Rule 56.1 by making statements without record citations.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Arevalo made a separate offer. (Botero Dep. 200:7-10; Pl.'s Ex. 4) Arevalo believed he could get construction financing (a loan commitment for another project was produced by way of proof) and that he was obligated to get financing and to invest cash. (Arevalo Dep. 57:3-11, 87:16-20, and 88:5-10; Pl's. Ex. 8; Pl's Ex. 7, at PLTF 44-46) Cowan's limited involvement consisted of exchanging emails with Albert Delaney, who was drafting the potential joint venture's terms for Botero. (Cowan 2004 Exam 16:1-7 and 20:9-11, March 20, 2014, Ex. "13" to NOF; Cowan Dep. 65:7-13). Cowan's focus was on the legal issues of "ensur[ing] that the title circumstances were acceptable," and also that the language in the documents accurately set forth the terms his client was discussing. (Cowan 2004 Exam 19:15-21) Cowan's role included adding hand-written revisions "making sure that the writing said what they told me it was supposed to say and…that the title was marketable." (*Id*.) He did not formulate or design the potential joint venture between Botero and Arevalo. (*Id*.) He only provided legal advice. Consistent with his potential duties as part of a proposed the joint venture, Botero and Arevalo discussed a "forbearance" agreement. (Cowan 2004 Exam 22:19-23). Any discussion of a non-compete was proposed in the context of attempting to negotiate a joint venture. (Cowan 2004 Exam 18:14-16, 22:19-23, and 29:13-14; Cowan Dep. 57:6-12 and 103:2-5; Botero Dep. 124:24-125:4 and 195:1-24; Delaney 153:2-22, 183:10-24, and 184:18-25; Arevalo Dep. 79:15-25 and 93:11-8)

10.     <u>Undisputed</u> that Delaney emailed Arevalo and Cowan a document drafted by Delaney (Option Agreement, at JA 80-84, Ex. "14" to NOF). <u>Paragraph 10 is otherwise disputed</u>:[11] The proposed agreement was not for an "option agreement," but for a joint lawful venture. (*See* paragraph 1B above) Any discussion of a non-compete was proposed in the context of attempting to negotiate a joint venture. (*See* ¶9 above). Receiving payment under a contract

---

[11] Objection: Plaintiff's ¶ 10, is argumentative, irrelevant, and violates Rule 56.1.

through a law firm is "fairly standard," and Shutts would not be receiving a fee for the funds. (Cowan Dep. 88:6-11)

11. <u>Undisputed</u> that email Bates numbered PLTF 48, 84, and 94 were sent. <u>Paragraph 11 is otherwise disputed</u>.[12] Cowan's limited involvement is described at length in Paragraph 9 above. Cowan did not remember what the discussion of minimum bid was or what was meant by filing a notice. (Cowan Dep. 65:7-13, 73:3, and 73:18-20; Pl.'s Ex. 12) Arevalo and Botero wanted a joint venture as described in Paragraph 1B above.

12. <u>Undisputed</u> that Carlton Fields filed a motion to withdraw and that email Bates numbered PLTF 84 was sent. <u>Paragraph 12 is otherwise disputed</u>:[13] Carlton Fields never told Delaney they were researching the legal effect of collusion; Carlton Fields did not prepare anything in writing; they said only that it did not "look good at this stage of the game;" Arevalo would pay money into the deal; the legal research related to Renzi being a "scoundrel" and about a good faith finding—not collusion; the attorneys were "less concerned" about a deal in which Arevalo would join Alianza (which was the deal actually being discussed); the advice related only to an auction environment, which did not exist. (Delaney Dep. 193:22, 194:18-195:2, 195:21-23, 196:10-14, and 197:18-25) Delaney had no actual knowledge as to why Carlton Fields withdrew, and that they gave "wrong advice." (Delaney Dep. 242:17-19 and 243:8-9) Delaney did not know what the "solution" was. (Delaney Dep. 219:16-18) Arevalo thought he was being "played" by Botero; he wanted to talk further to find what the problem was in order to find a solution; there was no intent to do anything improper. (Arevalo Dep. 110:13-112:5).

---

[12] Defendants object that Plaintiff's ¶ 11 is argumentative and violates Rule 56.1 by failing to provide record citations for certain statements.

[13] Objection: argumentative and violates Rule 56.1. Irrelevant and hearsay document, Ex. 11 PLTF 2560, is inadmissible as to the Shutts Defendants and other Defendants. Plaintiff's reliance on hearsay and attorney-client information regarding Carlton Fields is inadmissible against the Shutts Defendants.

Cowan testified that he did not recall receiving Delaney's email stating that there was a "problem" and that Delaney did not raise illegality as the problem. (Cowan Dep. 68:3-5 and 70:8-15)

13.     Undisputed: 1) there was no signed deal in place between Arevalo and Botero and their respective entities, 2) a hearing was held on July 10, 2013, and Koroglu appeared for Arevalo, 3) prior to the hearing, Koroglu advised the Trustees of the negotiations between Arevalo and Botero, 4) statements were made as reflected in the July 10, 2013 hearing transcript, 5) the Bankruptcy Judge continued the hearing for a week and did not approve the sale to Botero, and 6) Botero later cancelled the purchase agreement. Paragraph 13 is otherwise disputed:[14] Koroglu explained that Arevalo's responsibilities in the joint venture would have been arranging financing for the Beacon Parcels' development and would potentially agree (like any member in an entity) not to compete or usurp the envisioned joint venture's business opportunity. (Tr. of R. at 10-11, *In Re Beacon*, ECF No. 63) Koroglu confirmed that "after several versions of the written agreement had gone back and forth, we were advised that they [we]re no longer interested in pursuing this deal." (*Id*. at 9). Koroglu then stated "my client effectively entered into a good faith agreement to forego making a better higher bid," but clarified again that "it is an unsigned agreement, but there have been redlined versions that went back and forth with this option to effectively not make a higher and better bid in bankruptcy." (*Id*. at 9 and 11). Koroglu asked for additional time for Arevalo to try to "go significantly higher." (*Id*. at 11). Prior to the July 10 hearing, Koroglu disclosed the negotiations to the Trustees. Trustee Dillworth testified that Koroglu was "a stand-up guy" in providing complete disclosure to the Bankruptcy Court. (Dillworth Dep. 138:24). The Bankruptcy Court ruled that more time should be given in case any

---

[14] Objection: Plaintiff's paragraph 13 is argumentative, irrelevant, and violates Rule 56.1 with unsupported statements.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

other offers might be forthcoming and deferred approval of the sale of Beacon Properties. (Dillworth Dep. 74:7-14). There was no auction. (Tr. of R. at 23, *In Re Beacon*, ECF No. 63)

14.   Undisputed: 1) Arevalo contacted Scola to request financing from Baybakov in order to be able to submit a bid for $22 million, 2) Arevalo did not have the financing to make an offer for the property, and 3) Watson was provided with certain due diligence materials. Paragraph 14 is otherwise disputed:[15] It was Botero who preformed due diligence and Watson had minimal due diligence performed. (Cronig Dep. 64:16-17, 65:9-14, and 65:22-66:1, Jan. 26, 2017, Ex. "15" to NOF). The $33 million valuation issue is discussed in Paragraph 5 above. The $31.4 million valuation was not close to Arevalo's internal valuation. (Arevalo Dep. 44:10-12). Baybakov thought Arevalo's proposal was "ridiculous." (Scola Dep. 52:6-13; Pl.'s Ex. 9).

15.   Undisputed: 1) Cronig was counsel in another case against Arevalo, 2) Watson offered $21.5 million to purchase the Beacon Parcels, 3) the Bankruptcy Court approved the sale to Watson for $21.5 million, and 4) Cronig was the sole manager of Watson at the time of purchase. Paragraph 15 is otherwise disputed:[16] Baybakov thought Arevalo's proposal was "ridiculous." (Scola Dep. 52:6-13; Pl.'s Ex. 9). No citation provided for the contention that Doronin funded Watson's purchase. Botero withdrew because he did not want to lose his deposit. (Botero Dep. 209:7-16; Pl.'s Ex. 4). The Sale Order provides in paragraph 3 that "the proposed sale" was "arms-length" and "represents appropriate and valid exercise of the Trustees' business judgment." (Order, *In Re Beacon*, No. 13-11961 (Bankr. S.D. Fla. July 22, 2013), ECF No. 73, Ex. "16" to NOF)  Paragraph 7 of the Sales Order holds that "sale and transfer...shall be free and clear of all…claims…of every kind and nature…at law or in equity." (*Id*.) Paragraph 13 of the

---

[15] Objection: Plaintiff's cites hearsay documents, PLTF 100-101 and Scola 5-6, which are inadmissible as to the Shutts Defendants and other Defendants. Plaintiff's ¶ 14 is argumentative and irrelevant.

[16] Objection: Plaintiff's ¶ 11 is argumentative and violates Rule 56.1

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Sales Orders, states that the sale was "in 'good faith,' as that term is used [in] 11 U.S.C. § 363(m)." (*Id.*) The additional $2 million benefited SLS Properties III, LLC (Plaintiff's sister company). (Sider Dep. 105:14-106:7; Dillworth Dep. 53:10-54:10; Pl.'s Ex. 2; Wish Dep. 81:1-25) The outcome was the "best available" and a positive result for SLS. (Dillworth Dep. 58:6-25 and 168:2-5). Had the Shutts Defendants not disclosed Arevalo's failed negotiations with Crystal Tower at the July 10 hearing, the Crystal Tower sale for $19.5 million would have gone through for $2 million less. (Dillworth Dep. 53:10-54:10). Trustee Dillworth later said, "I think that this was a homerun estate for the creditors." (Tr. of R. at 10, *In Re Beacon*, No. 13-11961 (Bankr. S.D. Fla. Apr. 30, 2015), ECF No. 292, Ex. "17" to NOF) The sale to Watson was also approved by, the Trustee of a related bankruptcy proceeding and the United States Trustee's Office. (Tr. of R. at 22-26, 39-40, *In Re Beacon*, ECF No. 78) SLS "fully support[s] the sale motion, as well." (*Id.* at 42)

   16. <u>Undisputed</u>: 1) the Trustees investigated and drafted a complaint they never filed, 2) SLS and its principals Wish and Sider, did want to spend money from the estate on the litigation, 3) Wish and Sider formed JAWHBS, and 4) Plaintiff filed suit on November 7, 2015. <u>Paragraph 16 is otherwise disputed</u>: Following the sale, the Trustees investigated claims of violations of 11 U.S.C. § 363(n). (Dillworth Dep. 152:16-19) Dillworth testified that "in my perception, I didn't think that the lawyers, if there was anything there[,] intentionally did anything wrong. There is no upside to a lawyer." (*Id.*) He stated further, "I certainly don't think lawyers would have knowingly done something wrong." (*Id.* at 153:5-7) Any damages claim against Shutts was "speculative." (*Id.* at 183:6) The $25,000 assignment was of claims "relating to Crystal's offer to purchase the BBV and BDP Parcels," (not "all claims"). (TAC, at Ex.1, Assignment of Claims ¶ i)

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Respectfully submitted,

By: */s/ Kendall B. Coffey*
Kendall B. Coffey, Esq. – Florida Bar No. 259861
kcoffey@coffeyburlington.com
Kevin C. Kaplan, Esq. – Florida Bar No. 933848
kkaplan@coffeyburlington.com
David J. Zack, Esq. – Florida Bar No. 641685
dzack@coffeyburlington.com
vmontejo@coffeyburlington.com
service@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
*Counsel for Defendants Shutts & Bowen LLP and Kevin D. Cowan*

*/s/ Lawrence Goodman*
Lawrence D. Goodman, Esq.
Florida Bar No. 712647
lgoodman@devinegoodman.com
efiling@devinegoodman.com
smallet@devinegoodman.com
DEVINE GOODMAN RASCO
WATTS-FITZFERALD, LLP
2800 Ponce de Leon Boulevard, Suite 1400
Coral Gables, FL 33134
Telephone: (305) 374-8200
Facsimile: (305) 374-8208
*Counsel for JA Energy Resources, LLC and Jorge Arevalo*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on March 28, 2017, on all counsel or parties of record on the Service List below.

*/s/ Kendall B. Coffey*
Kendall B. Coffey

## SERVICE LIST
*JAWHBS, LLC vs. Arevalo, et al.*
**Case No. 1:15-cv-24176-GAYLES**

| | |
|---|---|
| **Jerrold A. Wish, Esq.**<br>jwish@wishlaw.net<br>THE WISH LAW FIRM<br>1927 NW 104th Way<br>Gainesville, Florida 32606<br>Telephone: (786) 200-7077<br><br>*Attorneys for Plaintiff* | **Adam J. Breeden, Esq.**<br>adam@breedenandassociates.com<br>tina@breedenandassociates.com<br>BREEDEN & ASSOCIATES, PLLC<br>1404 S. Jones Blvd.<br>Las Vegas, NV 89146<br>Telephone: (702) 508-9250<br>Facsimile: (702) 508-9365<br><br>*Attorneys for Plaintiff* |
| **Ronald L. Kammer, Esq.**<br>rkammer@hinshawlaw.com<br>dphangsang@hinshawlaw.com<br>nbroche@hinshawlaw.com<br>**H. Steven Vogel, Esq.**<br>svogel@hinshawlaw.com<br>clucas@hinshawlaw.com<br>HINSHAW & CULBERTSON LLP<br>2525 Ponce de Leon Blvd., 4th Floor<br>Coral Gables, Florida 33134<br>Telephone: (305) 358-7747<br>Facsimile: (305) 577-1063<br><br>*Attorneys for Defendant Watson Investigations, LLC* | **Charles Tatelbaum, Esq.**<br>cmt@trippscott.com<br>iah@trippscott.com<br>**Michael C. Foster, Esq.**<br>mcf@trippscott.com<br>lxc@trippscott.com<br>**Edward R. Curtis, Esq.**<br>erc@trippscott.com<br>pfb@trippscott.com<br>**Christina V. Paradowski, Esq.**<br>cvp@trippscott.com<br>TRIPP SCOTT, P.A.<br>110 S.E. 6th Street, 15th Floor<br>Ft. Lauderdale, FL 33301<br>Telephone: (954) 525-7500<br>Facsimile: (954) 761-7500<br><br>*Attorneys for Steven C. Cronig* |

| | |
|---|---|
| **Lawrence D. Goodman, Esq.**<br>**Caitlin M. Clarke, Esq.**<br>lgoodman@devinegoodman.com<br>cclarke@devinegoodman.com<br>efiling@devinegoodman.com<br>rkuntz@devinegoodman.com<br>smallet@devinegoodman.com<br>DEVINE GOODMAN RASCO & WATTS FITZGERALD, LLP<br>2800 Ponce de Leon Blvd., Suite 1400<br>Coral Gables, Florida  33134<br>Telephone:  (305) 374-8200<br>Facsimile:  (305) 374-8208<br><br>*Attorneys for Defendants JA Energy Resources, LLC and Jorge Arevalo* | **Albert F. Delaney,** *Pro Se*<br>45 Scarlet Woods Court<br>Spring, TX  77380<br>Telephone:  (786) 683-0002<br>vfsdelaney@att.net<br>Delaneyal@att.net<br><br>*Defendant* |
| **Omar Botero,** *Pro Se*<br>3333 Halissee Street<br>Miami, Florida 33133<br>omar@alianzadevelopmentgroup.com<br><br>*Defendant* | **Alianza Financial Services, LLC**<br>c/o Omar Botero, as managing member<br>2020 Coral Way, Suite 2-363<br>Miami, Florida  33145<br>omar@alianzadevelopmentgroup.com<br><br>*Defendant* |
| **Alianza Holdings, LLC**<br>c/o Omar Botero, as managing member<br>2020 Coral Way, Suite 2-363<br>Miami, Florida  33145<br>omar@alianzadevelopmentgroup.com<br><br>*Defendant* | |